Honorable James K. Singleton, Jr.

Stephen D. Rose
Dawn R. Kreysar
Preston Gates & Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
(206) 623-7580 (phone)
(206) 623-7022 (fax)
srose@prestongates.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

CITY AND BOROUGH OF JUNEAU,
ALASKA, d/b/a/ BARTLETT REGIONAL
HOSPITAL,

                            Plaintiff,

        v.

CENTERS FOR MEDICARE AND
MEDICAID SERVICES, REGION 10,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,
UNITED STATES OF AMERICA, R.J.
RUFF, sued in his official capacity as the
REGIONAL ADMINISTRATOR OF
REGION 10 FOR THE CENTERS FOR
MEDICARE AND MEDICAID SERVICES,
AND KAREN S. O'CONNOR, sued in her
official capacity as ASSOCIATE
REGIONAL ADMINISTRATOR,
DIVISION OF MEDICAID & CHILDREN'S
HEALTH, REGION 10 FOR THE
CENTERS FOR MEDICARE AND
MEDICAID SERVICES,

                            Defendants.

No. A04-0152 CV (JKS)

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 1

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.    __INTRODUCTION__

Plaintiff appeals the decision of a federal administrative agency to approve retroactively a State Plan Amendment proposed by the State of Alaska to lower Medicaid payments.   The City and Borough of Juneau, Alaska, d/b/a Bartlett Regional Hospital ("Bartlett Hospital"), Plaintiff, has filed with this Court a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56 requesting that the administrative agency's retroactive action be declared invalid.   On December 28, 2005, Plaintiff filed with this Court a Motion to Augment the Agency Record.  Since Defendants have not filed an opposition to this Motion, Plaintiff is filing concurrently a Request for Ruling asking the Court to enter an order granting Plaintiff's Motion to Augment the Agency Record.  Based on Defendants failure to oppose the Motion to Augment, Plaintiff has proceeded forward using the documents and sworn testimony submitted by Plaintiff in the Motion to Augment, along with the certified agency record, as the entire Record on Appeal ("ROA"), for purposes of supporting Plaintiff's Motion for Summary Judgment.[1]

## II.    __STANDARD OF REVIEW__

The standard of review to be applied by the Court reviewing an administrative agency's decision is provided under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*., and is set forth in 5 U.S.C. § 706:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—
>
> (1) compel agency action unlawfully withheld or unreasonably delayed; and
>
> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

---

[1] Plaintiff is willing to file an amended Memorandum omitting citations to any documents the Court determines should not to be included in the ROA.   Plaintiff does not wish to presuppose the Court's decision on this issue, but since there is no opposition to augmenting the agency record, Plaintiff decided to proceed on this basis so that this Motion could be filed in a timely fashion in accordance with the stipulated order setting deadlines in this case.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 2

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

## III.    BACKGROUND

### A.    The Medicaid Program

This case arises under the Medicaid Program.  42 U.S.C. §1396a.  The Medicaid Program is a federal program administered by the states intended to provide medical assistance to low-income persons.  42 U.S.C. §§1396a-1396v; 42 C.F.R. Part 430.  No state is required to participate in the Medicaid Program.  However, if a state elects to participate in the Medicaid Program, it **must** comply with all applicable federal statutes and regulations concerning that Program.  Id.; *Wilder v. Virginia Hospital Association*, 496 U.S. 498, 502 (1990); *Department of Health and Social Services, State of Alaska v. Alaska State Hospital & Nursing Home Association*, 856 P.2d 755 (Alaska 1993); Par. 7, Answer to Second Amended Complaint (hereinafter "Answer").  The Medicaid Program is administered by the United States Department of Health and Human Services, Center for Medicare and Medicaid Services ("CMS").  CMS has established Regional Offices to provide services to the states within their individual regions.  Alaska is serviced by CMS Region 10.  Par. 8, Answer.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**B.**     **The State Plan Amendment (SPA) Process**

The "State Plan" is the document that forms the agreement between the state and federal governments regarding how a state will administer federal and state monies for payment under the Medicaid program.  If a state elects to participate in the Medicaid Program, that state must develop a "State Plan" that specifies the categories of individuals who will receive medical assistance under that State Plan.  42 U.S.C. §1396a(b); 42 U.S.C. §1316(a)(1).  The State Plan specifies the items and health care services for which the participating state will and will not pay.  42 C.F.R. 430.10.  State Plans must be filed with the CMS Regional Office assigned to the state submitting the State Plan.  The CMS Regional Office then makes a determination whether the State Plan submitted should be approved.  *See also* Par. 9 of Defendants' Answer to Plaintiff's original Complaint (hereinafter "First Answer").  Once approved, the State is eligible to receive certain matching payments from the federal government.  42 U.S.C. §§1396b(a)(1), 1396d(b).  States can only make Medicaid payments that are in the amount and in the manner allowed for by the State Plan.[2]

A state may change its State Plan by filing with its CMS Regional Office the appropriate documentation requesting a "State Plan Amendment" ("SPA").  42 U.S.C. §1316 (b); 42 C.F.R. §430.12.  In order to have a SPA approved by its Regional Office, the state is **required** to follow a number of specific procedural steps in order to create a SPA that is "approvable".  Par. 10, First Answer.  Among other things, **before** a SPA changing payment methods or standards can be approved by the Regional Office, the state **must** provide *specific assurances* to the Regional Office that it has given proper notice to the public of its intention to amend the State Plan.[3]  42 C.F.R. 447.253(h).  In addition to giving the Regional Office specific assurances that it has provided the public with proper notice, the state must also prove that it has advised the public of any potential **increase or decrease** in expenditures that

---

[2] *See, e.g.*, 42 U.S.C. §1396c(2) which provides authority for CMS to halt federal Medicaid program payments to states who substantially fail to comply with any state plan provision.

[3] These assurances from the State are invariably supplied in writing and are commonly referred to as "the State's Assurances Letter" which must be filed with each SPA request related to a change in payment methods or standards.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 4

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

will occur under the proposed SPA.  42 C.F.R. 447.205(c)(2).  SPA approval by the Regional Office is contingent on the Regional Office **receiving and accepting** such assurances pursuant to 42 C.F.R. 447.256(a)(2).[4]  **If the Regional Office does not receive the necessary written assurances, the proposed SPA is not approvable and should not be approved by the Regional Office.**  Id.

CMS has developed a specific form that must be submitted with the proposed SPA. This form is denominated a CMS 179.[5]  The state must specify on the CMS 179 (HCFA 179) information specific to the amendment being requested, including citations to relevant statutes and regulations, the page numbers of the State Plan to be amended (including copies of the actual pages to be substituted into the State Plan if the amendment is approved), and the subject of the amendment.  See "Instructions for Completing Form CMS-179," marked as Exhibit 35 in the Deposition of Adams, included as part of Attachment 1 to the Motion to Augment Agency Record, a copy of which is attached hereto; and Deposition of Adams, p. 19, l. 16-p.20, l. 24,[6] p. 9 of Attachment 1 to the Motion to Augment Agency Record.  The

---

[4] It is critical to note that the Regional Office must receive the Assurances Letter and accept the written assurances contained in that letter **before** the SPA submittal can be considered for approval.

[5] CMS was formerly known as the Health Care Financing Administration or HCFA.  When this agency was known as HCFA this form was referred to as a HCFA 179.  See, ROA 008 for an example of the HCFA 179.

[6] Ms. Adams deposition testimony is as follows:

Q (by Bartlett Hospital attorney Mr. Rose):  Mr. Cooper was nice enough to give me many copies just moments ago.  Why don't we go ahead and get that marked.

(Whereupon, instructions for Form 179 was marked Exhibit-35 for identification.)

