```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF ALASKA
 3   CITY AND BOROUGH OF JUNEAU,
 4   ALASKA, d/b/a, BARTLETT,
 5   REGIONAL HOSPITAL
 6              Plaintiff,
 7
 8   vs.            No. A04-0152 CV (JKS)
 9
10   CENTERS FOR MEDICARE AND
11   MEDICAID SERVICES, REGION TEN,
12   UNITED STATES DEPARTMENT OF
13   HEALTH AND HUMAN SERVICES,
14   UNITED STATES OF AMERICA,
15   JOHN HAMMARLUND, sued in his
16   Official capacity, as the ACTING
17   ADMINISTRATOR OF REGION TEN
18   FOR THE CENTERS FOR MEDICARE
19   AND MEDICAID SERVICES, and
20   KAREN S. O'CONNOR, sued in her
21   Official capacity as ASSOCIATE
22   REGIONAL ADMINISTRATOR, DIVISION
23   OF MEDICAID & CHILDREN'S HEALTH,
24   REGION 10, FOR THE CENTERS FOR
25   MEDICARE AND MEDICAID SERVICES,
```



**NaeGeLi REPORTING CORPORATION**

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR 503.227.1544    Seattle, WA 206.622.3376    Spokane, WA 509.838.6000    Coeur d'Alene, ID 208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

Exhibit __A__

1
2                         Defendants.
3  _____
4
5              DEPOSITION OF KAREN S. O'CONNOR
6              Taken on behalf of the Plaintiffs
7                      August 26, 2005
8                          - - -
9
10       BE IT REMEMBERED THAT, pursuant to the Alaska
11  Rules of Civil Procedure, the deposition of KAREN S.
12  O'CONNOR, was taken before Sheralyn R. McCormick, a
13  Certified Shorthand Reporter, #3048, and a Notary Public
14  for the State of Washington, on August 26, 2005,
15  commencing at the hour of 9:10 a.m. the proceedings
16  being reported at 2201 Sixth Avenue, Suite 902, OGC
17  Conference Room, Seattle, Washington, 98121.
18
19
20
21
22
23
24
25

Naegeli Reporting Corporation
800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX
Portland, OR     Seattle, WA     Spokane, WA     Coeur d'Alene, ID
503.227.1544    206.622.3376    509.838.6000    208.667.1163
Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1              (Whereupon, a letter to Robert Valliant at
 2   Bartlett Hospital was marked Exhibit-48 for identification.)
 3   SEATTLE, WASHINGTON;
 4   FRIDAY, AUGUST 26, 2005
 5   9:10 A.M.
 6   KAREN S. O'CONNOR,
 7   having been first duly sworn, was examined and testified
 8   as follows:
 9   EXAMINATION
10   BY-MR.ROSE:
11       Q.   Good morning.  We've just met.
12       A.   Good morning.
13       Q.   My name is Stephen Rose and I'm here with Dawn
14   Kreysar here today and we represent Bartlett Regional
15   Hospital with respect to a lawsuit that was filed that
16   named Region 10 as one of the defendants and I believe
17   actually you in your official capacity also is my
18   official recollection.
19            Today what I'd like to do is ask you a series of
20   questions regarding documentation we've been provided
21   and just about different issues regarding primarily
22   Alaska state plan amendment 01-002.  I'm not sure how
23   long it will take, but I'll get through everything as
24   quickly as possible, but at any time during the day if
25   you want to take a break for whatever reason --
```



Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR 503.227.1544  Seattle, WA 206.622.3376  Spokane, WA 509.838.6000  Coeur d'Alene, ID 208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1      A.   No.
 2      Q.   Okay.  Have you had your deposition taken before?
 3      A.   Yes.
 4      Q.   Okay.  But was it in any way job related with
 5   respect to Region 10?
 6      A.   No.
 7      Q.   Okay.  What is your current position with respect
 8   to Region 10?
 9      A.   Acting Deputy Regional Administrator.
10      Q.   And when did you become the acting Deputy
11   Regional Administrator?
12      A.   Three months ago.
13      Q.   Okay.  And what are your duties and
14   responsibilities as the acting Deputy Regional
15   Administrator?
16      A.   Oversight of the programs and policies of this
17   region, spokesperson for the region in the absence of
18   the regional administrator.
19      Q.   Okay.  And prior to being appointed the acting
20   Deputy Regional Administrator, what was your position
21   with CMS?
22      A.   The Associate Regional Administrator for Medicaid
23   & Children's Health.
24      Q.   Okay.  And what would be your duties and
25   responsibilities in that position?
```



