DEBORAH M. SMITH
Acting United States Attorney

DANIEL R. COOPER, JR.
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
daniel.cooper@usdoj.gov

Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CITY AND BOROUGH OF JUNEAU, ALASKA, d/b/a BARTLETT REGIONAL HOSPITAL,<br><br>     Plaintiff,<br><br>vs.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION TEN, *et.al.*<br><br>     Defendants. | Case No. 3:04-cv-152-JKS<br><br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10, *et.al*, OPPOSITION TO MOTION FOR SUMMARY JUDGMENT<br>[D. Ak. LR Rule 16.3(c)(2)]<br>[Rule 56, F.R.Civ.P.] |

Bartlett Regional Hospital has moved for summary judgment pursuant to Rule 56, F.R.Civ.P. and D. Ak. LR 16.3(c)(1) at Docket 43. Centers for Medicare and Medicaid Services, Region 10, *et.al*, (hereafter CMS) opposes the motion, and moves in turn for summary judgment in its favor[1] pursuant to D. Ak. LR 16.3(c)(2) and Rule 56, F.R.Civ.P. for the reasons set forth below.

I.    <u>Introduction</u>.

Plaintiff (hereafter Bartlett) filed its original complaint for declaratory judgment and for a writ of mandamus[2] alleging that CMS acted improperly in approving page 5 of the State of Alaska's State Plan Amendment 01-002 (hereafter, the "SPA"). CMS filed a Motion to Dismiss those two counts,[3] which the court granted. That is, the court granted the motion to dismiss the two counts, but not the complete cause of action.[4]

---

[1]  D. Ak. LR 16.3(c)(2) requires that the defendant file "a principal brief in opposition which shall be deemed a cross-motion for summary judgment." This pleading is also required by the court's order at Docket 38.

[2]  See, Complaint, Docket 1, ¶¶ 37 - 38.

[3]  Motion to Dismiss, Docket 17.

[4]  Order, Docket 27. "The court has reviewed the record and concludes that the appropriate resolution of pending motions is to GRANT the motion at Docket 17, viewed as a motion to dismiss the complaint, and not the action, ..."

Bartlett also filed a Motion to Amend Complaint[5] seeking a reversal of the agency decision under provisions of the Administrative Procedures Act (the "APA") (5 U.S.C. § 701 *et. seq.*) which was granted.[6]  After the First Amended Complaint was filed,[7] CMS filed an answer,[8] and the issues were joined anew under this new theory.

The relevant facts as pleaded in the Amended Complaint can be summarized as follows:  The State of Alaska submitted SPA 01-002, including a page 5 dealing with outpatient hospital services, to CMS for approval.  Bartlett alleges the approval of a State Plan Amendment which includes this page will cause Bartlett to suffer money damages.  Bartlett, therefore, seeks an order from this court that sets aside action by CMS which approves this particular page as part of the State plan.

Bartlett argues in the complaint (and in their Motion for Summary Judgment, or "MSJ", as well) that the SPA was improperly submitted, that is:

---

[5]  Motion to Amend Complaint, Docket 20.

[6]  Order, Docket 27.

[7]  Docket 39.

[8]  Docket 41.

1.  The SPA was not submitted in an "approvable" form,[9]

2.  The State failed to provide adequate and proper notice of the proposed changes,[10]

3.  The State withdrew the pertinent page,[11] and

4.  CMS could not approve an electronic submission of a SPA.[12]

It is undisputed that CMS took no action upon page 5 of SPA 01-002 within 90 days as required by the regulations.   Neither the State of Alaska nor CMS discovered this failure by CMS until Bartlett became involved with the State in a rate adjudication hearing.  Bartlett moves for summary judgment, arguing that CMS acted arbitrarily and capriciously, abused its discretion, and acted contrary to law.[13]

CMS argues that because it failed to act on page 5 of SPA 01-002 within 90

---

[9]  "At issue in this case is whether SPA Attachment 4.19B Page 5 ... was approved or could be deemed "approved" ... as part of TN No. 01-002 ... .  Bartlett contends that this proposed SPA was never submitted to CMS in approvable form by the State ... and that the State ... withdrew this page from consideration by Region 10 prior to it being retroactively approved." MSJ, p. 7.

[10]  MSJ, p. 17, *et. seq.*

[11]  MSJ, p. 21, *et. seq.*

[12]  MSJ, p. 29, *et. seq.*

[13]  MSJ, p. 16.

days of its submission, that page of the SPA is deemed approved as a matter of law.

II.    <u>Applicable Law</u>.

    A.    <u>Motions for Summary Judgment</u>.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.  The moving party has the burden of showing that there is no genuine dispute as to a material fact.[14]  The moving party need not present evidence; it need only point out the lack of any genuine dispute as to a material fact.  Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[15]  The nonmoving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact finder to resolve the parties differing views at trial.[16]

---

[14]  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

[15]  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

[16]  <u>Id</u>.

B.  Underline{The Administrative Procedures Act - Standard of Review}.

Judicial review of final agency action under the Administrative Procedures

Act[17] is a unique procedure, completely different in both nature and scope from the

procedures used to resolve civil actions within the original jurisdiction of the

federal district courts.[18]  The Supreme Court has emphasized repeatedly the strict

limitations the APA imposes on judicial review:

> We have made it abundantly clear before that when there is a
> contemporaneous explanation of the agency decision, the validity of that
> action must "stand or fall on the propriety of that finding, judged, of course,
> by the appropriate standard of review.  If that finding is not sustainable on
> the administrative record made, then the [agency] decision must be vacated
> and the matter remanded to [the agency] for further consideration."
> (Internal citations omitted).[19]

> We have also made it clear that the role of a court in reviewing the
> sufficiency of an agency's consideration of environmental factors is a
> limited one, limited both by the time at which the decision was made and by
> the statute mandating review.[20]

Thus, the APA limits judicial review of agency action to the administrative

---

[17] 5 U.S.C. §§ 701 *et. seq.*

[18] See, e.g., Occidental Eng'g Co. v. INS, 753 F.2d 766, 769 (9th Cir. 1985) (contrasting the different purposes of summary judgment in original proceedings as opposed to the review of a decision by an administrative agency).

