Honorable James K. Singleton, Jr.

Stephen D. Rose
Dawn R. Kreysar
Preston Gates & Ellis LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
(206) 623-7580 (phone)
(206) 623-7022 (fax)
srose@prestongates.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CITY AND BOROUGH OF JUNEAU, ALASKA, d/b/a/ BARTLETT REGIONAL HOSPITAL,<br><br>        Plaintiff,<br><br> v.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES OF AMERICA, R.J. RUFF, sued in his official capacity as the REGIONAL ADMINISTRATOR OF REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, AND KAREN S. O'CONNOR, sued in her official capacity as ASSOCIATE REGIONAL ADMINISTRATOR, DIVISION OF MEDICAID & CHILDREN'S HEALTH, REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>        Defendants. | No. A04-0152 CV (JKS)<br><br>PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT<br>[D. Ak. L.R. 16.3 (c)(2)]<br>[Rule 56, F.R. Civ. P.] |

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 1

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.    Introduction

The City and Borough of Juneau, Alaska, d/b/a Bartlett Regional Hospital ("Bartlett Hospital"), Plaintiff, filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56. Defendants filed an Opposition to this Motion, which constitutes a cross-motion for summary judgment, on February 27, 2006 (the "Opposition").    Plaintiff now enters its Reply to Defendants' Opposition which is also the Plaintiff's Opposition to the Defendants' Cross-Motion for Summary Judgment.    On January 31, 2006, the Court entered an order granting Plaintiff's Motion to Augment the Agency Record.    Defendants neither opposed such Motion nor offered their own Motion to Augment the Agency Record.    At p.6-7 of their Opposition the Defendants' note correctly that ". . . the APA limits judicial review of agency action to the administrative record."    Since much of the testimony relied upon by Defendants is **not** part of the record on appeal (ROA) in this case, Plaintiff is filing concurrently with this Reply, a Motion to Strike all references to, and conclusions based on, matters outside the ROA.    In particular, the statements made by Defendant Karen S. O'Connor which are cited to and relied upon by Defendants in their Opposition are not part of the official ROA, and Plaintiff asks that the Court disregard them in their entirety.

## II.    The Administrative Procedures Act – Standard of Review

In their Opposition, Defendants rely on case law to conclude that "the APA limits judicial review of agency action to the administrative record," and quotes a passage that indicates that validity of agency action is to be determined by "a contemporaneous explanation of the agency decision."    Opposition, p. 6.    It is thus curious that Defendants' then proceed to cite to and rely upon material that is not a part of the ROA in this matter and that constitutes a *post-hoc rationalization* of the agency's decision.    It would appear that this entire line of argument by Defendants is misplaced and should have been made, if at all, in an opposition to Plaintiff's Motion to Augment the Agency Record, if Defendants' believed that Plaintiff was seeking to have this Court consider information that did not meet the legal standard for supplementing an administrative record.    Defendants' arguments in this respect ignore the specific procedure that they so strongly advocated be applied in this matter under D. Ak. L. R. 16.3, allowing for augmenting of the administrative record, a procedure which

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 2

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

would be meaningless were the Court not permitted to consider any information outside of the administrative record submitted by the agency.[1]

Defendants continue on to expound on the standard to be applied by this Court in determining whether agency action may be set aside as arbitrary, capricious, an abuse of discretion, or contrary to law under the APA. In Beno v. Shalala, 30 F.3d 1057 (9th Cir. 1994), reh'g denied (Aug. 31, 1994), the Ninth Circuit enumerated the standard to be applied in detail:

> The APA does not give this court power "to substitute its judgment for that of the agency" but only to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Overton Park, 401 U.S. at 416. We may reverse only if the decision was "arbitrary and capricious" within the meaning of the APA, 5 U.S.C. § 706(2)(A), in that
>
> > the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.
>
> Motor Vehicle Mfr. Ass'n v. State Farm Ins., 463 U.S. 29, 44, 77 L. Ed. 2d 443, 103 S. Ct. 2856 (1983).
>
> In examining this issue, we may not consider reasons for agency action which were not before the agency. Bowen, 476 U.S. at 627. Although we may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," Motor Vehicle, 463 U.S. at 43, **we cannot infer an agency's reasoning from mere silence** or where the agency failed to address significant objections and alternative proposals. Id. at 57. n41 Rather, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself." Id. at 50. n42 Thus, while formal findings are not required, the record must be sufficient to support the agency action, show that the agency has considered the relevant factors, and enable the court to review the agency's

---

[1] As Defendants failed to oppose Plaintiff's Motion, it was granted by this Court and documentation submitted by Plaintiff became part of the ROA in this case, and may permissibly be considered by the Court in its review of the agency's decision. The same cannot be said of the deposition testimony of Karen S. O'Connor which is cited by Defendants in their Opposition but which was not made the subject of a Motion to Augment the Agency Record within the timeframe allowed therefor under this Court's Scheduling Order of December 1, 2005, governing the conduct of these proceedings.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 3

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

decision. *Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744, 84 L. Ed. 2d 643, 105 S. Ct. 1598 (1985).*

> n41 *See also SEC v. Chenery Corp., 332 U.S. 194, 196-97, 91 L. Ed. 1995, 67 S. Ct. 1575 (1947)* ("it will not do for a court to be compelled to guess at the theory underlying the agency's action."); *City of Mesa v. FERC, 301 U.S. App. D.C. 226, 993 F.2d 888, 897 n.7 (D.C. Cir. 1993); Common Cause v. FEC, 285 U.S. App. D.C. 11, 906 F.2d 705, 706-07 (D.C. Cir. 1990)* (reversing where there was no mention in the record that the agency considered a relevant factor); *Cross-Sound Ferry Servs., Inc. v. ICC, 277 U.S. App. D.C. 182, 873 F.2d 395, 400 (D.C. Cir. 1989)* (court will not guess); *American Trading Transp. Co. v. U.S., 253 U.S. App. D.C. 40, 791 F.2d 942, 948-49 (D.C. Cir. 1986)* (holding agency action invalid where there was no evidence that the agency considered a statutory goal).

> n42 *See also Alaniz v. Office of Personnel Management, 728 F.2d 1460, 1466 (9th Cir. 1984)* (no evidence in record that agency actually considered position advanced in litigation); *United States Information Agency v. FLRA, 295 U.S. App. D.C. 106, 960 F.2d 165, 170 (D.C. Cir. 1992)* (rationale for decision must come from agency, "not from counsel"); *Kansas City v. HUD, 287 U.S. App. D.C. 365, 923 F.2d 188, 192 (D.C. Cir. 1991).*

In the present case, the record contains a rather stunning lack of evidence that the Secretary gave plaintiffs' objections any such consideration.

30 F.3d at 1073-74.

In applying the above standard to the instant case, it is critical to note those instances in which Defendant Region 10 "entirely failed to consider an important aspect of the problem, [and] offered an explanation for its decision that runs counter to the evidence before the agency." Especially when discussing whether Region 10 received the necessary "assurances" from the State of Alaska, the rule to be applied is that the Court "cannot infer an agency's reasoning from mere silence" and the Court must find the record to "be sufficient to support the agency action." The Court must find evidence in the record that the "agency actually considered position advanced in litigation." Those explanations of agency action cannot be provided by counsel as was done here.