Q.  And let me hand you now what's been marked as Exhibit 35.  And Mr. Cooper can correct me if I'm wrong, but as I understand it, this is an instruction -- are the instructions for completing Form CMS 179, and I think we're talking about a HCFA 179, and so I don't know if the instructions have changed or whether it was just the letters when your organization had its name change.  Let me ask you that, first off.  Do you know whether the 179 has changed in terms of the instructions between the time when you were the State Plan Coordinator and when it was -- when it was a HCFA 179 and then changed to now a CMS 179?

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 5

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

HCFA 179 **requires** the physical signature of the state official authorized to request the SPA. Id. The information contained on the HCFA 179 must be accurate.[7]

### C.     The Parties

At all times hereinafter mentioned, Plaintiff, the City and Borough of Juneau, Alaska d/b/a Bartlett Regional Hospital, was, and still is, an enterprise account of the City and Borough of Juneau, Alaska acting as an acute care hospital participating in the federal Medicaid program.

Defendant, Region 10, Centers for Medicare & Medicaid Services, United States Department of Health and Human Services ("Region 10") is an agency of the United States government charged with administering the federal Medicaid program with respect to the State of Alaska, as well as the states of Washington, Oregon and Idaho. The remaining named defendants are all sued in their official capacity as officials of CMS Region 10 and will be collectively referred to as "Region 10" or "CMS Region 10."

### D.     The State of Alaska SPA Submissions

The issue in this case is which version of Attachment 4.19B, page 5, concerning "Outpatient Hospital Services" is the "official" version of the Alaska Medicaid State Plan as of early 2001.   In particular, Bartlett Hospital disputes that SPA Attachment 4.19-B, page 5, concerning Outpatient Hospital Services was changed in early 2001, by SPA submission TN

---

A (by Region 10 employee Adams):  No, they haven't changed.

**Deposition of Adams, p. 19, l. 16-p.20, l. 9.**

[7]    Q (by Bartlett Hospital attorney).  Okay.  With respect to the 179, the Form 179, is it important that the information on the 179 is accurate?

A (by CMS employee Adams):  Yes.

**Deposition of Adams, p. 55, ll. 2-5.**

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

01-002 (ROA 70-73).  Bartlett contends that Attachment 4.19B, page 5, was never changed by SPA submission TN No. 01-002 (ROA 70-73) and that the language for "Outpatient Hospital Services" as it appeared in the State Plan for 1998 (ROA 104 and 138) remained unchanged through at least March of 2003.[8]  At issue in this case is whether SPA Attachment 4.19-B, page 5, concerning Outpatient Hospital Services, was approved or could be deemed "approved" by Region 10 effective January 1, 2001, as part of TN No. 01-002 (ROA 70-73). Bartlett Hospital contends that this proposed SPA was never submitted to CMS in approvable form by the State of Alaska and that the State of Alaska withdrew this page from consideration by Region 10 prior to it being retroactively approved.

By letter dated March 11, 2003, Plaintiff requested from Region 10 a copy of the official State Plan that was in effect for the State of Alaska beginning January 1, 2001.  ROA 111.  In response to the request, by letter dated March 14, 2003, Region 10 produced what it claimed was the appropriate State Plan, as approved by Region 10.  Id.  Attachment 4.19-B, page 5, of the "official" State Plan as provided by Region 10 states:

Methods and Standards for
Establishing Payment Rates:  Other Types of Care

* * *

Outpatient Hospital Services

> For all Alaska Hospitals, except those electing to be reimbursed under the Optional Rate Methodology for Small Facilities, the method of establishing payment for outpatient hospital services is the same as for inpatient hospital services under Attachment 4.19A. Alaska hospitals electing to be reimbursed under the Optional Payment Rate Methodology for Small Facilities are reimbursed a percentage of charges calculated as the overall Medicaid cost-to-charge ratio for allowable ancillary departments in the rate base, not to exceed 100 percent of charges.  The rate base is the facility's approved inpatient hospital Medicaid rate and the department's rate

---

[8] The reason that Plaintiff states that the language concerning "Outpatient Hospital Services" remained unchanged through at least March of 2003, is because Region 10 issued a letter dated March 14, 2003 (ROA 111) identifying the then-current State Plan.  The State Plan identified by Region 10 as the current State Plan was one that contained the "Outpatient Hospital Services" language that Bartlett believes is correct (ROA 119) which is radically different than the language retroactively approved by Region 10  (ROA 70-73).

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

analysis for the facility's fiscal year that began during the period January 1, 1997 to December 31, 1997.

ROA 119.

This section of the State Plan indicates at the bottom that its approval date was May 9, 2001, with an effective date of March 3, 2001. Id. It also indicates that the page was amended by Transmittal Number ("TN") 01-001 and that it supersedes TN Number 98-014. Id.

Comparing the "Outpatient Hospital Services" section of page 5 of the SPA approved as of July 30, 1998 with the effective date of April 1, 1998 (ROA 104), with the section concerning "Outpatient Hospital Services" in the State Plan produced by Region 10 as the "official" State Plan as of the beginning of 2001 (ROA 119), it is clear that the language **exactly matches** and that this language remained unchanged from 1998 through March of 2003. (Compare ROA 104 and ROA 119).

On March 18, 2003, **after** Region 10 had produced its version of the current official State Plan for the State of Alaska for 2001 (the pertinent provision of which was **identical** to the State Plan in effect going back to July 30, 1998, with the effective date of April 1, 1998), the Staff of the Alaska Medicaid Program ("Staff") at a formal administrative hearing produced for the very first time a **completely different** version of the State Plan for 2001; one that was different from the approved official version held by Region 10. Thus, once Plaintiff was engaged in an administrative proceeding to obtain Medicaid reimbursement based on the version of page 5 of the State Plan indicated to it to be in effect by Region 10 (ROA 119 and 138), it was presented with a completely different methodology for calculating its Medicaid reimbursement. See ROA 002. This methodology change results in a negative difference in reimbursement to Plaintiff of hundreds of thousands of dollars for fiscal years 2002 and 2003.

Eventually, on August 25, 2003, CMS issued a letter to the State of Alaska advising the State that CMS was retroactively approving the page 5 that was "resent" to CMS on July 29, 2003, as the "official" page 5 of the Alaska State Medicaid Plan. ROA 77. Thus, two years and eight months after Region 10 issued its signed HCFA 179 for SPA TN 01-002, approving changes only to pages 2 and 10 of the State Plan, CMS retroactively approved an

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

additional page, page 5.  As detailed more fully below, a review of the administrative record in this case shows that no approvable SPA containing the disputed page 5 (ROA 002),[9] was ever presented to CMS.  Further, at the time that CMS retroactively approved page 5, it had already been withdrawn from consideration by the State of Alaska.

###        E.        The Administrative Record

The administrative record in this case shows that the State of Alaska ("Alaska Medicaid") mailed a letter dated March 30, 2001, to CMS Region 10, which purportedly contained SPA TN No. 01-002.  ROA 001-004.  This letter does **not** include the required Assurances Letter nor does it include the HCFA-179.

A few days later, on April 3, 2001, Alaska Medicaid emailed an electronic copy of a SPA and attachments.  ROA 009.  Once again, no Assurances Letter was included, however, this time Alaska Medicaid did include a HCFA-179 form.  ROA 008.  The HCFA-179 form is undated, has no authorizing signature on it, cites as authority for the proposed change in the State Plan federal statutes and regulations that have nothing to do with the proposed changes, fails to identify which pages of the State Plan Alaska Medicaid seeks to amend, and states that the subject of the SPA is "Revision of Disproportionate Share Calculations" even though the proposed changes have **nothing** to do with disproportionate share calculations.