Naegeli Reporting Corporation
800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX
Portland, OR 503.227.1544
Seattle, WA 206.622.3376
Spokane, WA 509.838.6000
Coeur d'Alene, ID 208.667.1163
Court Reporting   Trial Presentation   Videoconferencing   Videography

```
 1      A.  Oversight of the Medicaid & Children's Health
 2  program.
 3      Q.  Okay.  And as part of your oversight of the
 4  Medicaid programs, would that include oversight of the
 5  handling of state plan amendments for the state of
 6  Alaska?
 7      A.  Yes.
 8      Q.  Okay.  And in that capacity what types of things
 9  would you do?
10      A.  In that capacity I review the work of the staff
11  to assure that it is in compliance with statute and reg
12  and I over see the process and I'm final signature on
13  state plan amendments that are approved.  Central office
14  collaborates in that process, but final signature is
15  delegated to the regional offices.
16      Q.  Okay.  When did you first start working for
17  Region 10?
18      A.  November 2000.
19      Q.  Okay.  And other than the two positions that
20  you've already told us about, the acting Deputy Regional
21  Administrator and the associate -- I won't get the title
22  right, but -- the associate for Medicaid?  I'll just
23  shorthand it.
24      A.  Right.
25      Q.  Have you held any other positions with Region 10?
```



Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR      Seattle, WA       Spokane, WA      Coeur d'Alene, ID
503.227.1544      206.622.3376      509.838.6000     208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1     A.  Well, I was branch manager for Medicare Manage
 2  Care when I first began which was probably two years,
 3  then I was branch manager for Medicaid and SCHIP before
 4  the ARA position.
 5     Q.  Okay.  What I'd like to do today is ask you some
 6  questions that are focusing on -- primarily on state
 7  plan amendment 01-002 from the state of Alaska, and just
 8  ask you to begin with whether prior to your deposition
 9  today did you take any steps to review documents or
10  prepare for today's deposition?
11     A.  Yes, I did.
12     Q.  And, first off, what types of things did you do
13  to prepare for today's deposition?
14     A.  I reviewed the documents that are in this file
15  which is a chronology of events and a series of letters
16  that have gone back and forth between the region and the
17  state.  In e-mails that went back and forth between
18  regional offices and the state.
19     Q.  Okay.  And I don't want to -- I want to preface
20  this question by saying that I am not asking you with
21  the next question about any conversations you may have
22  with legal counsel, so excluding any conversations you
23  may have had with legal counsel, did you have
24  conversations with any members of your staff to prepare
25  for today's deposition?
```



Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR      Seattle, WA      Spokane, WA      Coeur d'Alene, ID
503.227.1544     206.622.3376     509.838.6000     208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

1   Okay.  All right.  I'm sorry.  You need to be looking at
2   Exhibit 24.
3            MR. ROSE:  I'm sorry.  And just so the
4   record is clear, you were looking at the ones in your
5   file opposed to the --
6            THE WITNESS:  Yeah.  Okay.
7   BY MR. ROSE:
8       Q.  All right.  And let me, just so that the record
9   is clear with respect, to the cover letter and the
10  attached documentation, is this in general the type of
11  letter and documentation you would expect if a state
12  wanted to --
13      A.  Yes.
14      Q.  -- submit a state plan amendment?
15      A.  Yes.
16      Q.  Okay.  And then I'd like to ask you, we'll go to
17  Page 2 of Exhibit 4 and you mentioned the 179.  Is Page
18  2 what is commonly referred to as the 179?
19      A.  Yes.
20      Q.  Okay.  And what's your understanding of the
21  purpose or function of the Form 179?
22      A.  It's a transmittal notice from the state to
23  Region 10 --
24      Q.  Okay.
25      A.  To the region --



**Naegeli Reporting Corporation**

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR       Seattle, WA       Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000      208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1        Q.  And --
 2        A.  -- of what section of the plan they intend to
 3   amendment.
 4        Q.  Okay.  And is that a standardized form that is
 5   prepared for CMS nationwide?
 6        A.  Yes.
 7        Q.  Okay.  And do you know why the form requests the
 8   type of information that's requested by it?
 9        A.  It's to create a -- it's to create documentation
10   of what the state is planning to amendment.
11        Q.  Okay.  I can take that back so we don't get your
12   area real cluttered.  Feel free to look at it more if
13   you want.  And next I'd like to put a couple of
14   documents in front of you and they were marked as part
15   of our depositions in Juneau as Exhibit 6 and 12.
16             MR. COOPER:  Let's close up your -- I don't
17   want to get anything all mixed up yet.
18             THE WITNESS:  All right.
19             MR. COOPER:  We'll get it mixed up later.
20             THE WITNESS:  Okay.  Well, I have seen this
21   e-mail after our review of the files.
22             MR. COOPER:  When you say "this e-mail," you
23   have to refer to the exhibit number so --
24             THE WITNESS:  6.
25             MR. COOPER:  So you've seen Exhibit 6 as you
```