[19] Vermont Yankee Nuclear Power Corp.  v. Natural Resources Defense Counsel, 435 U.S. 519, 549 (1978).

[20] Id. at 555.

record.[21]   The Supreme Court and Ninth Circuit have also emphasized that "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."[22]   For this reason, post-decisional information is generally excluded from the Court's review.[23]  Ultimately, when considering the merits of the case, "[t]he task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on <u>the record the agency presents to the reviewing court</u>."[24]  The APA directs the Court to "review the whole record or those parts cited of it by a party."[25]

When adjudicating a challenge to an agency action, the district court acts as a reviewing court; it does not act as a fact-finder.[26]  When reviewing agency action, the district court "sits as an appellate tribunal, <u>not as a court authorized to</u>

---

[21]   <u>Id</u> at 549.

[22]   <u>Camp</u>, 411 U.S. at 142.  <u>See also</u> <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 743-44 (1985); <u>Southwest Center for Biological Diversity v. U.S. Forest Service</u>, 100 F.3d 1443, 1450 (9th Cir. 1996).

[23]   <u>Id</u>.; <u>Friends of the Earth v. Hintz</u>, 800 F.2d 822, 830-31 (9th Cir. 1986).

[24]   <u>Hintz</u>, 800 F.2d at 829 (emphasis added); <u>Southwest Center</u>, 100 F.3d at 1450-51.

[25]   5 U.S.C. § 706.

[26]   <u>Florida Power & Light</u>, 470 U.S. at 744.

determine in a trial-type proceeding whether the Secretary's [action] was factually

flawed." [27]  "[T]he function of the district court is to determine whether or not as a

matter of law the evidence in the administrative record permitted the agency to

make the decision it did.  *De novo* fact-finding by the district court is allowed only

in limited circumstances. . . ."[28]  The Court is "not required to resolve any facts in

a review of an administrative proceeding."[29]

Because of these unique aspects of judicial review of administrative action,

summary judgment motions decided in this context are akin to a motion to dismiss.

As the Ninth Circuit has explained, in conducting review of agency action:

> [The district] court is not required to resolve any facts in a review of
> an administrative proceeding.  Certainly, there may be issues of fact
> before the administrative agency.  However, the function of the
> district court is to determine whether or not as a matter of law the
> evidence in the administrative record permitted the agency to make
> the decision it did.  *De novo* fact-finding by the district court is
> allowed only in limited circumstances . . . .  The appellant confuses
> the use of summary judgment in an original district court proceeding
> with the use of summary judgment where, as here, the district court is
> reviewing a decision of an administrative agency which is itself the
> finder of fact.  In the former case, summary judgment is appropriate

---

[27] Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1225 (D.C. Cir. 1993)
(emphasis added).

[28] Occidental Engineering Co., 753 F.2d at 769.

[29] Id.  See also Florida Power& Light, 470 U.S. at 744 ("The fact-finding capacity of the
district court is thus typically unnecessary to judicial review of agency decision making.").

only when the court finds there are no factual issues requiring resolution by trial. In the latter case, summary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did.[30]

Thus, Plaintiff's claims for review under the APA must be resolved on summary judgment, not through a trial. See United States v. Morgan, 313 U.S. 409, 421-22 (1941) (holding that, just as it would be inappropriate to probe the mental processes of a judge, the mental processes of agency decision makers should not be the subject of trials).

Agency action may be set aside only if found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a). This standard of review is deferential and limited; the court's role is essentially to determine only "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."[31]

The Court's role is not to form an opinion as to what it would have done had

---

[30] Occidental Eng'g Co., 753 F.2d at 769-70 (internal citations omitted); City & County of San Francisco v. United States, 130 F.3d 873, 876 (9th Cir. 1997). See also American Bioscience v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("[W]hen a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law") (footnote omitted); Marshall County Health Care Auth., 988 F.2d at 1226 (holding that in agency review context there was no real distinction between questions presented in Rule 12(b)(6) motion to dismiss and motion for summary judgment).

[31] Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). See also Citizens Interested in Bull Run, Inc. v. Edrington, 781 F. Supp. 1502, 1506-07 (D. Or. 1991) (discussing arbitrary and capricious standard of review).

it been presented with the question decided by the agency. The Court "is not empowered to substitute its judgment for that of the agency." <u>Overton Park</u>, 401 U.S. at 416. <u>See also</u> <u>Environmental Defense Fund ("EDF") v. Costle</u>, 657 F.2d 275, 283 (D.C. Cir. 1981). Although the Court must undertake a "thorough, probing, in-depth review," it is empowered only to determine whether "the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." <u>Overton Park</u>, 401 U.S. at 415-416. <u>See also</u> <u>Marsh v. Oregon Natural Resources Council</u>, 490 U.S. 360, 378 (1989); <u>Baltimore Gas & Electric Co. v. Natural Resources Defense Council, Inc.</u>, 462 U.S. 87, 105 (1983); <u>Carlton v. Babbitt</u>, 900 F. Supp. 526, 530 (D.D.C. 1995). The APA standard "mandates judicial affirmance if a rational basis for the agency's decision is presented. . . even though [a court] might otherwise disagree." <u>EDF</u>, 657 F.2d at 283 (citations omitted).