Defendants refer to a "presumption of regularity" that applies to agency action and cite a number of cases in support of this proposition. Opposition, pp. 9-10. Plaintiff would alert the Court that the Ninth Circuit, in Preston v. Heckler, 734 F.2d 1359 (9th Cir. 1984) explicitly held that the "presumption of regularity" does not apply in an action such as the

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

one at hand applying the standards of APA § 10(e):

> Although an agency decision is entitled to some presumption of regularity, there are limits to that rule. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-17, 28 L. Ed. 2d 136, 91 S. Ct. 814 (1971); *Daly v. Volpe*, 514 F.2d 1106, 1111 (9th Cir. 1975). One limit is when the agency action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Administrative Procedure Act § 10(e), 5 U.S.C. § 706(2)(A) (1982); *see Overton Park*, 401 U.S. at 416.

> 734 F.2d at 1372.

Furthermore, the Ninth Circuit indicated that the **burden was on the agency to produce evidence that it complied with applicable legal requirements,** and, based on the agency's failure to meet that burden, held that the agency had abused its discretion within the meaning of the APA:

> The Secretary, although contending that the adoption of separate and independent standards for Indians is not required by law, claims that her predecessors in fact did so. However, her predecessors all used the general civil service standards in evaluating the qualifications of all Indian applicants for all positions, as does the Secretary to this day. The Secretary presented *no* evidence that any civil service standards were ever separately adopted for use in connection with Indian applicants or that any decision to use any of those standards for any position was ever made after considering the unique background and experience of Indians. Rather, the Secretary simply asserts that her predecessors took all the necessary actions to comply with the Indian Preference Act. Despite the lack of any evidence supporting her rather unlikely claim, the Secretary contends that she should prevail because agency conduct is entitled to a "presumption of regularity." Moreover, she argues that the district court erred in "presuming" that she did not comply with the requirements of the Indian Preference Act. We find her contentions to be wholly without merit.

> . . .

> "More exacting scrutiny [of agency action is] particularly useful when for some reason the presumption of agency regularity . . . is rebutted." *Natural Resources Defense Council, Inc. v. Securities & Exchange Commission*, 196 U.S. App. D.C. 124, 606 F.2d 1031, 1049 n.23 (D.C. Cir. 1979) (citing *Overton Park*, 401 U.S. at 415). Here, however, we need not rely on that rule. We conclude that the Secretary's conduct would not survive any level of scrutiny. The Secretary had access to all existing evidence that might indicate that she complied with the Indian Preference Act, and produced none. Contrary to the Secretary's contentions, the district court did not *presume* that the Secretary failed to comply with the Act. Rather, the district court based its finding on the facts in the record. It is obvious to us, as it was to the district court, that the Secretary has consistently and uniformly applied the generally

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    applicable civil service standards to Indians without any consideration whatsoever of
2    their unique background and experience.

3    734 F.2d at 1372-73.

Thus, if the Court similarly finds that Defendants have failed to meet their burden to produce
4    evidence that they complied with the legal requirements applicable to the approval of the
5    SPA at issue in this case, the Court may find that their actions do not withstand scrutiny
6    under the standards to be applied under the APA.

7    **III.    The SPA Approval Process**

8    Defendants argue for this first time in the Opposition that 42 C.F.R. § 447.253(a) does
9    not apply to amendments dealing with outpatient hospital services, in direct contradiction to
10   their prior contention that "CMS approval is based on the State's assurances that it has
11   sufficiently complied [with the notice requirements]. 42 C.F.R. § 447.256(a)(2)."  *See,*
     Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b), at p. 7, July 14, 2005. [2]

12   In setting forth the regulations governing SPA approval and assurances, Defendants omit to
13   cite a key regulation.  Pursuant to 42 C.F.R. § 430.20(b)(2), **any SPA that changes the**
14   **State's payment method and standards must comply with the rules of 42 C.F.R. §**
15   **447.256.**  This provision is **not** limited to methods and standards that deal with particular
16   types of services.  42 C.F.R. § 447.256 is entitled, "Procedures for CMS action on assurances
17   and State plan amendments," and is contained, along with 42 C.F.R. § 447.253, in the subpart
18   entitled, "Payment for Inpatient Hospital and Long-Term Care Facility Services."
19   Defendants set forth the text of 42 C.F.R. § 447.256 in their Opposition (p. 11) with the key
20   omission of subsection (c) which provides that an approved SPA "will become effective not
21   earlier than the first day of the calendar quarter in which an approvable amendment is
     submitted in accordance with Sec. 430.20 of this chapter and 447.253."  42 C.F.R. §
22   430.20(b)(2) would be rendered meaningless if the requirements of 42 C.F.R. § 447.253 were

23   ───────────────
24   [2] The assertion that 42 C.F.R. § 447.253 does not apply to SPAs dealing with outpatient
     hospital services is contradicted by Defendants' contention on page 23 of the Opposition that
25   42 C.F.R. § 447.253(e) provides for the regulatory scheme under which Plaintiff should
     pursue this action.  See also the reference to 42 C.F.R. § 447.253(e)  on page 25 of the
26   Opposition.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 6

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   limited in application to inpatient hospital services and nursing facility services. The
2   regulation is necessarily worded to apply to such services due to the fact that it is contained in
3   the subpart dealing with such services, but by virtue of 42 C.F.R. § 430.20(b)(2), this
4   regulation applies more broadly to any SPA that changes a State's payment methods and
    standards. As noted above, any other reading would render 42 C.F.R. § 430.20(b)(2)
5   meaningless.[3] The procedures cited by Defendants in 42 C.F.R. 430, Part D apply to hearings
6   for **States** that appeal a decision of the Administrator **to disapprove** State plan material so
7   have no application here. Opposition, p. 12.

8   ## IV.    Undisputed Facts

9        Defendants purport to set forth a statement of "undisputed" facts, but many of these
10  so-called "undisputed facts" appear to be nothing more than mere speculation or wishful
11  thinking on Defendants' part. The one key fact that is undisputed is that it "is undisputed that
12  there was no HCFA 179 Transmittal form attached to the document [SPA 01-002] as found in
13  the record." Opposition, p.13. The Defendants' claim that "[t]he HCFA 179 Transmittal
14  form is a document that CMS (formerly the Health Care Financing Authority, or HCFA)
15  relies upon as an internal document to control document flow"[4] is both unsubstantiated and a
16  legal argument with regard to which this Court will make the ultimate determination. It
    cannot be characterized fairly as an "undisputed fact."

17       Defendants assert that ROA 63 is "an attachment to an e-mail between two employees
18  of CMS, and demonstrates that page 6 was still traveling with the other two pages of SPA 01-
19  002 as late as June 28, 2001, the date of the e-mail." Opposition, p. 15. This conclusion is
20  not supported by the documents in the record and is nothing more than mere speculation on
21  the part of the Defendants. The e-mail referenced by Defendants, ROA 65, references pages
22  2, 10, and 12 but no mention is made of page 6. The document immediately following the

---

23       [3] See, e.g., Daubert v. Sullivan, 905 F.2d 266, 270 (9th Cir. 1990) (applying to federal
24  regulations the "basic rule of statutory construction . . . that one provision should not be
    interpreted in a way which is internally contradictory or that renders other provisions of the
25  same statute inconsistent or meaningless").