The following day, April 4, 2001, Barbara Knapp of Alaska Medicaid contacted Medicaid Policy Analyst Guy Hayashi of CMS Region 10, by email.  In her email, which still does not include an Assurances Letter, Ms. Knapp notes that the SPA submissions made by Alaska Medicaid were riddled with errors and requests Mr. Hayashi's assistance on helping her correct the numerous errors:

> I am not sure how to go about changing the errors made to Alaska's SPA #01-002 regarding
> Outpatient services
> Federally Qualified Health Center
> Rural health centers  [sic]

---

[9] It should be noted that some of the submissions by Alaska Medicaid number this page as page 6 as opposed to the correct numbering of page 5.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 9

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

> The amendments were put forth from our Anchorage office at a late date, and we did not have the opportunity to review it before it was submitted.
>
> When the documents arrived in my of4fice [sic] yesterday it was apparent at first reading that old documents were picked up for amendment; the whole section was included instead of just the affected pages; and some sections already submitted under 01-001 are on the same page as amendments requested in 01-002.
>
> In short, it's kind of a mess.
>
> I believe I have straightened out the amendment, and we need to replace the one sent. We will be amending pages 2, 3, 5, and 9. Page 2 is the only page which overlaps the current 01-001, but we are requesting a change in another service than the one requested in 01-001.
>
> I am very sorry for the confusion. What do you suggest I do now?
>
> ROA 0010.

About a week later, Ms. Knapp sent another email to Mr. Hayashi noting that she had not heard back from him, telling him that she was attaching "corrected forms" to her email, and asking if "pen and ink" changes could be made to the prior submissions based on the current attachments to her email. ROA 0017. **None** of the attachments to her email contain the required Assurances Letter.[10]

In response, by email dated April 23, 2001 (ROA 0031), Medicaid Policy Analyst Hayashi advises Ms. Knapp that she **cannot** make corrections to the SPA submitted by

---

[10] Even though Ms. Knapp states that she is including "corrected forms" with the email, the HCFA-179 submitted by email is still riddled with errors. ROA 0011. The HCFA-179 remains undated and unsigned. Also, it still references as statutory and regulatory authority, statutes and regulations that have nothing to do with the proposed SPA changes. Lastly, the HCFA-179 still states that the subject of the amendment is "Revision of Disproportionate Share Calculations," when no such revisions were proposed.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 10

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Alaska Medicaid through her email and that it will have to be done later through "pen and ink" authorizations:

> Attached is the SPA that we received. If there are any problems, we can correct them later and not through your recent submissions. When it comes time to act on the SPA, we may ask for "pen & ink" authorizations. Sit back awhile.

> ROA 0018-0031.

Over the next two months, the SPA was reviewed by CMS. Eventually, Alaska Medicaid authorized "pen and ink" changes to SPA 01-002 making many significant changes to the original submission. ROA 0068. By letter dated June 28, 2001, Bob Labbe, Director of Alaska Medicaid, to Bob Reed, Manager, Medicaid Operations and Policy Cluster, Region 10, along with attachments, Alaska Medicaid submitted a substitute SPA 01-002 and authorized "pen and ink" changes to the HCFA Form-179 to state that only pages 2 and 10 are being amended and that the subject of the amendment is "Implements provisions of BIPA Section 702":

> Enclosed, please find **<u>revised</u>** SPA 01-002, regarding new sections for Federally Qualified Health Center Services (page 2) and Rural Health Care Clinic Services (page 10) to Attachment 4.19-B. These changes reflect recently imposed federal requirements and discussions with Dzung Hoang from the Denver Office of CMS. These pages 2 and 10 are substitutes to the submittal sent on March 30, 2001.

> **I authorize the following "pen and ink" changes** to the HCFA – 179:
> 1) Item 8 and 9 – Add pages 2 and 10 after Attachment 4.19-B
> 2) Item 10 – Revise the subject to: Implements provisions of BIPA Section 702.

> The proposed effective date for SPA 01-002 is January 1, 2001.

> ROA 68. (Emphasis added).[11]

---

[11] It is critical to note what Alaska Medicaid is authorizing here. The changes to "items" 8 and 9 specifically alter which pages the SPA applies to. Item 8 notes the page numbers of the

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 11

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    It is clear and unambiguous that Alaska Medicaid is, as of June 28, 2001, submitting a
2    "revised" SPA 01-002.  It is also clear and unambiguous that the revised SPA for 01-002
3    seeks to amend only pages 2 and 10 and that page 5 is no longer part of this SPA.  (It should
4    be noted that no Assurances Letter was included with this revised SPA 01-002).

5    In response, by letter dated June 29, 2001, CMS Region 10 wrote back to Alaska
6    Medicaid, approving the amendment set forth in Transmittal Number 01-002 based on "the
7    revised pages submitted on June 29, 2001," along with copies of the official Form HCFA-179
8    for Transmittal Number 01-002 and amended pages attached.  The Form HCFA-179 is
9    **unambiguous** that the **only** pages of Attachment 4.19-B to be amended are "pages 2 and 10."
10    ROA 72.  There is no mention of page 5, and page 5 is not attached to the Transmittal.  ROA
11    70-73.  Further, CMS Region 10 is unambiguous that their review is based on the "revised
     pages" that were just submitted which did **not** contain page 5.  ROA 0073.

12    Even with all of these changes, no Assurances Letter was submitted by Alaska
13    Medicaid.

14    As noted above, the HCFA-179 originally indicated that the subject of the amendment
15    is "Revision of Disproportionate Share Calculations."  ROA 72.  As part of the "pen and ink"
      changes, this typewritten language is crossed out and a handwritten change was made to
16    indicate the subject is "Implements provisions of BIPA section 702." Id.  Section 702 of the
17    Federal Benefits Improvement and Protection Act of 2000, Pub. L. 106-554, 114 Stat.
18    2763A-572-74 ("BIPA"), addresses changes in reimbursement for Federally Qualified Health
19    Centers ("FQHCs") and Rural Health Clinics.  Pages 2 and 10 of the State Plan that the State
20    of Alaska sought to amend specifically relate to FQHCs and Rural Health Clinics.  Page 5 of
21    the State Plan addresses Outpatient Hospital Services.  Section 702 of BIPA does **not** address
      or impact Medicaid reimbursement for Outpatient Hospital Services.

22

23

24    SPA materials that are the new or replacement pages.  Item 9 notes the pages that are to be
25    superseded.  The specific authorization made by Alaska Medicaid is limited to changing just
      pages 2 and 10.  Once this authorization was made, page 5 was no longer part of the SPA for
      01-002 and could no longer be considered part of the SPA to be changed.

26

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 12

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The Region 10 letter approving SPA 01-002 was directed by Teresa L. Trimble, Associate Regional Administrator, Division of Medicaid and State Operations to Bob Labbe, Director of Alaska Medicaid. ROA 73. Through this letter, dated June 29, 2001, she advises Alaska Medicaid that the only sections of the State Plan that are being amended through SPA 01-002 are the sections impacted by section 702 of BIPA concerning Federally Qualified Health Centers and Rural Health Clinics (and **not** Outpatient Hospital Services), consistent with the revised submittal by Alaska Medicaid:

> The Division of Medical Assistance [State of Alaska, Department of Health and Social Services] submitted Alaska State Plan Transmittal 01-002 for [Region 10] review and approval. This transmittal amends the Medicaid State Plan to include new payment provisions for the Federally Qualified Health Centers and Rural Health Clinics required by Section 702 of the Benefits and Improvement Act of 2000 [sic].

> We have completed our review of this amendment and the revised pages submitted on June 29, 2001. This state plan amendment is approved effective January 1, 2001.

> If you have any additional questions or require any further assistance, please contact Robert Reed at (206) 615-2330.

> ROA 73.

A copy of this letter was also mailed to Jack Nielson, Executive Director, Alaska Medicaid Program and his assistant, Randall Schlapia. Id.