**NaeGeli Reporting Corporation**

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR 503.227.1544   Seattle, WA 206.622.3376   Spokane, WA 509.838.6000   Coeur d'Alene, ID 208.667.1163

Court Reporting   Trial Presentation   Videoconferencing   Videography

```
 1          MR. COOPER:  And then we'll both take a
 2   break before I finish so I can consult as well.
 3          MR. ROSE:  That would be fine.
 4          MR. COOPER:  Okay.
 5   CROSS-EXAMINATION
 6   BY-MR.COOPER:
 7      Q.  Ms. O' Conner, taking the last issue addressed by
 8   Mr. Rose first, there's a regulation, is there not, that
 9   requires public notice concerning state plan amendments?
10   A federal regulation?
11      A.  Yes.
12      Q.  Does that regulation have any modifying language
13   and specifically does it have any modifying language
14   concerning whether or not the proposed change or
15   proposed amendment is a significant event?
16      A.  It has to be a significant event.
17      Q.  So that before the regulation actually triggers a
18   public notice the proposed amendment has to be a
19   significant amendment; is that correct?
20      A.  Yes.
21      Q.  Let's talk a little about the HCFA now CMS Form
22   179, if we may, okay?  Is it fair to characterize the
23   Form 179 as a transmittal form?
24      A.  Completely.
25      Q.  That is it transmits from the state to CMS the
```



Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR 503.227.1544   Seattle, WA 206.622.3376   Spokane, WA 509.838.6000   Coeur d'Alene, ID 208.667.1163

Court Reporting   Trial Presentation   Videoconferencing   Videography

```
 1   plan amendment that's proposed, correct?
 2       A.  Correct.
 3       Q.  And then in turn when that plan amendment is
 4   either accepted, denied, or modified it transmits from
 5   CMS back to the state the final disposition of that plan
 6   amendment, correct?
 7       A.  Correct.
 8       Q.  Would that Form 179, in the formal course of
 9   business, be provided by CMS to any party entity person
10   other than the state that sent in the Form 179?
11       A.  No one else, no.  I mean, I can't speak for what
12   the state does, but --
13       Q.  My question really dealt with CMS.  Does CMS
14   distribute that Form 179 to any person or entity?
15       A.  It's in our files, no.
16       Q.  Okay.  Now, back in 2001 there -- we have seen --
17       A.  Yes.
18       Q.  -- from an exhibit that there were pen and ink
19   changes on Exhibit 8 to a Form 179.  Do you recall
20   seeing that?
21       A.  Yes.
22       Q.  Was that an allowed practice back in 2001?
23       A.  Apparently.
24       Q.  Since you took over the position of ARA, which is
25   Associate Regional Administrator, do you allow that
```


Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR    Seattle, WA    Spokane, WA    Coeur d'Alene, ID
503.227.1544    206.622.3376   509.838.6000   208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1   practice on Form 179s?
 2       A.  I do not.
 3       Q.  And why is that?
 4       A.  I want a clean copy with correct information on
 5   it.
 6       Q.  Now, does the Form 179, so far as you know, have
 7   the force of law or regulation?
 8       A.  I do not believe, no.  No.  As I understand it,
 9   no.
10       Q.  It's just a form that CMS using to --
11       A.  To transmit information.  Right.
12       Q.  Becomes the cover sheet of the whole plan
13   amendment package, right?
14       A.  Correct, it's a file -- it's a file mechanism.
15       Q.  You're speaking about policy in general.  If, for
16   instance, Jan Mertel, a policy analyst, were to prepare
17   a Power Point presentation talking about a Form 179,
18   would that become official policy of CMS Region 10?
19       A.  No.
20       Q.  Who can formulate official policy for CMS Region
21   10, if anyone?
22       A.  The centers for Medicaid and State Operations in
23   Baltimore.
24       Q.  Okay.  Exhibit 12, that August 25th 2003 letter
25   went out over your signature block by -- it looks like
```



**Naegeli Reporting Corporation**

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR         Seattle, WA         Spokane, WA         Coeur d'Alene, ID
503.227.1544         206.622.3376        509.838.6000        208.667.1163

Court Reporting      Trial Presentation   Videoconferencing   Videography

```
 1   submitting a proposed proposal via e-mail?
 2       A.  No.
 3       Q.  Is there any regulation that requires to your
 4   knowledge in 2001 that these state plan amendments be
 5   submitted in hard copy versus --
 6       A.  Nothing.
 7       Q.  -- versus e-mail.  Okay.  Now, when you were
 8   doing your analysis of the information that Mr. Fico had
 9   provided to you and the infamous chronology in the
10   folder that you have in front of you, what did you
11   finally conclude that drew you to the conclusion -- let
12   me strike that and start over.
13           What was important to you in making the
14   conclusion that you reached with respect to the Page 5
15   of SPA 01-002?
16       A.  In the final analysis, the final signatory, the
17   statute and reg must guide my final decision.
18       Q.  Okay.
19       A.  And the state submitted this amendment and if it
20   is not approved or denied within 90 days it is deemed
21   approval -- approved.  There was documentation that the
22   state submitted it.
23       Q.  That in fact the state submitted the plan
24   language dealing with Outpatient Health Services back in
25   March 30th of 2001?
```



NaeGeLi REPORTING CORPORATION

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR       Seattle, WA       Spokane, WA       Coeur d'Alene, ID
503.227.1544       206.622.3376      509.838.6000      208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography

```
 1      A.   Correct.
 2      Q.   With their original SPA application?
 3      A.   Correct, and my final decision has to be based on
 4   law and statute.
 5      Q.   So if your plan analyst, for whatever reason,
 6   drops that particular page on Outpatient Services
 7   through the cracks and didn't look at it, whatever the
 8   state had sent in had to be approved as a matter of
 9   regulation.
10      A.   Correct, as I understand our reg, yes.  Yes.
11           MR. COOPER:  Thank you.  I don't have
12   anything further.
13           MR. ROSE:  I just have I think a question or
14   two.
15   RE-EXAMINATION
16   BY-MR.ROSE:
17      Q.   I'd like to hand back to you one of the exhibits
18   we already looked at which is Exhibit 24 which is an
19   e-mail from Mr. Hayashi, and I forget who it went to.
20      A.   Barbara Knapp.
21      Q.   To Barbara Knapp.  And what I'm curious about, is
22   his statement where he says that if there's any problems
23   with the state plan amendment that was submitted, that
24   it cannot be corrected through the recent submissions
25   from the state.
```



Naegeli Reporting Corporation

800.528.3335
www.NaegeliReporting.com
503.227.7123 FAX

Portland, OR      Seattle, WA       Spokane, WA      Coeur d'Alene, ID
503.227.1544      206.622.3376      509.838.6000     208.667.1163

Court Reporting    Trial Presentation    Videoconferencing    Videography