Parties challenging administrative decisions bear a heavy burden of proof; the agency's decision and processes are entitled to a presumption of validity and regularity.[32] Thus, although the Court should not simply "rubber stamp[]" the agency's decision, the burden of proof is on the party challenging the decision.[33]

C.    <u>The SPA Approval Process</u>.

The regulations concerning approval of State Plan Amendments and

---

[32]   <u>See</u>  <u>Overton Park</u>, 401 U.S. at 415 ("Certainly, the Secretary's decision is entitled to a presumption of regularity."); <u>Independent Acceptance Co. v. California</u>, 204 F.3d 1247, 1251 (9th Cir. 2000) (noting that APA standard of review is "highly deferential" and "presum[es] agency action to be valid"); <u>Ethyl Corp. v. EPA</u>, 541 F.2d 1, 34 (D.C. Cir. 1976) (same); <u>National Wildlife Fed'n v. Burford</u>, 677 F Supp. 1445, 1453 (D. Mont. 1985) (noting "heavy burden of proof to show that the [agency] did not properly discharge its obligations. . ."), <u>aff'd</u>, 871 F.2d 849 (9th Cir. 1989).

[33]   <u>EDF</u>, 657 F.2d at 283 n.28; <u>Cleary, Gottlieb, Steen & Hamilton v. Department of Health and Human Services</u>, 844 F. Supp. 770, 783 (D. D.C. 1993) (citing <u>Schweiker v. McClure</u>, 456 U.S. 188 (1982)).

Assurances are found generally at 42 C.F.R. § 447.256 - Procedures for CMS

Action on Assurances and State Plan Amendments.  This regulation provides:

(a) Criteria for approval.

(1) CMS approval action on State plans and State plan amendments, is taken in accordance with Subpart B of Part 430 of this chapter and sections 1116, 1902(b) and 1915(f) of the Act.

(2) In the case of State plan and plan amendment changes in payment methods and standards, CMS bases its approval on the acceptability of the Medicaid agency's assurances that the requirements of § 447.253 have been met, and the State's compliance with the other requirements of this subpart.

(b) Time Limit. CMS will send a notice to the agency of its determination as to whether the assurances regarding a State plan amendment are acceptable within 90 days of the date CMS receives the assurances described in § 447.253, and the related information described in § 447.255 of this subpart. <u>If CMS does not send a notice to the agency of its determination within this time limit and the provisions in paragraph (a) of this section are met, the assurances and/or the State plan amendment will be deemed accepted and approved</u>.

(emphasis added).

The assurances referred to in 42 C.F.R. § 447.253(a) are required only for the

requirements set forth in 447.253(b) - (i).  The only services mentioned in

subsections (b) through (i) are inpatient hospital services, nursing facility services,

and changes in ownership of hospitals and certain other entities.  Outpatient

hospital services are not mentioned, and thus 42 C.F.R. § 447.253(a) can not apply

to amendments dealing with outpatient hospital services.

The requirement for review of State Plan Amendments is further explained

in 42 C.F.R. § 430.14, which provides:

§ 430.14 Review of State plan material.

CMS regional staff reviews State plans and plan amendments, discusses any
issues with the Medicaid agency, and consults with central office staff on
questions regarding application of Federal policy.

The procedures governing appeals of agency determinations on State plans are

found in 42 C.F.R. 430, Part D.  That Part deals with appeals when a State

disagrees with an Agency determination of the State Plan (or its amendments) or

rate reimbursements.  The time in which a State may appeal an adverse agency

determination is 60 days.[34]

III.    Undisputed Facts.

The undisputed facts are set forth in the Record of Appeal which is found at

Docket 32.  That record discloses the following facts:

By letter dated March 30, 2001, Bob Labbe, on behalf of the State of

Alaska, transmitted SPA 01-002 to CMS.[35]  The transmittal letter described the

SPA as covering changes to the "FQHC" and "RHC" sections and changes to the

---

[34]  42 § C.F.R. 430.18(a).

[35]  Record on Appeal, or "ROA", 1 - 4.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS                     12

outpatient hospital services payment methodology (which reflected a change in the "states [sic] reimbursement methods.").[36]  The only page of this SPA which is relevant to this dispute is the page found at ROA 2, which is numbered in the SPA transmittal format as "Attachment 4.419B, Page 6."  It is undisputed that there was no HCFA 179 Transmittal form[37] attached to the document as found in the record.

    The next document in the record is an e-mail from Neal Kutchins to Guy Hayashi dated April 3, 2001, which transmitted in electronic form the same documents sent by Labbe, with the addition of an electronic HCFA 179.[38] Kutchins worked for the State of Alaska, and Hayashi was an employee of HCFA, now CMS.  The page concerning the changes to the outpatient hospital services is the same in both transmittals.[39]

    Apparently there was confusion at the State Medicaid office, because the next documents in the agency records are e-mails from Barbara Knapp, a State employee, to Guy Hayashi asking for direction on how to correct certain errors.[40]

---

[36]  ROA 4.

[37]  The HCFA 179 Transmittal form is a document that CMS (formerly the Health Care Financing Authority, or HCFA) relies upon as an internal document to control document flow.

[38]  ROA 5 - 9.

[39]  Compare, ROA 6 with ROA 2.

[40]  ROA 10 - 17.

In this e-mail exchange, Ms. Knapp forwards, among other documents, a page denominated "<<4.19B page 5 .doc>>" which includes the language about the outpatient hospital services, but has different language concerning other areas not at issue in this complaint.[41]

The next document[42] in the Record on Appeal appears to be an e-mail from Hayashi to Ms. Knapp and to an e-mail address "BALT2.CO2.KHeinrich" with an attachment.

To KHeinrich, Hayashi writes:

> Attached is AK SPA 01-002 which amends Attachment 4.19B for FQHC/RHS PPS and O/P hospital. The changes for O/P hospital doesn't appear to involve a Pro-Share.[43]

To Ms. Knapp, Hayashi writes:

> Attached is the SPA that we received. If there are any problems, we can correct them later and not through your recent submission. When it comes time to act on the SPA, we may ask for "pen and ink" authorizations. Sit back for awhile.[44]

In the attachment is the page related to outpatient hospital services, page 6,

---

[41] ROA 13. While both ROA 4 and 6 have the language "CHANGE HERE" directly below the outpatient hospital services paragraph, ROA 13 does not. Moreover, ROA 13 has a new section, "physical and occupational therapy services."