26  [4] Opposition, p. 13, fn. 37.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 7

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  email, ROA 64, and preceding ROA 63, contains handwritten notes, which counters the

2  contention by Defendants that the pages following ROA 65 are the attachments referenced in

3  that e-mail. In addition, page 10, which was directly referenced in the e-mail, is not among

4  the documents following the e-mail. From the fax stamp at the top of these pages, the only

5  thing one can conclude is that these documents were traveling together on August 9, 2005

6  during the time this litigation was ongoing. In other words, the fax stamp at the top of the

7  pages cited by Defendants would indicate that this conglomeration of pages occurred

8  sometime in mid-2005. There is nothing in the record that supports Defendants' self-serving

9  description of the records nor is there anything that would justify describing Defendants'

speculations as "undisputed facts."

10      Defendants assert that the documents discussed by them "constitute the entire record

11  before the agency, CMS, from which Bartlett appeals." Opposition, p.18. Plaintiff disagrees

12  with this assertion in that the ROA, as augmented by Plaintiff, includes additional

13  information and documentation that was before the agency. Equally clear is that many of

14  Defendants' citations are to statements which are not part of the administrative record in this

15  case. Plaintiff reiterates its objection to Defendants citing material that is not part of the

ROA.

16  **V.    Plaintiff has standing to bring this suit under the APA.**

17      Defendants failed to set forth the standards applicable to a determination with regard

18  to whether Plaintiff has standing in this case. A review of the standard to be applied makes it

19  clear that Plaintiff does have standing in this case. In <u>City of Sausalito v. O'Neill</u>, 386 F.3d

20  1186 (9th Cir. 2004), the Ninth Circuit set forth the **liberal test** to be applied with regard to

21  statutory standing under the APA:

22      Interpreting the APA, the Supreme Court in *Association of Data Process*
        *Service Organizations v. Camp, 397 U.S. 150, 153, 25 L. Ed. 2d 184, 90 S. Ct.*

23      *827 (1970)*, held that anyone "arguably within the zone of interests" protected
        by the statute under which he or she has asserted injury has standing to bring

24      suit under that statute. The Court has instructed that **the "zone of interests"**
        **test is to be construed generously,** stating that the "test is not meant to be

25      especially demanding," and that a court should deny standing under the "zone
        of interest" test only "if the plaintiffs interests are so marginally related to or

26      inconsistent with the purposes implicit in the statute that it cannot reasonably

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 8

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

be assumed that Congress intended to permit the suit." *Clarke v. Secs. Indus. Ass'n, 479 U.S. 388, 399, 93 L. Ed. 2d 757, 107 S. Ct. 750 (1987); see also Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1059 (9th Cir. 2004); Ocean Advocates v. U.S. Army Corps of Eng'rs, 361 F.3d 1108, 1120-21 (9th Cir. 2004).* Specifically, **"there need be no indication of congressional purpose to benefit the would-be plaintiff."** *Graham v. Fed. Emergency Mgmt. Agency, 149 F.3d 997, 1004 (9th Cir. 1998) (citing Clarke, 479 U.S. at 388, 399-400).*

As a municipal corporation, Sausalito qualifies as a "person" under *Section 10(a) of the APA.* To determine whether Sausalito is within the zone of interests of the statutes under which it brings suit, we look "to the substantive provisions of the [statutes], the alleged violations of which serve as the gravamen of the complaint." *Bennett v. Spear, 520 U.S. 154, 175, 137 L. Ed. 2d 281, 117 S. Ct. 1154 (1997).* We are instructed by *Clarke* to understand these substantive provisions liberally. Thus, "APA plaintiffs need only show that their interests fall within the 'general policy' of the underlying statute, such that interpretations of the statute's provisions or scope could directly affect them." *Graham, 149 F.3d at 1004 (quoting Nat'l Credit Union Admin. v. First Nat'l Bank and Trust Co., 522 U.S. 479, 487-88, 140 L. Ed. 2d 1, 118 S. Ct. 927 (1998) (further citations omitted)).*

386 F.3d at 1200. (Emphasis added).

In arguing that Plaintiff lacks standing in this matter, Defendants assert that Congress did not intend the Medicaid laws to give providers rights of action under the Medicaid laws. Defendants try to create an argument here by citing to cases that have nothing to do with the issues under the APA. Defendants cite to cases that deal with jurisdiction of the courts of appeals and whether private causes of action exist pursuant to 42 U.S.C. § 1983, issues which involve the application of quite different legal standards than the issue of standing under the APA. Opposition, pp. 20-22. Defendants fail to cite to any authority which states that Medicaid providers lack standing to bring actions under the APA with regard to matters involving the federal Medicaid laws. In fact, there are numerous cases in which Medicaid providers have been allowed to bring challenges to state plan amendments under the APA. See, e.g., Independence Acceptance Co. v. California, 204 F.3d 1247 (9th Cir. 2000); Independent Nursing Home v. Simmons, 732 F. Supp. 684 (S.D. Miss. 1990).

Defendants argue that Congress exclusively preserved rights of action under the Medicaid laws to the states. They rely on the grant of a right to states to seek redress in the United States courts of appeal with regard to SPA disapprovals set forth in 42 U.S.C. § 1316

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 9

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    to support this contention. In particular, Defendants find it significant that Congress let stand

2    the Ninth Circuit's holding in <u>Arizona State Department of Public Welfare v. Department of</u>

3    <u>Health, Education and Welfare</u>, 449 F.2d 456 (9th Cir. 1971), *reh'g and reh'g en banc denied*

4    (Nov. 17, 1971), *cert. denied* 405 U.S. 919 (1972), that 42 U.S.C. § 1316(a) allows federal

5    courts of appeal to hear petitions filed only by the states. This is a misleading argument since

6    in that case, the Ninth Circuit was addressing the statute's grant of jurisdiction to the courts of

7    appeal, which "have only the jurisdiction specifically conferred upon them by acts of

8    Congress." 449 F.2d at 462-63. When one reads the entire case it becomes clear that this

9    case supports the Plaintiff's position, not the Defendants. Defendants ignore the fact that the

10   Ninth Circuit goes on expressly to distinguish the issue it was deciding from a case such as

11   the one before this Court in which non-state parties seek review under the APA in federal

12   district court:

13       We need not decide whether intervenors can, under the Administrative
         Procedure Act, obtain review of the Secretary's denial in the district court. n9

14

15       n9 Of course, there is no reason why intervenors must seek review of the
         Secretary's denial of their request to broaden the conformity hearing.
16       Intervenors wish to show that Arizona's public-assistance plans are in
         nonconformity with federal requirements in numerous additional ways.
17       They need not have a conformity hearing to do this; they may ask the
         district court itself to declare that Arizona's plans are in nonconformity
18       and enjoin further administration of the nonconforming features. Such a
         course has precedent. *Bryant v. Carleson, 9 Cir., 1971, 444 F.2d 353.*
19       Indeed, considering the interests of the welfare recipients whom
         intervenors represent, "such a remedy would be preferable to a judgment
20       ordering the cessation of the flow of federal [welfare] funds until the state
         plan complied with federal law." *Id. at 360.*

21

22       The Ninth Circuit specifically acknowledged that a district court could declare a state

23   plan to be in nonconformity with federal requirements.