There is no evidence in the record indicating that, upon receipt of the letter approving only pages 2 and 10 for amendment of the Alaska State Plan, Mr. Bob Labbe, Mr. Jack Nielson, Mr. Randall Schlapia, or any other member of the Division of Medical Assistance, Alaska Department of Health and Social Services, contacted anyone at Region 10 complaining that page 5 should have also been amended.

Furthermore, the record is devoid of any evidence indicating that Alaska Medicaid provided the required assurances to Region 10 that it had provided the public with proper

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 13

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    notice of its intent to amend the State Plan provisions dealing with reimbursement of

2    outpatient hospital services.[12]

3    Over two years **after** Region 10 issued its letter approving Alaska Medicaid's revised

4    SPA 01-002 containing **only** pages 2 and 10, on August 25, 2003, Defendant Karen S.

5    O'Connor directed a letter to Mr. Bob Labbe, apparently in response to a communication

6    from Mr. Labbe.   Defendant O'Connor's letter is included in the ROA at 77.  In her letter,

7    Defendant O'Connor notes that **only** revised pages 2 and 10 were approved as part of SPA

8    01-002.  However, Defendant O'Connor continues and advises Mr. Labbe that, pursuant to

9    his belated request, Region 10 would violate its policies and procedures prohibiting email

10    submissions and would retroactively approve as amended page 5 of Attachment 4.19-B, in

     violation of the rules prohibiting SPAs from being made effective any further back than the

11    first day of the quarter in which they were submitted in approvable form:

12
13        The Centers for Medicare and Medicaid Services (CMS), Division
          of Medicaid and Children's Health, Region 10, approved State Plan
14        Amendment (SPA) Alaska 01-002 on June 29, 2001, with an
          effective date of January 1, 2001.   The associated transmittal
15        indicated that a new page 2 and a new page 10 had replaced existing
          pages in the Alaska Medicaid State Plan.
16
17        The Alaska Department of Health and Social Services originally
          submitted SPA Alaska 01-002 to Region 10, CMS, Division of
18        Medicaid and Children's Health on March 30, 2001.  On April 10,
          2001, a revised page 5 for this SPA was emailed to Region 10,
19        CMS.  Although email submissions are not recognized as official
          communication, an exception is being made in this instance to
20        facilitate closure for this SPA.  I am aware the Department of
          Health and Social Services had considered this page, as emailed, to
21

22    ──────────────
      [12] The administrative record submitted by Defendants in this case is devoid of any proof that
23    Alaska Medicaid met any of its public notice obligations.  However, based on information
      provided by Alaska Medicaid, plaintiff was able to find what it believes were Alaska
24    Medicaid's attempts to post some sort of notice and plaintiff included these as part of its
      Motion to Augment the Agency Record.  ROA 147-152.  Alaska Medicaid posted a notice of
25    proposed changes in Medicaid regulations on the State of Alaska Online Public Notice
      system on July 18, 2000, and additional notices related to the same on August 22 & 23, 2000.
26    ROA 147-52.  As detailed further below, these "notices" are defective and failed to comply
      with then existing law.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 14

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

have been approved effective January 01, 2001. There is no evidence of any action taken within 90 days, by the Region, as required by 42 CFR 430.16, to counter that assertion.

Therefore, CMS, Region 10, approves page 5, as resent by Alaska on July 29, 2003, as the official page 5 of the Alaska State Medicaid plan effective January 1, 2001. . . .

ROA 77.

Defendant O'Connor's letter ignores the legal significance of page 5 of Transmittal Number 01-001 which was approved by Region 10 on May 9, 2001, and given an effective date of March 3, 2001 (ROA 119). This SPA was approved subsequent to the submission of Transmittal 01-002 on March 30, 2001 and the email transmission of page 5 on April 10, 2001 (ROA 17), and has an effective date subsequent to the proposed effective date of January 1, 2001 for SPA Transmittal 01-002. Defendant O'Connor's letter further ignores the legal significance of Guy Hayashi's email to Barbara Knapp, dated April 23, 2001, included in the ROA at 31. At this time, Mr. Hayashi was an official authorized to act on behalf of Region 10 with regard to the SPA approval process. He specifically advised Ms. Knapp, of Alaska Medicaid, who made the email submission of April 10, 2001, that he was rejecting her email submission and that any changes to the original submission must be made by "pen & ink" authorization:

Attached is the SPA that we received. If there are any problems, we can correct them later and not through your recent submission. When it comes time to act on the SPA, we may ask for "pen & ink" authorizations. Sit back awhile.

ROA 31.

In short, the letter from CMS Region 10 purporting retroactively to approve page 5 as being part of the official State Plan, ignores many key events which occurred throughout the approval process.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 15

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    IV.    **LEGAL ARGUMENT**

2        A.    **Applicable Law**

3        This is an action under the Administrative Procedure Act, *see* 5 U.S.C. §§ 701 *et seq.*,

4    for judicial review of agency action.  Plaintiff invokes its right to judicial review under 5

5    U.S.C. § 702 as a person adversely affected or aggrieved by agency action within the

6    meaning of a relevant statute, with such statutes including 42 U.S.C. § 1396a and 42 U.S.C. §

7    1316.  Defendants have acted arbitrarily and capriciously, abused their discretion, and acted

8    contrary to law, within the meaning of 5 U.S.C. §§ 706(2)(A) and 706(2)(D), and thus their

9    actions should be held unlawful and set aside in accordance with 5 U.S.C. § 706(2).  Plaintiff

10   requests that this Court rule that the language for Outpatient Hospital Services on page 5, of

11   SPA 01-002, be declared void and of no legal effect as having not been submitted as part of

12   an approvable SPA and that the prior language concerning Outpatient Hospital Services

13   contained at ROA 138 and 119 be declared the "official" version of the Alaska State Plan for

14   Outpatient Hospital Services in effect as of January 1, 2001.

15       42 U.S.C. § 1396a(b) provides that the Secretary of Health and Human Services

16   shall approve any State Plan which fulfills the conditions specified in subsection (a) of

17   Section 1396a; and 42 USC § 1316(a)(1) requires the Secretary of Health and Human

18   Services, when a State Plan is submitted to him or her for approval under 42 U.S.C. §§ 1396

19   *et seq.*, to make a determination as to whether it conforms to the requirements for approval

20   under such title not later than 90 days after the date the plan is submitted to him or her.

21   Pursuant to 42 C.F.R. § 430.20(b)(2) and 42 C.F.R. § 447.256(c), a SPA that changes the

22   State's payment method and standards will become effective not earlier than the first day of

23   the calendar quarter in which an "approvable amendment" is submitted.

24       Pursuant to 42 C.F.R. § 430.20(b)(2), a SPA that changes the State's payment

25   method and standards must comply with the rules of 42 C.F.R. § 447.256.  Under 42 C.F.R. §

26   447.256(a)(2), CMS is required to base its approval of SPAs on **the acceptability of** the State

     Medicaid agency's assurances that the requirements of 42 C.F.R. § 447.253 have been met,

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

and the State's compliance with the other requirements of the subpart at 42 C.F.R. §§ 447.250 *et seq.*  Subsection (a) of 42 C.F.R. § 447.253 requires the Medicaid agency to make assurances satisfactory to CMS that the requirements set forth in the remaining subsections of the regulation are being met in order to receive approval of a State Plan change in payment methods and standards.  Subsection (h) of 42 C.F.R. § 447.253 requires the agency to provide that it has complied with the public notice requirements in 42 C.F.R. § 447.205 when the proposed changes are significant.