[42] ROA 18 - 32.

[43] ROA 32.

[44] ROA 31.

(previously page 5) which is the same as the original submission sent with the Labbe letter of March 30th.[45]

The next document, ROA 33, is a list of documents found on a diskette that originally belonged to Hayashi.  Documents 34 - 65 are e-mail correspondence, some with hand-written notes upon them, between various employees of CMS and the State of Alaska.  The page in dispute here (either page 5 or page 6, both being identical and dealing with outpatient hospital services) appears only twice in this document: at ROA 50 and ROA 63.  While it is difficult to see how ROA 50 fits into the correspondence flow, ROA 63 is an attachment to an e-mail between two employees of CMS, and demonstrates that page 6 was still traveling with the other two pages of SPA01-002 as late as June 28, 2001, the date of the e-mail.

On June 28, 2001, Labbe sent another letter to CMS stating:

> Enclosed, please find revised SPA 01-002, regarding new sections for Federally Qualified Health Center Services (page 2) and Rural Health Care Clinic Services (page 10) to Attachment 4.19B. These changes reflect recently imposed federal requirements and discussions with Dzung Hoang from the Denver Office of the CMS.  These pages 2 and 10 are substitutes to the submittal sent on March 30, 2001. ...[46]

There were only two pages attached to this letter, pages 2 and 10 dealing with

---

[45] ROA 25.  Compare with ROA 2.

[46] ROA 68.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS                    15

Federally Qualified Health Center (FQHC) Services and Rural Health Care (RHC) Clinic Services.

The next document[47] is the notice of approval of SPA 01-002 from CMS to the State of Alaska. The cover letter[48] only mentions Federally Qualified Health Center Services and Rural Health Care Clinic Services, as does the attached HCFA 179[49] and the pages which are attached.[50] There is no mention of page 5 or 6, or of outpatient hospital services.

The next correspondence or document in the agency record is a letter dated July 29, 2003, from the State to CMS, which includes the statement:

> Attached please find a hard copy of Attachment 4.19B, page 5, of the State of Alaska Medicaid plan as requested through Joe Fico. Your office received the original page with the transmittal of State Plan Amendment 01-002 sent on March 30, 2001 with a requested effective date of January 1, 2001.
>
> It is our understanding that the attached page is deemed approved effective January 1, 2001, as required in 42 C.F.R. 430.16 since CMS did not send a written disapproval or request for more information within the 90-day time frame allowed. ...[51]

---

[47] ROA 69 - 73.

[48] ROA 73.

[49] ROA 72.

[50] ROA 70 - 71.

[51] ROA 75.

Attached to this letter is the same page 5[52] as transmitted with Barbara Knapp's e-mail found at ROA 13.

The final document in the Record on Appeal submitted by the agency at Docket 32 is a letter over the signature block of Karen O'Connor dated August 25, 2003.[53] This letter states:

> The Centers for Medicare and Medicaid Services (CMS), Division of Medicaid and Children's Health, Region 10, approved State Plan Amendment (SPA) Alaska 01-002 on June 29, 2001, with an effective date of January 1, 2001. The associated transmittal indicated that a new page 2 and a new page 10 had replaced existing pages in the Alaska Medicaid State Plan.
>
> The Alaska Department of Health and Social Service [sic] originally submitted SPA Alaska 01-002 to Region 10, CMS, Division of Medicaid and Children's Health on March 30, 2001. On April 10, 2001, a revised page 5 was e-mailed to Region 10, CMS. Although email submissions are not recognized as official communication, an exception is being made in this instance to facilitate closure for this SPA. I am aware the Department of Health and Social Service [sic] had considered this page, as emailed, to have been approved effective January 1, 2001. There is no evidence of any action taken within 90 days, by the Region, as required by 42 C.F.R. 430.16, to counter that assertion.
>
> Therefore, CMS, Region 10, approves page 5, as resent by Alaska on July 29, 2003, as the official page 5 of the Alaska State Medicaid plan

---

[52] ROA 74.

[53] ROA 77. Karen O'Connor was the Associate Regional Administrator of the Division of Medicaid and Children's Health at CMS. See, Deposition of Karen O'Connor, Exhibit A., pp. 4, 6 - 8.

effective January 1, 2001. ... [54]

The foregoing constitute the entire record before the agency, CMS, from which Bartlett appeals.

There is no record, and Bartlett does not assert that a record exists, that Bartlett ever appealed this agency decision to the agency through the process described in 42 C.F.R. 430.3(a).[55] Bartlett states that they became aware of this disputed page for the first time on March 18, 2003.[56] The original complaint was filed on July 22, 2004,[57] more than one year after the dispute became apparent to Bartlett.

During the course of this litigation, it took some time for the issues to be framed by the amended complaint and answer. Therefore, discovery was sought and provided by all parties in an attempt to discover where the facts might lie. Some of those facts are included in the Augmented record filed by Bartlett. Where

---

[54] ROA 77.

[55] § 430.3 Appeals under Medicaid.
Three distinct types of disputes may arise under Medicaid.
(a) Compliance with Federal requirements. Disputes that pertain to whether a State's plan or proposed plan amendments, or its practice under the plan meet or continue to meet Federal requirements are subject to the hearing provisions of Subpart D of this part.

[56] MSJ, P. 8, 1. 12.

[57] Docket 1.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS                          18

appropriate, CMS has set forth deposition testimony from that discovery process

as relevant below.