24       The Ninth Circuit's discussion of the limits of its decision accords with the holding

25   of the Court of Appeals for the District of Columbia in <u>National Welfare Rights Organization</u>

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    v. Finch, 429 F.2d 725, 735-36 (D.C. Cir. 1970) .[5]  In that case, the Court held that Congress

2    neither expressly nor impliedly precluded welfare recipients from having standing to seek

3    review of the Department of Health, Education and Welfare's (the predecessor agency to the

4    Department of Health and Human Services) determinations with regard to state plans. In

5    particular, the court specifically rejected the government's argument that enactment of 42

6    U.S.C. § 1316, with its grant of judicial review to States, by implication intentionally

7    excluded welfare recipients from having standing to seek judicial review.   The Court

8    examined the purpose of Congress' explicit grant of review to the States:

9        The legislative history indicates that Congress gave the states standing in order
         to strengthen federalism. Review procedures

10

11           "would place the States on an equal basis with the Federal Government
             in the administration of the public assistance programs, [for as] the
12           situation now stands, the Federal agency definitely has the upper hand
             in the Federal-State partnership because there is no recourse for the
             State beyond the decision of the Secretary * * *." [citations omitted]

13

14        Id. at 736.

15    The Court then concluded that "it is not contrary to that purpose that welfare recipients also

16    have standing to seek review," and thus failing to find sufficient evidence that Congress

17

18    _____

      [5] Moreover, a provision of the Social Security Act applicable to the Medicaid program itself,
19    added by P.L. 103-382, October 20, 1994, makes clear that Congress did not intend to limit
      actions dealing with State Plans to the States, and intended the courts to continue to consider
20    private causes of action with regard to State Plans.  This provision is codified at 42 U.S.C.
      § 1320a-2:

21        In an action brought to enforce a provision of the Social Security Act [42
          USCS §§ 301 et seq.], such provision is not to be deemed unenforceable
22        because of its inclusion in a section of the Act requiring a State plan or
          specifying the required contents of a State plan. This section is not intended to
23        limit or expand the grounds for determining the availability of private actions
          to enforce State plan requirements other than by overturning any such grounds
24        applied in  Suter v. Artist M, 112 S. Ct. 1360 [118 L Ed 2d 1] (1992), but not
          applied in prior Supreme Court decisions respecting such enforceability;
25        provided, however, that this section is not intended to alter the holding in Suter
          v. Artist M. that section 471(a)(15) of the Act [42 USCS § 671(a)(15)] is not
26        enforceable in a private right of action.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 11

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  intended to deny review to those clearly within the zone of interests of the underlying statute,

2  the Court upheld the standing of the welfare recipients. Id.

3       Defendants make much of a statement contained in the legislative history of the 1997

4  repeal of the Boren Amendment to support the broad contention that "Congress did not

5  intend the Medicaid laws to confer jurisdiction on providers and beneficiaries." Opposition,

   pp. 21-22. This interpretation of the statement ignores the plain language of the statement

6  and the history of court actions regarding the Boren Amendment, which is necessarily

7  implicated by the statement. The statement merely indicates that Congress does not intend

8  that provisions of 1396a be interpreted to establish "a **cause of action** for hospitals and

9  nursing facilities **relative to the adequacy of the rates** they receive (emphasis added)."[6]

10 Defendants do concede that "the amendment served primarily to limit actions against the

11 States." Opposition, p. 22. The problem that Congress was addressing by the repeal of the

   Boren Amendment was the plethora of actions brought against States under 42 U.S.C. § 1983

12 challenging the amount of the rates they received. See, e.g., Wilder v. Virginia Hospital

13 Association, 496 U.S. 498 (1990); Department of Health and Social Services, State of Alaska

14 v. Alaska State Hospital & Nursing Home Association, 856 P.2d 755 (Alaska 1993). This

15 statement does not suggest that providers lack standing under the APA to challenge the

16 failure by CMS to act in accordance with statutory and regulatory procedural requirements in

17 approving a SPA. In fact, the Ninth Circuit has not used this statement to prevent even

18 actions under 42 U.S.C. § 1983 for violations of 42 U.S.C. § 1396a that involve issues other

   than challenges to the "adequacy of rates." See, e.g., Watson v. Weeks, 436 F.3d 1152 (9th

19 Cir. 2006).

20      In addition, in Alaska Department of Health and Social Services v. Centers for

21 _____

22 [6] Plaintiff would note that, with the exception of In re NYAHSA Litigation, 318 F. Supp. 30
   (N.D.N.Y. 2004), none of the cases cited by Defendants held 42 U.S.C. § 1396a(a)(13)(A) to
23 be unenforceable under 42 U.S.C. § 1983, and that the case that held the same to be
   enforceable cited by Defendants, Long Term Care Pharmacy Alliance v. Ferguson, 260 F.
24 Supp. 2d 282, 290 (D. Mass. 2003), vacated and remanded on other grounds 362 F. 3d 50
   (1st Cir. 2004), while admittedly not discussing the legislative history, found that the "plain
25 language" of 42 U.S.C. § 1396a(a)(13)(A) establishes a clear right enforceable by the
   judiciary.

26

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 12

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Medicare and Medicaid Services, 424 F.3d 931 (9th Cir. 2005), after discussing the statement

2    in the legislative history discussed above, the Ninth Circuit continued on to conclude that the

3    repeal of the Boren Amendment, while increasing flexibility for the states in ratesetting, did

4    not terminate judicial oversight of reimbursement rates altogether and did not change CMS'

5    obligation to ensure compliance with the statutory requirements, including those related to

     assurances:

6          The State attaches great significance to the repeal of the Boren Amendment,
           suggesting that Congress thereby intended "to terminate . . . judicial
7          oversight" of reimbursement rates and "to remove any basis for cost-based
           review of provider reimbursement." While we agree that in repealing the
8          Boren Amendment, as in enacting it, Congress sought to increase states'
           flexibility in ratesetting, this change did not eviscerate the Secretary's
9          oversight role. During the Boren era, courts recognized that "the Secretary is
           obliged to ensure that each state complies with the statute by requesting data
10         justifying an individual state's assurances when those assurances are suspect."
           Erie County Geriatric Ctr. v. Sullivan, 952 F.2d 71, 79 (3rd Cir. 1991).
11
12         424 F.3d at 941.