Pursuant to 42 C.F.R. § 447.205, which partially implements the statutory safeguards set forth for providers in 42 U.S.C. § 1396a(a)(13) & (30), a State Medicaid agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates for services, except in specified circumstances not applicable in the instant case.  Subsection (c) of the regulation specifies the required content of the notice:

(c) Content of notice. The notice must —

(1) Describe the proposed change in methods and standards;
(2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;
(3) Explain why the agency is changing its methods and standards;
(4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review;
(5) Give an address where written comments may be sent and reviewed by the public; and
(6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

**B.     Discussion**

**1.     Defendants acted arbitrarily and capriciously, abused their discretion,   and acted contrary to law in approving a SPA that was never submitted in approvable form by the State of Alaska.**

**a.     Defendants failed to obtain the required assurances that public notice requirements were met.**

In prior pleadings the Defendants concede, as they must, that "CMS approval is based on the State's assurances that it has sufficiently complied [with the notice

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 17

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

requirements]. 42 C.F.R. § 447.256(a)(2)." *See,* Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b), at p. 7, July 14, 2005. Specifically, 42 C.F.R. § 447.256(a)(2) makes CMS approval of a SPA such as the one at issues in this case contingent on "**the acceptability of** the Medicaid agency's assurances that the requirements of § 447.253 have been met, and the State's compliance with the other requirements of this subpart [emphasis added]." See also 42 C.F.R. § 447.253(a) which requires the state to submit satisfactory assurances to CMS "in order to receive CMS approval of a State plan change in payment methods and standards." These regulations clearly require CMS, at a minimum, to make a determination with respect to the **acceptability** of the State's assurances. These regulations clearly indicate that in order to be approvable, SPAs such as the one at issue must be submitted with the requisite assurances.[13]

In this case the certified record from the administrative agency is devoid of any assurances from the State of Alaska that it complied with notice requirements imposed on the State by federal law. While it may be true that "the duty to notify the public rests with the state,"[14] it is equally true that the reviewing administrative agency cannot approve a SPA unless and until the State has provided those assurances to CMS. 42 C.F.R. §447.256(a)(2). In deeming the SPA to have been approved without requiring the requisite assurances to be provided, Defendants' acted contrary to law within the meaning of 5 U.S.C. §§ 706(2)(A) and 706(2)(D), and thus their actions should be held unlawful and set aside in accordance with 5

---

[13] Plaintiff would note that the detailed statutory and regulatory framework governing SPA submission and approval makes clear that a SPA may only be approved when submitted in approvable form in compliance with applicable law. It would be nonsensical to read 42 C.F.R. § 430.16 to negate all other statutory and regulatory requirements, such that a SPA that was not submitted in compliance therewith could be deemed approved automatically merely due to the failure by CMS to take action with respect thereto, as Defendant O'Connor seems to suggest in her decision letter to Bob Labbe, dated August 25, 2003. In fact, such a reading would be contrary to law, since 42 C.F.R. §447.256(c) specifically provides that an approved SPA "will become effective not earlier than the first day of the calendar quarter in which an **approvable amendment is submitted in accordance with Sec. 430.20 of this chapter and 447.253**(emphasis added)."

[14] *See,* Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b), at p. 7, July 14, 2005.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 18

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

U.S.C. § 706(2).

**b.      The underlying "notices" provided by the State of Alaska were legally insufficient, and thus no assurances with regard to them could have been deemed acceptable by Region 10.**

Even had the State of Alaska provided assurances to Region 10, such assurances could not have been found to be acceptable by Region 10 within the meaning of 42 C.F.R. §447.256(a)(2) due to the woeful inadequacies in the State of Alaska's apparent attempts to comply with applicable notice requirements.  See the "Notices" of changes in state regulations included at ROA 147-52.  Pursuant to 42 USC § 1316(a)(1), CMS, as the delegate of the Secretary, has a statutorily imposed affirmative duty "to make a determination" regarding whether a SPA conforms to the legal requirements for approval.

Such requirements include the specific notice requirements set forth in 42 C.F.R. § 447.205.  Subsection (c) of the regulation specifies the required content of the notice.  The application of 42 C.F.R. § 447.205 in this case should be informed by the statutory provisions dealing with public notice that were enacted subsequent to the promulgation of 42 C.F.R. § 447.205 by CMS (formerly HCFA).[15]  42 U.S.C. § 1396a(a)(13) requires that State Plans provide —

> (A) for a public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which—
> (i)      proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published,
> (ii)      providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications,
> (iii)      final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published, and
> (iv)      in the case of hospitals, such rates take into account (in a manner consistent with section 1923 [*42 USCS § 1396r-4*]) the situation of hospitals which serve a disproportionate number of low-income patients with special needs.

---

[15] The regulatory provision was last amended in 1983, while the statutory provision at issue became effective in 1997.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 19

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Thus, the Medicaid Statute imposes a requirement on the State to publish the actual proposed (and final) rates, methodologies underlying the establishment of such rates, and justifications for the proposed rates, as well as to provide for a public process that ensures that providers, *inter alia*, are given a reasonable opportunity to review and to comment on the proposals.

If Region 10 had fulfilled its statutory duty of ensuring compliance with applicable regulatory and statutory notice provisions, it would have required the State of Alaska to take the non-burdensome measure of submitting a copy of its Notices to Region 10 as documentation in support of its assurances that the notice requirements in 42 C.F.R. § 447.205 had been met. *See Independence Acceptance Co. v. California*, 204 F.3d 1247, 1252 (9th Cir. 2000), in which the Ninth Circuit indicated that it could only determine whether the Secretary's acceptance of the State's assurances regarding notice under 42 C.F.R. § 447.253(a) & (h) was appropriate by examining the documentation presented to the Secretary by the State to demonstrate compliance.

If Region 10 had engaged in even a cursory review of the purported "Notices," it would have deemed them legally insufficient to comply with federal law.  In its "notice" of a proposed change in Medicaid regulations posted on the State of Alaska Online Public Notice system on July 18, 2000 (ROA 147-49), Alaska Medicaid failed to comply with the content requirements set forth in 42 C.F.R. § 447.205(c) in numerous respects.  In particular, it failed (a) to describe the proposed change in outpatient hospital service payment methods and standards, (b) to explain why it was changing the same, (c) to identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes were available for public review, and (d) give an address where written comments may be reviewed by the public.  In fact, no specific reference was made to **outpatient** hospital payment methods and rates in the notice.  Neither of the additional notices posted on August 22 and August 23, 2000 remedied these deficiencies (ROA 150-52).[16]

---

[16] In addition, Defendants cannot take the fallback position that providers were given

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 20

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Due to the insufficiencies of the "notices" provided by the State of Alaska, the State

2    would not have been able to submit documentation to Region 10 which Region 10 could have

3    deemed an acceptable assurance that the public notice requirements had been met. Thus, the

4    SPA at issue was never submitted in a form that was approvable by Region 10, and

5    Defendants' therefore acted contrary to law within the meaning of 5 U.S.C. §§ 706(2)(A) and

6    706(2)(D) in deeming the SPA to have been approved. Therefore, their actions should be

     held unlawful and set aside in accordance with 5 U.S.C. § 706(2).

7

8    **2.    Defendants acted arbitrarily and capriciously, abused their**

9    **discretion, and acted contrary to law in retroactively approving a page of a SPA**

10   **that was withdrawn by the State of Alaska.**

11   Even if the Court is able to overlook Defendants admitted failure to comply with

12   applicable law, the SPA page at issue was withdrawn by the State of Alaska prior to approval

13   of TN 01-002 in final form by Region 10. The letter dated June 28, 2001, by Bob Labbe,

14   Director of Alaska Medicaid, to Bob Reed of Region 10 (ROA at 66-68), states that Alaska

     Medicaid is submitting a "revised" SPA 01-002 in place of its original transmittal and

15   authorizes "pen and ink" changes to the HCFA Form-179 to reflect that only pages 2 and 10

16   are being amended and that the subject of the amendment is "Implements provisions of BIPA

17   Section 702." There is no reference to Outpatient Hospital Services Reimbursement or to the

18   page addressing the same. Included in the ROA at 70-73 is a copy of the official letter from

19   Region 10 approving the amendment set forth in Transmittal Number 01-002, along with

20   copies of the official Form HCFA-179 for Transmittal Number 01-002 and amended pages

21   attached. The Form HCFA-179 reveals that the requested "pen and ink" changes were made.