IV.   <u>Argument</u>.

Bartlett defines the issue before the court in its Motion for Summary

Judgment:

> At issue in this case is whether SPA Attachment 4.19B Page 5
> concerning outpatient services was approved or could be deemed
> "approved" by Region 10 effective January 1, 2001, as part of TN No.
> 01-002 ... .  Bartlett Hospital contends that this proposed SPA was
> never submitted to CMS in approvable form by the State of Alaska
> and that the State of Alaska withdrew this page from consideration by
> Region 10 prior to it being retroactively approved.[58]

In actuality, the agency determination and final decision to which Bartlett objects

is the letter dated August 25, 2003,[59] in which CMS confirms that CMS, Region

10, failed to act in a timely fashion with respect to "page 5" of SPA 01-002, and

therefore it is in effect.  That is the only <u>action</u> by the agency with respect to page

5 of this particular State Plan Amendment.

A.   <u>Bartlett lacks standing to bring this action under the APA</u>.

Bartlett lacks standing to bring this action under the Administrative

Procedure Act (APA) to obtain review by this Court.  The APA does not provide

---

[58]  MSJ, p. 7, ll. 4 - 9.

[59]  ROA 73.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS                    19

an independent grant of subject matter jurisdiction for review of an agency action.[60]  Bartlett  must invoke a statutory basis for its course of action under the Medicaid Act, which it cannot do.  Accordingly, Bartlett cannot invoke jurisdiction to bring this case before the court.

As CMS has previously argued, Bartlett does not have an independent statutory right of action before this Court.  "It is not enough . . . for a plaintiff to satisfy the constitutional standing requirements of Article III.  A plaintiff must also satisfy the non-constitutional standing requirements of the statute under which he or she seeks to bring suit. . . . [T]he non-constitutional standing inquiry is whether a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit. . . . [T]his is a purely statutory inquiry."[61]  Congress gave providers no right of action under the Medicaid laws; to the contrary, Congress preserved that right exclusively to the states.  Congress included a provision in 42 U.S.C. § 1316 allowing <u>States</u> to seek redress in the United States courts of appeal when they are dissatisfied with CMS' actions regarding a particular state plan or state plan amendment.[62]  Had Congress intended to allow

---

[60]  <u>Califano v. Sanders</u>, 430 F.3d 99, 104-07 (1977).

[61]  <u>City of Sausalito v. O'Neill</u>, 386 F.3d 1186, 1199 (9th Cir. 2004).

[62]  42 U.S.C. § 1316(a)(3)  "Administrative and judicial review of public assistance determinations."

providers and beneficiaries a right to challenge actions of CMS related to state plans and state plan amendments, Congress could have included such a right under the same title.  However, Congress has let stand the determination of the Ninth Circuit in 1971 that 42 U.S.C. § 1316(a) allows federal courts of appeal jurisdiction to hear petitions filed *only by the states*.[63]

Further evidence that Congress did not intend the Medicaid laws to confer jurisdiction on providers and beneficiaries is found in the legislative history underlying the 1997 amendment of 42 U.S.C. § 1396a(a)(13)(A).  That amendment repealed the Boren Amendment and carried forward congressional intent "to free the states from federal regulation and increased rates *and to eliminate a basis for causes of action by providers to challenge reimbursement rates*."[64]  Importantly, it was the House Committee's intention that following the 1997 amendment, neither sub-section 13(A) "'nor any other provision of [1396a] will be interpreted as establishing a cause of action for hospitals and nursing

---

[63]  Arizona State Department of Public Welfare v. Department of Health, Education, and Welfare, 449 F.2d 456, 463 (9th Cir. 1971).

[64]  Evergreen Presbyterian Ministries, Inc. v. Hood, 235 F.3d 908, 919, n. 12 (5th Cir. 2000) (citing H.R.REP. No. 105-149, at 1230 (1997))(emphasis added); see also Alaska Department of Health and Social Services v. Centers for Medicare and Medicaid Services, 423 F.3d 931 (9th Cir. 2005).

facilities relative to the adequacy of the rates they receive.'"[65]  Even though the amendment served primarily to limit actions against the States, the legislative history makes clear Congress did not intend to create a private cause of action under the Medicaid laws.

Moreover, the Complaint ignores the statutory requirements of 5 U.S.C. § 704, which allows review of "Agency action made reviewable by statute and final agency action *for which there is no other adequate remedy in a court*." (emphasis added).  Bartlett is currently seeking relief for this alleged improper action before the commissioner for Alaska's Department of Health and Social Services, Office of Hearings and Appeals, Case number 02-MRC-004. There, Bartlett challenges the rate-making procedure, as well as the application of the procedure to their reimbursement rate.   That action is for relief from the rate which Bartlett argues has been improperly imposed by SPA 01-002, and encompasses money damages.  That relief, if obtained, gets Bartlett the precise relief it seeks – additional Medicaid reimbursement.  Because Bartlett has another form of relief available to it by way of administrative review in another forum,

---

[65]  Id.; In re NYAHSA Litigation, 318 F.Supp.2d 30, 38-39 (N.D.N.Y. 2004); But see Long Term Care Pharmacy Alliance v. Ferguson, 260 F.Supp.2d 282, 290-91 (D.Mass. 2003) (without reviewing legislative history, the district court found providers had standing to challenge a state's compliance with 42 U.S.C. § 1396a(a)(13)(A) under 42 U.S.C. § 1983). Bartlett Hospital v Centers of Medicare, et.al.

Bartlett should not be litigating here. The real issue in all of this litigation is whether Bartlett is entitled to additional compensation for outpatient services. However, there is no way Bartlett can ever recover that money from the United States. Bartlett's claim for money damages is with the State of Alaska, and that is where it should be pursuing its claim.

Finally, the regulations upon which Bartlett relies in support of the argument that the State must submit its SPA "in approvable form" require the State to provide an appeals procedure for providers if the provider disagrees with a payment rate.[66] That, simply stated, is the regulatory scheme for providers who disagree with the rate. Bartlett has availed itself of that remedy, and seeks monetary relief through that process. It is illogical that Bartlett should bring this concurrent action.

Bartlett's amended complaint should be dismissed because Bartlett lacks standing to bring this lawsuit. Bartlett has failed to show that they have a statutory basis for this challenge outside the APA. The 1997 amendment of 42 U.S.C. § 1396a(a)(13)(A) specifically bars this type of lawsuit. Finally, the APA should not be invoked where, as here, the plaintiff has an adequate remedy at law in another forum. There being no standing, the lawsuit should be dismissed.