13   This holding by the Ninth Circuit reinforces the fact that the repeal of the Boren Amendment

14   was not intended to preclude court consideration of challenges to SPAs based on failure by

15   CMS to fulfill its legal obligations and to ensure that the state has done the same, but was

16   merely intended to halt Section 1983 actions by providers challenging the amount of the rate

     received.
17
18         In    its    Opposition    to    Defendants'    Motion    to    Dismiss    Pursuant    to

19   Fed. R. Civ. P. 12 (b),[7] Plaintiff engaged in a detailed discussion of the statutory and

     regulatory scheme within which Plaintiff falls in the "zone of interests." In summary,
20
     Plaintiff is clearly within the "zone of interests" of 42 U.S.C. § 1396a(b) and 42 USC
21
     § 1316(a)(1), and the regulations and procedural rules and policies implementing the same,
22
     as a provider of hospital services participating in the federal Medicaid program. Under the
23
     statutory provisions, CMS, as the delegate of the Secretary, is only to approve plans that
24
     conform to the legal requirements for approval. Some of these are set forth by statute and
25
     ───────────────────────
26   [7] See pp. 9-12 thereof.

PLAINTIFF'S REPLY TO DEFENDANTS'                              PRESTON GATES & ELLIS LLP
OPPOSITION TO MOTION FOR                                      925 FOURTH AVENUE
SUMMARY JUDGMENT- 13                                         SUITE 2900
                                                             SEATTLE, WASHINGTON 98104-1158
                                                             TELEPHONE: (206) 623-7580
                                                             FACSIMILE: (206) 623-7022

others, particularly procedural requirements, have been implemented by CMS through regulations and procedural rules and policies, such as the use of official forms, such as the Form HCFA-179, utilized for SPA submittal and approval. **Providers such as Plaintiff clearly have a legitimate interest in ensuring that appropriate SPA approval procedures are followed since they are directly affected by SPAs that change reimbursement methodologies and directly alter the amount of money they receive for caring for the State's Medicaid patients.** With respect to provisions governing public notice, providers have a particular interest in ensuring compliance since the public notice process is the means by which they may provide input to the state with regard to the adequacy of rates following repeal of the Boren Amendment and its replacement with a public notice process in 42 U.S.C. § 1396a(a)(13)(A).

Thus, as demonstrated above Plaintiff clearly meets the zone of interest test applicable to the standing inquiry in this matter. Plaintiff, as a provider of hospital services participating in the Medicaid program, clearly falls within the "general policy" of the underlying statutory provisions and the regulations and agency procedures implementing them, such that interpretations of such provisions and/or their scope will directly affect Plaintiff. Sausalito, 386 F.3d at 1200.

Defendants next argue that it is improper for Plaintiff's to bring this action due to its action before the Alaska Department of Health and Social Services and that this is somehow contrary to 5 U.S.C. § 704. Opposition, p. 22. This argument is contrary to the plain language of that provision which allows an action when there is "no other adequate remedy in **a court** (emphasis added)." Contrary to Defendants' attempt to characterize this as an action for money damages, this is an action seeking to overturn the final action of Region 10, a federal agency, deeming page 5 to be approved, an action uniquely within the province of this Court, rather than a State Medicaid agency in an administrative appeal.[8] In fact, the hearing

---

[8] If Defendants are serious, what they are proposing here is that a Hearing Examiner in a state agency somehow has jurisdiction to make rulings concerning the actions taken by a federal administrative agency so Plaintiff should go to that Hearing Examiner and have her make rulings on federal law and the federal APA. It is difficult to imagine that Congress

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 14

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   officer at the State level has stayed those proceedings pending the Court's decision in this

2   case so that she knows which SPA is the correct SPA to apply in that case.  See, *In the Matter*

3   *of Bartlett Regional Hospital Medicaid Rate Appeal for FY 2002*-2003, Case No. 2002-MRC-

4   04 (Consolidated), Order Granting Stay, April 12, 2005, Huna-Jines, Hearing Examiner.[9]

    Thus, Plaintiff has no other adequate remedy but to pursue the action before this Court.  Once

5   this Court determines which State Plan is the one lawfully in effect, the state administrative

6   agency can then apply that State Plan to Plaintiffs Medicaid payment rates appeal.

7           In the Ninth Circuit there is a presumption of reviewability that applies with regard to

8   actions under the APA.  As set forth by the Ninth Circuit in Beno v. Shalala, 30 F.3d 1057

9   (9th Cir. 1994) *(reh'g denied Aug. 31, 1994)*:

10          The APA embodies a "basic presumption of judicial review." Lincoln v. Vigil,
            124 L. Ed. 2d 101, 113 S. Ct. 2024, 2030 (1993) (quoting Abbott Labs. v.
11          Gardner, 387 U.S. 136, 140, 18 L. Ed. 2d 681, 87 S. Ct. 1507 (1967)). n20
            Absent an explicit statutory bar, judicial review of agency action is available
12          except "in those rare instances where statutes are drawn in such broad terms
            that in a given case there is no law to apply," Webster v. Doe, 486 U.S. 592,
13          599, 100 L. Ed. 2d 632, 108 S. Ct. 2047 (1988), n21 and "a court would have
            no meaningful standard against which to judge the agency's exercise of
14          discretion." Heckler v. Chaney, 470 U.S. 821, 830, 84 L. Ed. 2d 714, 105 S.
            Ct. 1649 (1985).

15          n20 See also Bowen v. Michigan Academy of Family Physicians, 476
            U.S. 667, 670, 90 L. Ed. 2d 623, 106 S. Ct. 2133 (1986) (there is a "strong
16          presumption that Congress intends judicial review of administrative
            action").
17
            n21 See also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S.
18          402, 28 L. Ed. 2d 136, 91 S. Ct. 814 (1971); S. Rep. No. 752, 79th Cong.,
            1st Sess. 26 (1945).
19

20          30 F.3d at 1066.

21   Also, after stating this presumption, the Ninth Circuit recently noted that "the applicable law

22   may be derived from agency practice . . . thereby narrowing the class of disputes rendered

23   _____

     envisioned a system where state administrative agencies would hold such power over federal
24   actions.

25   [9] While this Order is not a part of the ROA for this case, the Plaintiff would ask the Court to
     take judicial notice of this Order and has attached a copy of the Order to this Reply.
26

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 15

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    unreviewable." Ana International, Inc. v. Way, 393 F.3d 886, 890 (9th Cir. 2004).

2

3    **VI.    Plaintiff did not fail to exhaust administrative remedies.**

4        Defendants argue that Plaintiff should have been required to bring an appeal to

5    Region 10 under 42 C.F.R. 430, Part D. Opposition, pp. 24-26. The regulations cited govern

6    hearings for **States** that appeal a decision of the Administrator **to disapprove** State plan

7    material. The timeframe to seek this hearing set forth in 42 C.F.R. § 430.18(a) is specifically

8    triggered by receipt of notice of disapproval from CMS by the State. This instant action does

9    not fall within the purview of 42 C.F.R. 430, Part D since (1) Plaintiff is not a State, (2) the

10    decision being challenged relates to the approval of a SPA, rather than the disapproval, and

11    (3) Plaintiff received no triggering notice for purposes of 42 C.F.R. § 430.18(a). Defendants

12    cite no authority which interprets 42 C.F.R. 430, Part D to apply to actions such as the one at

     hand.