     Thus, the official Form HCFA-179 for Transmittal Number 01-002 is **unambiguous** that the

22   **only** pages of Attachment 4.19-B to be amended are "pages 2 and 10." ROA 72. There is no

23   mention of page 5, and page 5 is not attached to the Transmittal. ROA at 70-73. A "pen and

24   ink" change was also made to identify the subject of SPA 01-002 as "Implements provisions

25

26   effective notice of the change by virtue of the Form HCFA-179, since such form for TN 01-
     002 contains no reference to Outpatient Hospital Services Reimbursement or page 5 at all.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 21

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\53742\00001\DRK\DRK_P200G

of BIPA section 702." ROA 72. Section 702 of the Federal Benefits Improvement and Protection Act of 2000, Pub. L. 106-554, 114 Stat. 2763A-572-74 ("BIPA"), addresses changes in reimbursement for Federally Qualified Health Centers ("FQHCs") and Rural Health Clinics. The pages 2 and 10 attached to the Transmittal specifically relate to FQHCs and Rural Health Clinics. ROA 70-71. Section 702 of BIPA does **not** address or impact Medicaid reimbursement for Outpatient Hospital Services, and the official Form HCFA-179 does not in any way address reimbursement for Outpatient Hospital Services as the subject of SPA 01-002.

The Region 10 letter approving SPA 01-002 was directed by Teresa L. Trimble, Associate Regional Administrator, to Bob Labbe, Director of Alaska Medicaid. ROA 73. Through this letter, dated June 29, 2001, she advises Alaska Medicaid that the only sections of the State Plan that are being amended through SPA 01-002 are the sections impacted by section 702 of BIPA concerning FQHCs and Rural Health Clinics (and **not** Outpatient Hospital Services), consistent with the revised submittal on June 29, 2001 by Alaska Medicaid.

According to CMS employee, Janice Adams, the State Plan Coordinator at the time SPA 01-002 was submitted and approved, and who made the "pen and ink" changes to the official form HCFA-179 in response to the State of Alaska's request for such SPA,[17] once the

_____

[17] See Deposition of Adams, p. 6. l. 24-p. 7, l. 15, p. 1 of Attachment 1 to the Motion to Augment Agency Record, and p. 31, l. 23-p.34, l. 20, pp. 14-16 of Attachment 1 to the Motion to Augment Agency Record which are quoted below:

Q (by Bartlett Hospital Attorney): Okay. Prior to holding those positions here at Region 10, did you have any other different jobs?

A (by CMS employee Janice Adams): I was the former State Plan Amendment Coordinator. I worked on community based waivers for a while, I worked on Oregon Health Plan for a while.

Q. And can you give us the approximate dates that you were the State Plan Amendment Coordinator?

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 22

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

A.   That was September 2001 to probably spring of 2001 when we got a new coordinator in and then I remained her back-up probably for, you know, probably two years.

Q.   Okay.  When you said -- maybe I heard wrong --but you started in September of 2001?

A.   September of 2000.

Q.   Of  2000.  I'm sorry.  Okay.  And then through spring of 2001?

A.   Right . . . .

**Deposition of Adams, p. 6, l. 24-p.7, l. 15.**

Q.   Okay.  And we previously looked at what would be Exhibit B, Page 9.  Maybe I could ask you to get both of those pages in front of you at once, if you could.  And would it be fair -- or actually I shouldn't say fair -- would it be accurate to say that when the state plan was amended, that Page 28 was taken out as the superseded page and that you replaced it with Page 9 as the new state plan page?

A.   Yes.

Q.   Let me ask you to go to Page 19 of Exhibit -- the Exhibit B notation of Page 19.

A.   Yes.

Q.   Okay.  And where the -- if you look at Box 8.

A.   Yes.

Q.   And where it says "Pages 2 and 10" and then in parentheses "P&I"?

A.   Yes.

Q.   Is that your handwriting?

A.   Yes.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 23

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Q.  Okay.  Can you explain to me why that notation was made on -- well, let me take a step back.  First of all, this is a HCFA Form 179, correct?

A.  Correct.

Q.  And what state plan is this for?  Excuse me. State plan amendment.
A.  Implementing provisions of BIPA Section 702.

Q.  I didn't ask that quiet right.  The transmittal No. for this is 01-002; is that correct?

A.  Correct.

Q.  And it's from the state of Alaska?

A.  Correct.

Q.  Okay.  Why is there the change to Box 8 where you've handwritten in something?

A.  The state requested changes.

Q.  Okay.  And so does the P&I stand for pen and ink change?

A.  Correct.

Q.  Okay.  And let me show you what was marked as Exhibit 7 from yesterday.  And I would just direct your attention to Page 2 of Exhibit 7.  You can look at the other pages too, if you want.

MR. COOPER:  Just for context.  Okay.  Okay, go ahead.

BY MR. ROSE (Bartlett Hospital Attorney):
Q.  And when I asked you why you made the changes to Box 8, you stated that you were instructed to make the changes by the state.  Did I phrase that right?  Or requested by the state to make the changes?

A.  Yes.

Q.  Okay.  And is the letter that you have in front of you dated June 28th of 2001?

A.  Yes.

Q.  Are those the instructions that you're referring to?

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 24

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

pen and ink changes are made to the Form HCFA-179, since the same is done prior to approval of the SPA, the Form HCFA-179, as changed with the pen and ink changes, constitutes the SPA request from the State.[18]  By submitting a substitute transmittal for the

A.  Yes.

Q.  Okay.  And when you make these types changes, the pen and ink changes that we're talking about -- well, first off, why don't you identify the other pen and ink changes that you made to the page.

A.  On where?  On which form?

Q.  In Boxes 9 and 10.

MR. COOPER:  Okay, you're back now too –

THE WITNESS:  You want me to go back to the exhibit?  Is that what you want me to do?

MR. ROSE:  I'm sorry.  Yes, please.

THE WITNESS:  To Page 19?

MR. ROSE:  To Page 19.  The HCFA 179.

THE WITNESS:  Okay.

BY MR. ROSE:
Q.  And you indicated the changes or the pen and ink changes in box 8 were yours.  That you made them.  Is the same true for the changes in Box 9 and 10?

A.  Yeah.

**Deposition of Adams, p. 31, l. 23-p. 34, l. 20.**

[18]  CMS Employee Adams testified as follows:

Q (by Bartlett Hospital Attorney):  I might be asking a little bit different of a question.  For example, just with respect to transmittal No. 01-002.

A (by Janice Adams):  Okay.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 25

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Q.  And you had what I would call, for lack of a better description, the original 179 that came in which would be the one without the pen and ink changes.  So you have the form as it came in originally when you first logged it in.

A.  Okay.

Q.  And now it looks like from this letter dated June 28th that you're making changes, pen and ink changes, to the 179.  Is the 179 with the changes considered the official 179 or is the prior one considered the official 179, or is there any distinction to be made there?

A.  When they send a pen and ink change in all the 179s are changed.

Q.  Okay.  So all the ones that relate to 01-002?

A.  Correct.

Q.  Okay.  But I -- well, let me see if I can try it a different way.  If you're the State Plan Coordinator and you get -- you see the 179 with the pen and ink changes.  Is this what you consider to be the request from the state as to what they want changed in their state plan?