---

[66] 42 C.F.R. § 447.253(e).

B.    <u>Bartlett failed to exhaust its administrative remedies</u>.

Bartlett argues it has standing to maintain this action under

5 U.S.C. § 702 as a person adversely affected or aggrieved by agency action.[67]

Assuming, *ad arguendo*, that Bartlett has standing under the Medicaid Regulations

to challenge the agency decision, Bartlett is required by the regulations to bring

their appeal first to the agency itself, just as a State would be required to do.

Appeals from adverse determinations of CMS by states are governed by

42 C.F.R. 430, Part D.  This matter or decision is of the type described in

42 C.F.R. § 430.3(a).[68]  Thus, Bartlett is required, if it disagrees with the agency

action, to bring its concerns to CMS within 60 days.  42 C.F.R. § 430.18(a).

Bartlett did not do so.

Bartlett states that it became aware of this disputed page (and therefore the

adverse agency decision) for the first time on March 18, 2003.[69]  The original

complaint was filed on July 22, 2004, more than one year after the dispute became

---

[67] MSJ, p. 16, 1. 5-6.

[68] § 430.3 Appeals under Medicaid.
Three distinct types of disputes may arise under Medicaid.
(a) Compliance with Federal requirements. Disputes that pertain to whether a State's plan or proposed plan amendments, or its practice under the plan meet or continue to meet Federal requirements are subject to the hearing provisions of Subpart D of this part.

[69] MSJ p. 8, 1. 12.

apparent to Bartlett.  In the intervening 16 months, there is no record that Bartlett

sought the agency review mandated by the regulations through which it now seeks

protection.  In fact, Bartlett never sought a formal review of the approval process

for SPA 01-002, but instead engaged in a letter writing campaign, and a complaint

for declaratory relief and mandamus.  It was not until after over a year of litigation

in this court that it first requested relief under the APA.  At the same time, Bartlett

sought relief by bringing an appeal of the State's rates through the appeal process

mandated by 42 C.F.R. § 447.253(e).  It appears that Bartlett made an election of

remedies by bringing that appeal and should be barred here.

Under the APA, the challenged agency action must be "final" before it can

be subject to judicial review.[70]  Under the related doctrine of "exhaustion," "an

appeal to [a] 'superior agency authority' is a prerequisite to judicial review [under

the APA] ... when expressly required by statute or when an agency rule requires

appeal before review and the administrative action is made inoperative pending

that review."[71]  Here, Bartlett never made a serious attempt to seek agency review,

utilizing a process set forth in the regulations governing disputes, to resolve the

---

[70]  5 U.S.C. § 704; Clouser v. Espy, 42 F.3d 1522, 1531-32 (9th Cir.1994).

[71]  " Clouser, 42 F.3d at 1532 (alterations in original) (quoting Darby v. Cisneros, 509
U.S. 137, 152-54(1993)).

issue.  Thus, the agency itself was deprived of the opportunity to correct any errors it made, if there were errors made at all.

This case should be dismissed with prejudice because Bartlett failed to exhaust its administrative remedies within CMS utilizing the regulatory process.

C.    The State submitted page 5 in an "approvable" form.

Bartlett argues that the SPA was improperly submitted, that is, that the SPA was not submitted in an "approvable" form.[72]  However, that argument is disproved by the agency record.  Page 5 of SPA 01-002 was first submitted by letter dated March 30, 2001.[73]  That was a written document, submitted through the mail, and not in electronic form.  No argument can surmount or defeat that fact.  That same page, identical as it relates to the outpatient hospital services language at issue here, was sent to CMS via letter on July 29, 2003, for the purpose of confirming the State's position that page 5 of SPA 01-002 was deemed approved by 42 C.F.R. § 430.16 because CMS failed to act within 90 days of its submission.  Neither a jot nor a tittle of the pertinent language changed between those two days.  Nothing more can be made of it than this: CMS erred when it failed to act on this particular page within 90 days.

---

[72]  MSJ, p. 7.

[73]  ROA 2.

A reader can tell from the record that the page at issue, page 5, was still in the total package being reviewed as late as June 28, 2001,[74] because on that date, at 11:48 a.m., Robert Reed attached it to an e-mail he sent to Dzung Hoang.[75] Contrary to speculation, the outpatient hospital services page was still circulating within the offices and amongst the employees of CMS at that late date. The original was submitted in written form, which was later supplemented with an electronic version by Neal Hutchins[76] and again by Ms. Knapp.[77] But the page was there first as an attachment to a letter, and there last as an attachment to a letter. In between, the pertinent language did not change.

Bartlett makes many arguments related to the HCFA 179 form. They are all irrelevant. The form is not required by regulation.[78] It is an administrative tool or device, and is important, if at all, only as between CMS and a state agency.[79] Bartlett has not explained how Bartlett would ever rely upon the HCFA 179, or

---

[74] June 28, 2001 was the day before the SPA 01-002 was finally approved. See, ROA 73.

[75] ROA 65, which has page 6 as an attachment at ROA 63. Both Reed and Hoang are CMS employees involved in the review and approval process of this SPA.

[76] ROA 6.

[77] ROA 13.

[78] Deposition of Karen O'Connor, Exhibit A, p. 46, l. 6 - 23.

[79] Deposition of Karen O'Connor, Exhibit A, pp. 13, l. 20 - p. 14, l. 10;   pp. 44, l. 21 - p. 45, l. 15.

how that form is important to Bartlett.  While the HCFA 179 may, and does,

summarize important information from the SPA to which it is attached for the use

and benefit of CMS, there is no argument that the form supplants or amends or in

any way augments or replaces the SPA itself.  It is not part of the State Plan

*Amendment* at all.