13        Even were 42 C.F.R. 430, Part D to be found to apply in this matter, 42 C.F.R. §

14    430.18(a) only requires submission of a "request that the Administrator reconsider the issue"

15    within 60 days of receipt of notice of the decision. As Defendants asserted on page 19 of the

16    Opposition, the letter dated August 25, 2003, by Defendant Karen S. O'Connor constitutes

17    Region 10's "final decision" in this case.[10] By letter dated, September 26, 2003, attorneys on

18    behalf of Plaintiff directed a letter to Defendant Karen S. O'Connor requesting that Region 10

19    formally rescind the August 25, 2003 letter and requested that she respond to legal concerns

20    raised by Plaintiff therein.[11] Thus, Plaintiff clearly brought "its concerns to CMS within 60

     days" as Defendants assert it was required to do. Opposition, p. 24. At that point, it would

21
     ────────────────────

22    [10] Thus, Plaintiff's awareness of "a disputed page" does not equate to notice of an adverse

23    agency decision as Defendants would contend, since Region 10's decision with respect to that
     page had not been made at that point in time, such that the March 18, 2003 date cited by
     Defendants has no bearing on this issue. Opposition, p. 24.

24    [11] See Par. 29 of Answer to Second Amended Complaint and ROA 145-45. In addition, when

25    Defendant O'Connor failed to respond to its initial letter, on February 9, 2004, attorneys for
     Plaintiff directed another letter to her requesting a response. See Par. 30 of Answer to
     Second Amended Complaint.

26

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 16

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

have been the responsibility of Region 10 to notify Plaintiff of the time and place for a hearing, pursuant to 42 C.F.R. § 430.18(b)(1), within 30 days. Thus, any claim that Plaintiff failed to exhaust any administrative remedies is due to Defendants' failure to fulfill their regulatory obligations in this matter on yet another occasion. If the agency "was deprived of the opportunity to correct any errors it made," as Defendants contend (Opposition, p. 26)., the fault lies with the agency, and not with Plaintiff.

## VI.    The State failed to submit page 5 (or page 6) in an "approvable" form.[12]

Defendants make a noteworthy concession on page 26 of the Opposition, acknowledging that "CMS erred when it failed to act on this particular page within 90 days." Unfortunately, CMS compounded this error when it issued its August 25, 2003 letter deeming the page to have been approved on the basis of this failure to act and ignoring the clear regulatory mandate that, by operation of law or otherwise, no SPA can become effective unless it is first submitted in "approvable" form under 42 C.F.R. §447.256(c), and ignoring key evidence in the record that indicated this page was withdrawn from consideration by the State.

In tension with their arguments related to the significance of the submission of page 6 by letter, Defendants attempt to make an argument that the page at issue[13] was traveling with an e-mail "as late as June 28, 2001." Opposition, p. 27. As noted in Section IV above, the documentation does not bear this argument out and any conclusion in this regard is mere speculation.

Defendants attempt to argue that Plaintiff's arguments regarding HCFA 179 are irrelevant. Opposition, p. 27. The only support Defendants provided is the testimony of

---

[12] On page 26 of the Opposition, Defendants assert that "page 5" was first submitted by letter dated March 30, 2001. The record shows, however, that "page 6" was submitted on that date. ROA 2. It is not surprising that Defendants make the mistake as to the pagination, due to the confusion surrounding this very issue, which has only been exacerbated by Region's 10 decision to deem the SPA to have been approved when it was not submitted in "approvable" form, and in fact was mispaginated when originally submitted.

[13] Plaintiff notes that Defendants again erroneously refer to this page as page 5, when the page cited in the record is labeled page 6. See ROA 63.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  Defendant O'Connor, which is not part of the ROA and should thus be disregarded. Even if

2  her testimony is considered, within the same she contradicts her own contention that the

3  HCFA 179 is merely a transmittal form. On pages 45-46 of her testimony, she states that she

   changed the prior practice of allowing "pen and ink" changes to the HCFA 179 because she
4
   "want(s) a clean copy with correct information on it."    If the form is merely of a
5
   housekeeping nature, it is unclear why "pen and ink" changes would not be permitted and
6
7  why Ms. O'Connor is imposing new requirements to ensure that the information on the

   HCFA 179 is correct. In addition, the form requires signature by the authorized state official
8
   requesting the amendment, as well as the Regional Office official who approves the SPA.
9
   Even under Ms. O'Connor's testimony this mere transmittal form sure is attracting a lot of
10
   her attention and a lot of official signatures.
11
        Defendant O'Connor's testimony is also in direct contradiction to that of Janice
12
   Adams. Ms. Adams was the Region 10, SPA Coordinator who handled SPA 01-002. Given

13 the fact that Ms. Adams was the Region 10 official who actually processed the SPA in

14 question, her testimony should be given greater weight with respect to the legal significance

15 of the Form 179 at the time SPA 01-002 was processed.[14] She specifically testified that the

   Form 179 with "pen and ink" changes constitutes the SPA request from the State.[15]
16
   Furthermore, Defendant O'Connor's testimony is contradicted by the documentation
17
   provided by Region 10 to Plaintiff's attorneys at ROA 111-144. As indicated in the letter
18
   conveying the documentation at ROA 111, the Regional Administrator was responding to a
19
   request for "Section 4.19B of the Alaska State Plan . . . effective on or after 1/1/2001." In
20
   response to this request, the Administrator enclosed "the current Section 4.19B of the Alaska

21 [14] See, e.g., Stein v. Barton, 740 F. Supp. 743 (D. Alaska 1990).

22 [15] See Memorandum In Support of Plaintiff's Motion for Summary Judgment (hereinafter
   "MSJ"), pp. 22-27. Much of the O'Connor testimony is at odds with the testimony of the
23 other Region 10 officials who processed the SPA in question. Assuming that the Court even
   considers Ms. O'Connor's testimony, which is not part of the ROA for this case, the most that
24 one can conclude from it is that not only was the entire SPA process flubbed in this case, but
   there is internal disagreement within Region 10 as to the significance of the HCFA 179.
25 Perhaps this internal confusion within Region 10 contributed to the mishandling of the SPA
   in question in this case.
26

PLAINTIFF'S REPLY TO DEFENDANTS'                    PRESTON GATES & ELLIS LLP
OPPOSITION TO MOTION FOR                            925 FOURTH AVENUE
SUMMARY JUDGMENT- 18                                SUITE 2900
                                                    SEATTLE, WASHINGTON 98104-1158
                                                    TELEPHONE: (206) 623-7580
                                                    FACSIMILE: (206) 623-7022

State Plan, pages 1-12, and **the Alaska State Plan Amendment (SPA), transmittal numbers 98-014, 99-007, and 01-002** (emphasis added)." The HCFA 179s are included as part of the SPAs referenced at ROA 129, 133, and 137. This indicates that for the period in question Region 10 treated the HCFA 179 as part of the SPA, the Defendants assertions to the contrary notwithstanding.