A.  Well, the state doesn't do the pen and ink changes typically.  We do the pen and ink changes.  And when the 179 comes in, if there's any changes to be made, if the state is requesting pen and ink changes to the 179 the changes are made on all of the 179s.

Q.  Right.

A.  So there's -- I mean, there's an original.

Q.  But what I'm getting at –

A.  I'm not understanding what you're asking.

Q.  I may not be phrasing it all that well.  At some point in time you made these pen and ink changes, correct?

A.  Correct.

Q.  And this is at a point in time prior to the state plan amendment being approved.  Would that be correct?

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 26

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

original submission of SPA 01-002, and a request for "pen and ink" changes to the Form HCFA-179, the State effectively withdrew page 5 (originally submitted as page 6—see ROA 1-4) from consideration for approval by Region 10. Thus, the HCFA-179 and the pages attached thereto constitute SPA 01-002 in final form (ROA 70-72), and only pages 2 and 10 were requested and approved for amendment. Thus, contrary to Defendants' claim that Region took no action within 90 days on SPA 01-002, as set forth by Defendant O' Connor in her decision letter to Bob Labbe (ROA 77), Region 10 did act within that timeframe on the final version of SPA 01-002 that was officially submitted for its approval, as testified to by Janice Adams, the Region 10 official acting on behalf of Region 10 in the official capacity of State Plan Coordinator at the time SPA 01-002 was acted upon by Region 10. Ms. Adams testimony, in that it explains the reasoning and policies applied by Region 10 at the time SPA 01-002 was originally acted upon, is entitled to greater weight than Defendants' post-hoc attempt, at the urging of the State of Alaska more than two years later, to develop a rationale for retroactively deeming page 5 to be approved as part of SPA 01-002. See, e.g., *Stein v. Barton,* 740 F. Supp. 743 (D. Alaska 1990).[19]

The events surrounding the submission and approval of TN 01-001 further support the implication that the page 5 (originally marked as page 6) submitted by the State of Alaska as

---

A.  Correct.

Q.  Okay.  So since it's prior to the state plan being approved, once these pen and ink changes are made to the 179, is it your understanding that the 179, as changed with the pen and ink changes, represents the state plan amendment request from the state?

A.  Yes.

**Deposition of Adams, p. 36, l. 2-p. 37, l. 23.**

[19] The fact that (i) there is no evidence that anyone from the State of Alaska contacted Region 10 to complain that page 5 should also have been amended following receipt of the letter and Transmittal by Teresa Trimble, and (ii) neither Region 10 nor the State of Alaska included the page 5 at issue in this case as part of the official State Plan it maintained on file as of early 2003 (see ROA 104 and ROA 119) , provide further evidence that the approval decision made by Region 10 over two years after its original action on SPA 01-002 constituted a post-hoc rationalization to reach a desired outcome, rather than a consideration of the policies applied by the decision-makers acting at the time the original action was taken.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 27

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

part of TN 01-002 was withdrawn prior to approval of TN 01-002.  Page 5 of Attachment 4.19-B was amended through TN 01-001.  ROA 119.  Transmittal Number 01-001 was approved by Region 10 on May 9, 2001 (ROA 119), a date subsequent to the submission of Transmittal 01-002 on March 30, 2001 (ROA 72) and the email transmission of page 5 on April 10, 2001 (ROA 17). In addition, by letter dated April 23, 2001, again a date subsequent to submission of Transmittal 01-002 on March 30, 2001 and the email transmission of page 5 on April 10, 2001, Bob Labbe, Director of Alaska Medicaid, submitted a revised SPA 01-001, including copies of all the pages for which Alaska Medicaid was requesting amendment.  See the letter marked as Exhibit 26 to the Deposition of Adams, included as part of Attachment 1 to the Motion to Augment Agency Record, a copy of which is attached hereto.  This submission included Page 5 of Attachment 4.19-B.  This version of page 5 was thus approved as part of TN 01-001 with an effective date of March 3, 2001 (ROA 119), a date subsequent to the effective date of January 1, 2001 for SPA Transmittal 01-002.  Even if the Court accepts Defendants' position that the version of page 5 at issue in this case should be deemed effective as of January 1, 2001; the version of page 5 included in SPA 01-001 became effective March 3, 2001 and would have been in effect at all times subsequent to such date.  Furthermore, as the version of page 5 included in SPA 01-001 was submitted in final form on April 23, 2001, it was the version submitted latest in time, i.e., subsequent to both the March 30, 2001 submission of the page marked as page 6 and the email transmission of the page on April 10, 2001,[20] and thus is the version that would have properly been before Region 10 for approval.  In her decision letter deeming the page 5 at issue in this case to be approved effective as of January 1, 2001 (ROA 77), Defendant O'Connor ignores the intervening submission of page 5 through TN 01-001 and its March 3, 2001 effective date.  This illustrates the difficulties caused when an agency attempts to employ a post-hoc rationalization to reach a desired outcome, rather than examining the facts at issue, as the same would have been before the decision-makers charged with acting in the first instance.

Defendants acted arbitrarily and capriciously, abused their discretion, and acted

---

[20] Plaintiff still contends that the email transmission was invalid as further discussed in the following section.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 28

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

contrary to law in retroactively approving a page of a SPA that was withdrawn by the State of Alaska.

**3.    Defendants grant of an exception to its established procedures for Alaska Medicaid by accepting an email transmission constitutes arbitrary and capricious action and an abuse of discretion.**

Even if the Court is willing to accept Defendants' post-hoc rationalization for deeming the page 5 at issue in this case to have been approved effective January 1, 2001, as set forth in Defendant O'Connor's decision letter, the action cannot stand since that rationalization turns on Region 10's alleged acceptance of the email transmission of revised page 5 on April 10, 2001 contrary to its local procedures.  In her August 25, 2003 decision letter to Bob Labbe, Defendant O'Connor admits that "email submissions are not recognized as official communications" by Region 10, and indicates that an "exception is being made in this instance to facilitate closure for this SPA."  ROA 77.  In her May 21, 2004 letter explaining her prior "SPA approval letter, which reflects the policy of CMS," Defendant O'Connor states, "Although our local procedures typically do not recognize email submissions as official communications, exceptions are made for states in accordance with 42 CFR 430.16."  ROA 145.[21]  Contrary to Defendant O'Connor's contentions, 42 CFR 430.16 does not provide authority to Region 10 to violate standard procedures.  Automatic approval is necessarily contingent upon the amendment being submitted in approvable form; something which never occurred here.  *See* 42 C.F.R. § 447.256(c) which makes the effective date of the amendment contingent on the timing of submission of an "approvable amendment."

---

[21]  Despite Defendant O'Connor's contention that the email transmission was acceptable, Plaintiff would note that Region 10 still ultimately required the State of Alaska to submit a hard copy of page 5, which it did along with a letter dated July 29, 2003.  ROA 75.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 29

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Not only was acceptance of an email submission contrary to local procedures, as admitted by Defendant O'Connor, it was contrary to national policy as demonstrated by CMS' discussion of the traditional process of hard copy SPA submission and the introduction of its new e-SPA process, which was implemented in the fall of 2002, subsequent to the submission of SPA 01-002 by the State of Alaska:

> The Centers for Medicare and Medicaid Services (CMS) currently receives a hard copy of each state's Medicaid State Plan that defines how a state will operate its Medicaid program. Once the appropriate CMS Regional Office receives the SPA, CMS has the option to approve or disapprove the amendment, or to send the state a request for additional information (RAI).
>
> SPA submittal has historically involved mail or courier transmission of a hard-copy SPA document from the State to the CMS Regional Office. Problems with the traditional process include . . . This process has endured in large part because of the absence of a secure method to transmit a SPA, and to convey a State official's legal signature on the form 179 cover sheet. We believe that alternative solutions to these barriers are now available, and we are now able to make available an electronic process.
>
> ROA 153.