Bartlett also argues that a SPA must be accompanied by something Bartlett

calls "the State's Assurances Letter."[80]  Bartlett argues strenuously that such a

letter must be submitted or the SPA approval process can not begin.  This is a an

argument built upon a false premise: there is no regulatory requirement for such a

letter.  The regulations governing SPA approval *do not require* any such letter.

Moreover, Bartlett has not cited to any authority to support the allegation that a

letter is required.

Here is what the regulations require as to assurances concerning a proposed

SPA:

§ 430.14 Review of State plan material.

CMS regional staff reviews State plans and plan amendments, discusses any
issues with the Medicaid agency, and consults with central office staff on
questions regarding application of Federal policy.[81]

---

[80]  MSJ, p. 4, fn 3, p. 5, fn 4, and generally, pp. 4 - 5.

[81]  42 C.F.R. § 430.14.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS                    28

There is nothing in that regulation that speaks to assurances, much less a letter. The regulation requires consultation.  Based on the various communications between the State of Alaska and CMS, as well as between employees within CMS, the record supports the conclusion that consultations took place as contemplated by the regulation.

Moreover, 42 C.F.R. § 253(a) requires only that the Medicaid agency must make assurances satisfactory to CMS.  The regulation does not require, as Bartlett argues, that the assurances take a particular form, nor does the regulation require that the form of assurances be acceptable to a provider.  This makes sense in the regulatory scheme because the provider has an appeal right through the State Medicaid agency.  And, it may not be forgotten that the assurances do not relate to outpatient hospital services in any event.  The regulation calls for certain assurances in certain instances, but outpatient hospital services is not one of those events.

A SPA in "approvable" form was submitted to CMS, including the page at issue here, and such "assurances" as are required by the governing regulations took place.  Argument to the contrary is without basis in fact or law.

D.    <u>Whether the State failed to provide adequate and proper notice of the proposed changes is immaterial to this agency action</u>.

Bartlett argues that the State of Alaska failed to give adequate notice of the changes proposed by page 5 of SPA 01-002.[82]  However, such an argument is irrelevant to the agency action here for at least two reasons.

First, any cause of action for defective notice properly lies against the State of Alaska.  This is so because the allegation is that the State acted improperly in the first instance, not CMS.  If the State erred, it should, and will, pay the price or consequence.  It is the State's improper action of which Bartlett complains in the first instance, not that of CMS.  To the extent Bartlett blames CMS for not catching  or observing this "wrong" behavior, there is no statutory or regulatory requirement that CMS police the State's behavior in this respect.  CMS will rely upon the assurance of the State (whether through written or verbal communication) that the State has complied with the notice requirement.  Bartlett seeks to graft a non-regulatory requirement that the State provide a written notice it has complied with the notice regulation onto the current regulatory scheme.  While it can be argued that such a requirement would not be burdensome, that argument misses the entire point: it is not *now* a requirement.

---

[82]   MSJ, p. 17, *et. seq.*

Second, any notice requirement which may have been missed or not met is irrelevant because of the way this part of the SPA was deemed implemented: the failure of CMS to act within 90 days.  When an agency fails to act promptly, and the SPA becomes effective due to that lack of action, the absence of proper notice by the State would have been missed along with the substantive portion of the SPA.  That is, the neglect extends not only to the ultimate processing and approval, but to the interim steps involving assurances as well.

Bartlett's argument that the State's failure to provide proper notice is irrelevant to the agency's decision.   The acknowledgment of deemed approval was neither arbitrary nor capricious with respect to this allegation.

     E.     <u>The State did not withdraw page 5 of SPA 01-002.</u>

Bartlett claims that the State Medicaid office withdrew the pertinent page from consideration when, on June 28, 2001, Bob Labbe forwarded pages 2 and 10, and authorized pen and ink changes on the HCFA 179.[83]  The language of the letter is clear:

> Enclosed, please find revised SPA 01-002, regarding new sections for Federally Qualified Health Center Services (page 2) and Rural Health Care Clinic Services (page 10) to Attachment 4.19B. These changes reflect recently imposed federal requirements and discussions with Dzung Hoang from the Denver Office of the CMS.  These pages 2 and 10 are substitutes to

---

[83]  MSJ, p. 21, *et. seq.*

the submittal sent on March 30, 2001. ...[84]

In the first sentence, "revised SPA 01-002" is modified only by "<u>regarding</u> ... page 2 and ... page 10 ... ." (emphasis added)  There is no withdrawal language anywhere in the letter.  Moreover, the only revision language deals with pages 2 and 10.  While it is true that page 5 or 6 is not mentioned in this letter, that does not necessarily mean that page 5 has been forgotten.  It is just as likely that it has been ignored as no revisions were required.  Page 6 was still traveling with pages 2 and 10 within CMS on that date, and there is no evidence in this record that it was forgotten by either the State or by CMS.  This court may not speculate on the meaning of the absence of mention of page 5 or 6.  The court may only read the language of this communication, it may not add language or speculate.

     The second sentence of the letter illuminates the purpose and reason for revising pages 2 and 10: the revisions were required by "recently imposed federal requirements and discussions with Dzung Hoang."  Since there were no proposed revisions to page 5 or 6, it would be unnecessary to include mention of that page in this letter.  To attempt to interpret this language as withdrawing a page of a SPA from consideration, when the language of the letter itself speaks only to revisions to pages required by law and CMS, is to add presupposition to speculation to

---

[84]  ROA 68.

achieve a desired outcome (and an outcome to which the proponent has an admitted bias: several hundred thousand dollars).[85]

Bartlett's argument that the proposed page 5 was withdrawn is not supported by the record. The acknowledgment of deemed approval was neither arbitrary nor capricious with respect to this allegation.