Defendants' argument that HCFA 179 is not required by regulation (Opposition, p. 27) is a red herring, in that agency action can be overturned under the APA when it is contrary to the policies, practices, and procedures of an agency. This specific proposition was set forth by Plaintiff in the MSJ (at pp. 30-32) and not contested by Defendants. Defendants also assert that Plaintiff has not explained why the HCFA 179 "is important to [Plaintiff]." Opposition, p. 27-28.    It is important to Plaintiff that Region 10 act in accordance with law, including its policies, practices and procedures, when acting on SPAs that affect Plaintiff's interests. In addition, a provider should be able to rely upon the HCFA 179, when provided as part of the State Plan by Region 10 upon request, as occurred at ROA 111-144, to provide notice of all pages being amended as part of the SPA. If such Form had been accurately completed in the instant case, it is likely that Region 10 would have acted on page 6 (page 5), and at least the Form would have provided notice to a provider that an amendment to that page which dealt with outpatient hospital services had been submitted by the State, thus leading the provider to inquire further as to the disposition of such amendment. It is simply unfair to all Medicaid providers including Plaintiff to allow a SPA to be filed stating that its purpose is for "Revision of Disproportionate Share Calculations" when the SPA has absolutely nothing to do with revision of disproportionate share calculations.[16]

Defendants then question Plaintiff's reference to an Assurances Letter to be submitted along with a SPA. Opposition, p. 28. Plaintiff merely intended to convey to the Court that the required assurances are typically provided in this form. MSJ,. pp.4-5. As Plaintiff argues

---

[16] It is also difficult to imagine how the State could have met the federal notice requirements to announce a State Plan Amendment when the paperwork filed with Region 10 identifies the wrong federal regulations it supposedly complies with, identifies the wrong pages of the State Plan to be amended, and identifies the wrong federal payments to be changed.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 19

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

in Section III above, 42 C.F.R. 447.253 must be read to apply to SPAs dealing with outpatient hospital services. Defendants seem to argue that such assurances need not be submitted in writing. Not only is this illogical, but it is contrary to the practice of CMS in implementing this regulation, as well as the interpretation of 42 C.F.R. 447.253 by numerous courts. Of particular significance is <u>Francisco v. Department of Human Resources</u>, 1990 U.S. Dist. LEXIS 19766 (D. Or. 1990) (attached hereto as Attachment "1"), in which the District Court of Oregon notes that 42 C.F.R. § 447.253 requires **"written** assurances," citing cases in the Eighth and Tenth Circuits for this proposition:

> 42 C.F.R. § 447.253 (a) and (b) requires a Medicaid agency to make assurances satisfactory to the federal agency that it has made findings concerning rates. Defendants argue that these requirements simply require that certain information be forwarded to HHS and does not require the Medicaid agency to "conduct fact finding." A state's failure to make factual findings which support the written assurances is enough, by itself, to invalidate a Medicaid plan. *Nebraska Health Care Ass'n v. Dunning, 778 F.2d 1291 (8th Cir. 1985),* cert. den., *479 U.S. 1063 (1987); AMISUB v. Colo. Dept. of Social Services, 879 F.2d 789 (10th Cir. 1989).*

1990 U.S. Dist. LEXIS 19766, p. 18-19.

Of further significance is that Oregon is in Region 10, and the District Court notes that the State alleged that an Oregon official submitted "letters of assurances" in connection with the SPA approval at issue:

> They also allege that letters of assurances were submitted by an Oregon state official stating that Oregon "has found that the rates are reasonable and adequate to meet all the requirements of 42 C.F.R. § 447.253(b)(1)."

1990 U.S. Dist. LEXIS 19766, p.19-20.

See also <u>Independence Acceptance Co. v. California</u>, 204 F.3d 1247, 1252 (9th Cir. 2000), in which the Ninth Circuit indicated that it could only determine whether the Secretary's acceptance of the State's assurances regarding notice under 42 C.F.R. § 447.253(a) & (h) was appropriate by examining **the documentation** presented to the Secretary by the State to demonstrate compliance; and <u>Independent Nursing Home v. Simmons</u>, 732 F. Supp. 684, 689 (S.D. Miss. 1990), in which the court noted that CMS (formerly HCFA) had requested that the state submit assurances and related information

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 20

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

required for significant plan amendments under 42 C.F.R. § 447.253 since it had originally failed to do so, and the State submitted, **by letter**, written assurances with regard to the public notice requirements.

In this case the record is devoid of any evidence (or any claim) that Alaska Medicaid submitted the required assurances (or any assurances) to Region 10. In fact, at this late juncture of the case the Defendants do not even claim that they received any assurances from the State of Alaska. Their new claim is that "there is nothing in that regulation that speaks to assurances." Opposition, p. 28-29. Rather than affirmatively represent that the proper assurances were in fact given, all the Defendants can now do is rather weakly state that ". . . the record supports the conclusion that consultations took place . . . ." Defendants' current position is a far cry from their original representations to this Court that admitted that " . . . CMS approval is based on the State's assurances that it has sufficiently complied." See, Defendants' Motion to Dismiss, at p. 7 (July 14, 2005). Thus, no approvable amendment was submitted to Region 10 in accordance with 42 C.F.R. 447.256(a)(2), precluding the potential for such amendment to be deemed effective under 42 C.F.R. § 430.16.

**VII.    The failure by the State to provide adequate and proper notice is material to whether the SPA was in approvable form.**

Defendants do not assert that the notice provided by the State of Alaska was in compliance with 42 C.F.R. § 447.205 and 42 U.S.C. § 1396a(a)(13). In fact, Defendants appear tacitly to concede that the notice was "defective" and "improper." Opposition, p. 30. Contrary to Defendants' assertion, CMS is required to "police the State's behavior in this respect." Id. As noted in the preceding Section, 42 C.F.R. § 447.253(h) requires the agency to provide written assurances to CMS that it has complied with the public notice requirements in 42 C.F.R. § 447.205, not just have "consultations" as Defendants now claim. Even if this Court were to find 42 C.F.R. § 447.253(h) to be inapplicable in the instant case, Defendants still concede that CMS must have either "written or verbal" assurances that the State has complied with the notice requirement. Id. The record is completely devoid of any evidence that any such assurances were obtained, and to assume otherwise would constitute mere speculation, which Defendants repeatedly decry in their Opposition. As noted by the Ninth Circuit in Beno v. Shalala, 30 F.3d 1057 at 1073-74, the Court must find the record to "be

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 21

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

sufficient to support the agency action." Defendants have blatantly failed to meet to their burden to produce evidence that they complied with applicable legal requirements. Preston v. Heckler, 734 F.2d at 1372-73.

Nothing in the record indicates that any assurances on any topic were ever made to Region 10.[17] Even if assurances were made they could not have been found to be acceptable by Region 10 due to the woeful inadequacies in the State of Alaska's apparent attempts to comply with applicable notice requirements. The Ninth Circuit imposes a duty on CMS to "look behind" any assurances, and at any rate, has demonstrated that it will independently engage in a review of whether a notice complies with the applicable requirements. See Independence Acceptance Co. v. California, 204 F.3d 1247 (9th Cir. 2000). This decision was binding precedent at the time SPA 01-002 was under consideration by Region 10. Given that the Ninth Circuit indicated that it would examine the underlying notice for compliance with applicable law in order to determine whether a SPA was validly approved, it would seem that Region 10 should have done no less in its SPA approval process.