It is clear from this discussion that the Regional Offices uniformly required hard copy submission of SPA materials prior to the introduction of the e-SPA process by the national office. Acceptance of Defendants approval decision requires the Court to support Defendants' grant of an "exception" to CMS national as well as local policies and procedures, as characterized by Defendant O'Connor in her decision letter.[22]  Granting such an exception

---

[22] Based on the facts and law applicable to this case, it would not be surprising if Defendants attempt to disavow Defendant O'Connor's decision letter as articulating the basis for approval of the SPA at issue, and to offer a new and different post-hoc rationalization to justify the approval. *See, e.g., Wieler v. United States*, 364 F. Supp. 2d 1057, 1062 (D. Alaska 2005), where the Court noted that in a case whereby a plaintiff is challenging final agency action, "the agency must justify its final action by reference to the reasons it considered at the time it acted," citing *Friends of the Clearwater v. Dombeck,* 222 F.3d 552, 560 (9th Cir. 2000) for this proposition.

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 30

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

clearly constitutes arbitrary and capricious action and an abuse of discretion by Defendants. Administrative agencies are not allowed to ignore their own policies or procedures just because that might be convenient for them or to "facilitate closure" of a SPA request:

> . . . an agency changing its course must apply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.

*Greater Boston Television Corp. v. FCC,* 143 U.S. App. D.C. 383, 444 F.2d 841, 852 (D.C. Cir.), *cert. denied,* 403 U.S. 923 (1971).  *See also, Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 103 S.Ct. 2856 (1983) ("an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change.")

The Ninth Circuit addressed a federal agency's change in a settled practice, finding it to be an irrational departure from policy that must be overturned in *Lal v. INS*, 255 F.3d 998, *amended after reh'g at* 268 F.3d 1148 (9th Cir. 2001):

> By changing its settled practice with respect to this rule, the BIA [Board of Immigration Appeals] acted impermissibly and committed an arbitrary and capricious act.  *5 U.S.C. § 706*(2)(A) (2000)." Though the agency's discretion is unfettered at the outset, if it announces and follows -by rule or by settled course of adjudication -a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned ...." *INS v. Yueh-Shaio Yang, 519 U.S. 26, 32, 136 L. Ed. 2d 288, 117 S. Ct. 350 (1997).*

> 255 F.3d at 1007.

Another federal district court in the Ninth Circuit has also addressed a situation in which an agency reversed its prior policy and applied Ninth Circuit guidance in that regard.  In *Nair v. Coultice*, 162 F. Supp. 2d 1209 (S.D. Cal. 2001), the U.S. District Court for the Southern District of California articulated the high standard an agency must meet when departing from prior practice:

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 31

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1
2
3
4
5
6
7
8
9

However, "an agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is 'entitled to considerably less deference' than a consistently held agency view." *I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 446 n. 30, 94 L. Ed. 2d 434, 107 S. Ct. 1207 (1987)* (quoting *Watt v. Alaska, 451 U.S. 259, 273, 68 L. Ed. 2d 80, 101 S. Ct. 1673 (1981)).* See also *Seldovia Native Ass'n, Inc. v. Lujan, 904 F.2d 1335, 1345 (9th Cir.1990)* ("When an agency reverses a prior policy or statutory interpretation, its most recent expression is accorded less deference than is ordinarily extended to agency determinations."). Here, defendants do not deny that in the past the INS has tolled the six-year period during an alien's absence. Because defendants have failed to provide any explanation for the INS' change in policy, the court is not bound to construe the statute as defendants urge. See Id. (where an agency changes its position, the agency "will be required to show not only that its new policy is reasonable, but also to provide a reasonable rationale supporting its departure from prior practice").

10

162 F. Supp. 2d at 1211.

11

12
13
14
15
16
17
18
19

In this case, Region 10 has failed to demonstrate either that it had a reasonable rationale for departing from its settled practice of requiring SPA submission in hard copy rather than via email or that the position it has adopted in granting an "exception" for the State of Alaska is reasonable.  The only rationale provided for this departure is to "facilitate closure" for the State.  ROA 77.  This is an irrational basis for departing from a settled practice.  Therefore, applying the standard articulated by the Ninth Circuit in *Lal*, this Court should overturn the retroactive approval of page 5 by Region 10 as an arbitrary and capricious act and an abuse of discretion by Region 10 with the meaning of 5 U.S.C. § 706(2)(A).

20
21
22
23
24
25

Plaintiff would note that not only is Defendants' acceptance of an email transmission contrary to law, it is also contrary to the facts in this case.  Guy Hayashi, the Region 10 decision-maker acting in the original decision with regard to SPA 01-002, made a determination on behalf of Region 10, and duly notified Alaska Medicaid, that the email submission was not acceptable as filed.  In her email dated April 10, 2001, Barbara Knapp requested "direction" from Guy Hayashi with regard to revising the SPA.  ROA 17.  She

26

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 32

K:\53742\00001\DRK\DRK_P200G

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

specifically inquired whether she could make "these pen and ink changes by electronic mail" and attaching the "corrected forms." Id.  By email dated April 23, 2001, Mr. Hayashi rejected her email submission and informed her that the proper procedure for submitting a revised SPA would be through "pen & ink" authorizations.  ROA 31.  Alaska Medicaid did ultimately submit such "pen & ink" authorizations and a revised SPA following appropriate procedures on June 28, 2001. ROA 66-68.  As discussed above, this submission did not include page 5, such that the same was effectively withdrawn from consideration by Alaska Medicaid.  Again, Defendants failure to consider key facts illustrates the purpose behind the prohibition on employing post-hoc rationalizations to reach a desired outcome rather than considering the policies applied and actions taken by the decision-makers acting at the time of the original decision.

## V.    REQUEST FOR JUDGMENT

Plaintiff and Defendants agree on the underlying facts pertinent to this case, thus there is no genuine issue as to any material fact.  The points of disagreement go to the legal significance and interpretation of these facts.  Plaintiff has set forth above its contentions as to the law to be applied in this case and the legal conclusions that flow therefrom.  This case is not a situation where Alaska Medicaid made one or two small errors when it submitted SPA 01-002.  This is a case where numerous errors were made throughout the SPA submission and review process.  Despite repeated attempts the HCFA 179 was continuously filled out incorrectly.  Procedural prerequisites such as providing proper notice to the public of proposed SPA changes were ignored.  Assurances that must be given by the State to CMS were never given.  Letters specifically authorizing revisions as to which parts of the State Plan were being proposed for change were followed by Region 10 when submitted but then ignored years later.  There are simply too many errors attached to page 5 of SPA 01-002 to allow it to be considered part of the official State Plan for Alaska.  Therefore, Plaintiff

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 33

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  respectfully requests that the Court enter judgment in Plaintiff's favor and grant its Motion

2  for Summary Judgment.

3

4          DATED this 27th day of January, 2006.

5
                                        PRESTON GATES & ELLIS LLP
6

7                                       By: /s/ Stephen D. Rose
                                        Stephen D. Rose, ABA #8901002
8                                       925 Fourth Avenue, Suite 2900
                                        Seattle, WA 98104
9                                       Phone:    (206) 623-7580
                                        Fax:      (206) 623-7022
10                                      Email:  srose@prestongates.com
                                        Attorney for Plaintiff
11                                      Bartlett Regional Hospital
                                        _____
12

13

14

15

16
    I hereby certify that on January 27, 2006,
17  copies of the foregoing were served
    electronically on:
18
19  Daniel R. Cooper, Jr.
    Asst. U.S. Attorney
20  daniel.cooper@usdoj.gov

21
    /s/ Stephen D. Rose
22

23

24

25

26

MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 34

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022