F. CMS did not approve an electronic submission of a SPA.

Bartlett argues that CMS unlawfully approved an electronic submission of a SPA when Karen O' Connor issued her letter on August 25, 2003, acknowledging that page 5 was deemed approved.[86] Once again, Bartlett reads the letter in a curious manner. Bartlett focuses on those portions of the letter in which Ms. O'Connor talks about the e-mail transmittals and submissions, and totally ignores that the first transmission of the disputed page was by letter, the last transmission of the disputed page was by letter, and notwithstanding several transmissions by e-mail in between those two, the operative language did not change.

Hyperbole is to be eschewed in legal writing, but the point at issue here calls out for an italic, or an underline, or an exclamation point. Even without such

---

[85] MSJ, p. 8, ll 20 - 22.

[86] MSJ, p. 29, *et. seq.*

punctuation devices, the fact clammers for attention: the approved language did not change from the very beginning to the very end. No one (either CMS or the State) is trying to slip any language in that the other did not know about. Alaska is not asking for anything other than what it asked for in the beginning.

Moreover, as Ms. O'Connor explained in her deposition, there was no regulation that required a SPA to be submitted in hard copy versus electronically.[87] Ms. O'Connor testified that she reviewed all the information available to her (which would be the ROA filed at Docket 32) and concluded that the relevant page was deemed approved because CMS failed to act within the required 90 days.

This allegation is without merit. The acknowledgment of deemed approval was neither arbitrary nor capricious with respect to this allegation.

G.   The agency's action was neither arbitrary or capricious, and CMS is entitled to dismissal as a matter of law.

The facts demonstrate that page 6 was submitted along with pages 2 and 12 to comprise Alaska SPA 01-002.[88] The submission was made in writing by letter on March 30, 2001, and CMS was required to act on the entire submission within 90 days. While pages 2 and 10 were the object of much discussion, page 6 was

---

[87]  Deposition of Karen O'Connor, Exhibit A, pp. 50 - 51.

[88]  ROA 4, 3, 2, and 1. In the processing of the application, page 6 became page 5, and page 12 became page 10. Only page 6 which became page 5 is relevant here.

left alone.  The record shows that no changes were ever proposed to page 6 by CMS.  This is consistent with a proposed plan amendment that had no errors or omissions, and therefor would be approved without change in the normal process.

But something happened with respect to this particular proposed change: nothing at all.  Thus, by regulation,[89] the proposed change (or amendment) was deemed approved.  There is no communication withdrawing this proposed change. There is nothing more about it other than it is seen in the record traveling with the other two pages.  The record is otherwise silent on it.

Bartlett has adduced no evidence in this record that CMS acted arbitrarily or capriciously with respect to this one portion of the proposed amendment.  Indeed, Bartlett has adduced no evidence that CMS acted arbitrarily or capriciously with respect to any aspect of Alaska SPA 01-002.  Bartlett argues that CMS was not diligent in some matters, but they have not argued or shown that the conduct of CMS with respect to this one page was arbitrary (without reason or principle) or capricious (impulsive or unpredictable).

The action of CMS was in accordance with the governing regulation and CMS complied with the regulation: it deemed the proposed amendment accepted. Because their actions were in direct accordance with the governing regulation, the

---

[89]  42 C.F.R. 430.16.

action could not be deemed arbitrary, capricious, or an abuse of discretion.  The

full text of 5 U.S.C. § 706(2) reads:

> The reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be–
>
>> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>>
>> (B) contrary to constitutional right, power, privilege, or immunity;
>>
>> (C)  in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>>
>> (D) without observance of procedure required by law;
>>
>> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
>>
>> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

Under the APA, a court may only set aside agency actions, findings, and

conclusions that are in violation of 5 U.S.C. § 706(2).[90]  In this case, the relevant

standard is whether the agency action, findings, and conclusions are "arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."[91]  "A

decision is arbitrary and capricious if the agency 'has relied on factors which

---

[90]  Verplanck v. England, 257 F.Supp.2d 182, 187 (D.D.C.2003).

[91]  5 U.S.C. § 706(2)(A).

Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.' "[92]  Here, CMS did that which it was required to do by law when its error of omission was brought to its attention: it deemed the proposed plan amendment approved.  As a matter of law, any other action would have "... relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or ...[was] so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

CMS was not arbitrary, capricious nor did CMS abuse its discretion when it deemed the page approved.  CMS did not act in violation of any of the other standards set forth in 5 U.S.C.  § 706.   This Motion for Summary Judgment must be denied.

V.    Conclusion.

Bartlett has failed in its burden to show that CMS acted arbitrarily,

---

[92]  O'Keeffe's, Inc. v. U.S. Consumer Prod. Safety Comm'n, 92 F.3d 940, 942 (9th Cir.1996) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

capriciously or against the law when CMS deemed page 5 of SPA 01-002

approved based on the failure of CMS to act within 90 days.  Moreover, Bartlett

lacks standing to bring this law suit challenging the actions of CMS under the

Administrative Procedures Act.  Finally, even if Bartlett had standing to bring this

action, Bartlett failed to exhaust its remedies by appealing the agency action to the

agency itself.  Bartlett's Motion for Summary Judgment must be denied, the

Amended Complaint must be dismissed, and the court must enter judgment in

favor of CMS.

   RESPECTFULLY SUBMITTED on February 27, 2006.

        DEBORAH M. SMITH
        Acting United States Attorney

        s/ Daniel R. Cooper, Jr.
        Assistant U. S. Attorney
        222 West 7th Ave., #9, Rm. 253
        Anchorage, AK 99513-7567
        Phone: (907) 271-3376
        Fax: (907) 271-2344
        E-mail: Daniel.Cooper@usdoj.gov
        AK #8211109

**CERTIFICATE OF SERVICE**

I hereby certify that on February 27, 2006,
a copy of the foregoing Centers for Medicare and
Medicaid Services, Region 10, *et.al.*, Opposition to
Motion for Summary Judgment was served
electronically on Stephen D. Rose.

s/ Daniel R. Cooper, Jr.

Bartlett Hospital v Centers of Medicare, et.al.
3:04-cv-152-JKS     38