Defendants then attempt to make an argument that Region 10's neglect in this case somehow excuses the State from meeting applicable assurance and notice requirements. Opposition, p. 31. Carried to its logical conclusion, Defendants' argument would dictate that any SPA submission by a State, no matter how nonconforming to law, no matter how flawed, no matter how many gross errors were made, will become effective in 90 days if CMS fails to act on it. The more-reasoned approach, and the one that complies with law, is that a SPA will not become effective due to inaction, unless it was submitted in approvable form in the first instance. See 42 C.F.R. §447.256(c). See also 42 USC § 1316(a)(1), which imposes on CMS, as the delegate of the Secretary, the affirmative duty "to make a determination" regarding whether a SPA conforms to the legal requirements for approval.    Therefore, the

---

[17] Throughout their Opposition Brief, the Defendants were not at all shy about citing to statements made that are not part of the ROA in this case. Given their willingness to cite to matters not on the record there was nothing to stop the Defendants from citing something that might possibly support a claim that some assurances were actually given by the State of Alaska to the Defendants. Given the complete lack of any evidence showing compliance, it is reasonable to conclude that no assurances were ever given to Region 10.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

"acknowledgement of deemed approval" by Region 10 was indeed arbitrary and capricious and contrary to law, as Region 10 failed to consider the highly relevant factors of a lack of assurances and lack of proper notice, which made the page of the SPA at issue not approvable in any event, when it made its determination regarding deemed approval.

Finally, with regard to this issue, Plaintiff would note that if a court is empowered to overturn approval of a SPA based on the inadequacy of assurances or public notice following an affirmative approval of a SPA by CMS,[18] then the Court is equally empowered to overturn a "deemed approval" on the same bases. There is no magic to the "deemed approval" that insulates a SPA from scrutiny with regard to whether it complies with applicable law.

**VIII.  The State did withdraw page 5 (page 6) of SPA 01-002.**

Defendants contest the meaning of Bob Labbe's letter of June 28, 2001. Opposition, pp. 31-33. In making this argument, Defendants ignore the passages in such letter which request "pen and ink" **changes** to the HCFA Form 179, but which fail to identify page 5 or 6 and to list outpatient hospital services as a subject of the amendment. There is no evidence that page 6 was traveling with pages 2 and 10 on the date of the letter. The Court may not be able to "add language" to this letter, but it should not disregard language and the significance thereof, which includes the changes requested to the HCFA Form 179, which is part of the official SPA as discussed in Section VI above.

Defendants fail to address Plaintiff's arguments regarding the legal significance of the events surrounding the submission and approval of TN 01-001, and Region 10's failure to consider this important aspect of the problem before reaching its decision deeming page of TN 01-002 to be approved by operation of law. MSJ, pp. 27-28.

**IX.  The decision by CMS to deem page 5 to be approved is expressly dependent upon its approval of an electronic submission of the same in violation of law.**

In considering the arguments made by Defendants with regard to this issue

---

[18] See, e.g., Independence Acceptance Co. v. California, 204 F.3d 1247 (9th Cir. 2000); Independent Nursing Home v. Simmons, 732 F. Supp. 684 (S.D. Miss. 1990).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(Opposition, pp. 33-34), the standards set forth by the Ninth Circuit in Beno v. Shalala, 30 F.3d at 1073-74, are controlling. Beno v. Shalala provides that the Court must find evidence in the record that the "agency actually considered position advanced in litigation" and that explanations of agency action cannot be provided by counsel, as well as the prohibition against the offer of a new and different post-hoc rationalization to justify an action. See, e.g., Wieler v. United States, 364 F. Supp. 2d 1057, 1062 (D. Alaska 2005), where the Court noted that where a plaintiff is challenging final agency action, "the agency must justify its final action by reference to the reasons it considered at the time it acted," citing Friends of the Clearwater v. Dombeck, 222 F.3d 552, 560 (9th Cir. 2000) for this proposition. Indeed, Defendants have cited Supreme Court authority that states that "when there is a contemporaneous explanation of the agency decision, the validity of that action must 'stand or fall on the propriety of that finding . . .'" Opposition, p. 6.

If the Court focuses on the reasons set forth in Defendant O'Connor's August 25, 2003 letter (ROA 77), and not the post-hoc rationalizations that counsel for Defendants attempts to offer with regard to the same, it is clear that the decision is contingent on the acceptance of page 5 as an electronic submission in contradiction of CMS policies and procedures. The letter nowhere indicates that the page being approved was included with the original submission by letter and that this is the basis on which the page is deemed approved.[19] Again, Defendants' argument that no regulation requires a SPA to be submitted in hard copy is a red herring. As Plaintiffs have argued and Defendants have failed to dispute, an agency action may be overturned under the APA by reference to policies, procedures, and practices of the agency. MSJ, pp. 30-32.

Plaintiff further notes that Defendants fail to address Plaintiff's arguments in relation to Defendant O'Connor's May 21, 2004 letter (ROA 145) explaining her prior decision letter which indicates that an "exception" is being made to local procedures to recognize email submissions as official, as well as Plaintiff's contentions with regard to national CMS policy

---

[19] Ultimately, the State of Alaska was seeking approval of an amended page 5 rather than page 6. Plaintiff would note that, during the timeframe at issue, when seeking to change pages subsequent to an original submittal, the state submitted revised pages in hard copy. See ROA, Attachment 1, Exhibit 26 to the Deposition of Janice Adams.

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 24

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

in this regard as reflected in ROA 153. MSJ, pp. 29-32. Plaintiff reiterates that Region 10 has failed to demonstrate either that it had a reasonable rationale for departing from its settled practice of requiring SPA submission in hard copy rather than via email or that the position it has adopted in granting an "exception" for the State of Alaska is reasonable.  Id. Furthermore, Defendants fail to counter Plaintiff's assertion that the acceptance of the email submission is contrary to the facts in this case, based on Guy Hayashi's determination on behalf of Region 10 and notification of Alaska Medicaid that the email submission was not acceptable as filed. MSJ, pp. 32-33. Region 10 further failed to consider this important aspect of the problem when reaching its decision to deem the SPA approved based on the email submission of page 5, in contravention of the standards imposed by the APA.

## X. Request for Judgment

Plaintiff has established that Defendants acted arbitrarily and capriciously, abused their discretion, and acted contrary to law, within the meaning of 5 U.S.C. §§ 706(2)(A) and 706(2)(D), and thus their actions should be held unlawful and set aside in accordance with 5 U.S.C. § 706(2). Plaintiff requests that this Court rule that the language for Outpatient Hospital Services on page 5, of SPA 01-002, be declared void and of no legal effect as having not been submitted as part of an approvable SPA and that the prior language concerning Outpatient Hospital Services contained at ROA 138 and 119 be declared the "official" version of the Alaska State Plan for Outpatient Hospital Services in effect as of January 1, 2001.

DATED this 14th day of March, 2006.

PRESTON GATES & ELLIS LLP

By: /s/ Stephen D. Rose
Stephen D. Rose, ABA #8901002
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 623-7580
Fax: (206) 623-7022
Email: srose@prestongates.com

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 25

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Attorney for Plaintiff
Bartlett Regional Hospital

I hereby certify that on March 14, 2006,
copies of the foregoing were served
electronically on:

Daniel R. Cooper, Jr.
Asst. U.S. Attorney

daniel.cooper@usdoj.gov

/s/ Stephen D. Rose

PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION FOR
SUMMARY JUDGMENT- 26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022