Stephen D. Rose
Dawn R. Kreysar
PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104
(206) 370-8126  (tel)
(206) 623-7022 (fax)
srose@prestongates.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CITY AND BOROUGH OF JUNEAU, ALASKA, d/b/a/ BARTLETT REGIONAL HOSPITAL,<br><br>Plaintiff,<br><br>v.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, UNITED STATES OF AMERICA, R.J. RUFF, sued in his official capacity as the REGIONAL ADMINISTRATOR OF REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, AND KAREN S. O'CONNOR, sued in her official capacity as ASSOCIATE REGIONAL ADMINISTRATOR, DIVISION OF MEDICAID & CHILDREN'S HEALTH, REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>Defendants. | No.  3:04-cv-00152-JWS<br><br>**PLAINTIFF'S RESPONSE TO ORDER TO SHOW CAUSE** |

-1-

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**SUMMARY OF RESPONSE**

The Court has asked Plaintiff City and Borough of Juneau, Alaska d/b/a Bartlett Regional Hospital ("Bartlett") to demonstrate that it has standing to pursue its claims against defendants. *See* Order to Show Cause, dated August 10, 2006 (Doc. 60). Specifically, the Court seeks clarification as to the statutory basis for Bartlett's action. *Id.* at 4.

Bartlett has brought this action because defendants violated 42 U.S.C. § 1396a(b)[1] when they approved changes to the methodology by which the State of Alaska reimburses hospitals for outpatient hospital services despite the State's clear failure to comply with federal laws and regulations governing amendments to State Medicaid plans. The Medicaid Act, codified at 42 U.S.C. § 1396 et seq., requires all state plans to be approved by the Secretary of the Department of Health and Human Services, which in turn has delegated approval authority to the Centers for Medicare and Medicaid Services ("CMS") and its regional administrators. Section 1396a(b) of the Act explicitly conditions federal approval of state plans (and plan amendments) on compliance with <u>all</u> of the requirements for state plans listed in § 1396a(a). *See* 42 U.S.C. § 1396a(b) ("The Secretary shall approve any plan which fulfills the conditions specified in subsection (a).").[2]

---

[1] Bartlett would also point to 42 U.S.C. § 1316(a)(1) which requires CMS, as the Secretary's delegate, when a state plan (or amendment) is submitted for approval under 42 U.S.C. § 1396 et seq., to make a determination as to whether it conforms to the requirements for approval under such title within a specified timeframe. Bartlett notes that by failing to make an affirmative determination that the state plan amendment submitted by Alaska Medicaid conformed to the requirements under 42 U.S.C. § 1396 (the Medicaid statute), as detailed below, defendants also violated their statutory obligations under 42 U.S.C. § 1316(a)(1), bolstering Bartlett's arguments with regard to its standing to pursue this case.

[2] These requirements for state plans apply equally to plan <u>amendments</u>. *See generally Oregon Ass'n of Homes for the Aging v. Oregon*, 5 F.3d 1239 (9th Cir. 1993); *Oklahoma v. Shalala*, 42 F.3d 595 (10th Cir. 1994) (both determining whether changes to reimbursement methods

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Here, the state plan amendment at issue failed to meet several of the mandatory minimum conditions for approval by CMS. Specifically, the proposed amendment failed to comply with § 1396a(a)(13)(A) which provides that the determination of reimbursement rates must occur through a "public process" that includes prior publication of the proposed rates and their underlying methodologies and justifications and a reasonable opportunity for all interested residents of the State, including specifically **providers**, to review and comment upon the same. Despite the complete failure of the proposed amendments to meet these necessary preconditions to approval, CMS nevertheless approved the amendment. The defendants' actions in approving the amendment (and making it retroactive for two years), were arbitrary and capricious and contrary to law. The agency's arbitrary and capricious disregard of the procedural safeguards embodied in § 1396a(b) and § 1396a(a)—not to mention the agency's own regulations, policies and procedures—has directly invaded Bartlett's procedural rights and caused financial harm of approximately $400,000 for fiscal years 2002 and 2003. As a person adversely affected and aggrieved by the actions of a federal agency, Bartlett is entitled to judicial review under the Administrative Procedure Act ("APA"). 5 U.S.C. § 702.

## DISCUSSION

**I.    Bartlett Has Prudential Standing Under the APA Because Its Interests Are Congruent with the Purposes of Sections 1396a(b) and 1396a(a)(13)(A).**

---

were made with adequate notice under § 1396a(a)(13)(A)); *Alaska Department of Health & Soc. Svcs. V. Centers for Medicare and Medicaid Services,* 424 F.3d 931, 935 (9th Cir. 2005) (citing 42 U.S.C. § 1396a(b) for the proposition that "[t]he Secretary 'shall approve' any state plan (**or amendment**) that fulfills these statutory and regulatory conditions." (emphasis added)).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 42 U.S.C. § 702. For actions brought under the APA, the Supreme Court has imposed a "prudential standing" limitation that goes beyond the requirements of Article III of the Constitution. As the Supreme Court has held, to qualify as aggrieved "within the meaning of a relevant statute," a plaintiff must establish that his asserted injury "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis for his complaint." *Lujan v. Nat'l Wildlife Federation*, 497 U.S. 871, 883 (1990).

As the Supreme Court has explained, the "zone of interests" test "is not meant to be especially demanding." *Clarke v. Securities Industry Assn.*, 479 U.S. 388, 399 (1987). "Qualified plaintiffs include not only those who are themselves the subject of the contested regulatory action," but also those whose interests are congruent with those reflected in the statute. *Amgen v. Smith*, 357 F.3d 103, 108-109 (D.C. Cir. 2004) (quoting *Clarke*, 479, U.S. at 399). Thus, "the zone of interests test serves to exclude only those 'parties whose interests are not consistent with the purposes of the statute in question.'" *Amgen*, 357 F.3d at 109 (quoting *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002)).

In determining whether a plaintiff meets the zone of interests test, courts first look to the provisions of the particular statute at issue to determine what interests the law was intended to protect. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997) ("In determining whether the petitioners have standing under the zone-of-interests test to bring their APA claims, we look . . . to the substantive provisions of the E[ndangered] S[pecies] A[ct], the alleged violations of which serve as the gravamen of the complaint."). Then the reviewing court must

-4-

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

decide "whether the interest sought to be protected by the complainant is arguably within" that same zone of interests. *NCUA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 492 (1998) ("we first discern the interests 'arguably . . . to be protected' by the statutory provision at issue; we then inquire whether the plaintiff's interests affected by the agency action in question are among them"). *See also Bennett*, 520 U.S. at 175 (holding that a group of ranchers and local irrigation districts had standing to pursue APA claims against the Fish and Wildlife Service and the Department of the Interior for failure to use the best available scientific and commercial data, as required in § 7 of the ESA, when making jeopardy determinations that affected the quantity of available water for commercial and irrigation purposes).

The Medicaid statutes give states considerable flexibility in deciding what items and services they will pay for and in what amounts. *See* 42 U.S.C. § 1396 et seq. But the statutory scheme has built-in procedural safeguards to ensure that state plans meet certain minimum criteria. *See, e.g.*, 42 U.S.C. § 1396a(a) ("A State plan for medical assistance must—[contain the following 67 items] . . . ."). The minimum criteria in § 1396a(a) comprise both substantive and procedural requirements. Among the process-oriented safeguards is the requirement that reimbursement rates for hospital services must be determined via a "public process" under which, among other things, payment rates and the methodologies and justifications used for determining the rates are published, and under which "<u>providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment</u> on the proposed rates, methodologies and justifications." 42 U.S.C. § 1396a(a)(13)(A). The text of §1396a(a)(13)(A) thus reveals a clear purpose to protect all providers and other concerned residents—including hospitals—

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

from ill-considered and unannounced changes in State reimbursement policies. *Compare Bennett*, 520 U.S. at 176-77 (observing from the text of the statute that the "obvious purpose" of ESA's "best available scientific and commercial data" requirement was to ensure that the ESA not be implemented haphazardly with needless economic dislocation produced by zealous but unintelligent pursuit of environmental objectives).

Section § 1396a(b), the primary statute upon which Bartlett bases its standing, invests the Secretary of the Department of Health and Human Services, acting through CMS and its regional offices, with the duty to enforce these mandatory procedural requirements and to disallow state plans that fail to do so. In interpreting § 1396a(b), the Ninth Circuit has recently stated:

> The statutory text makes clear that **the Secretary has the authority—indeed, the obligation—to ensure that each of the statutory prerequisites [of § 1396a(a)] is satisfied before approving a Medicaid state plan amendment**. . . . Because the Secretary is charged with ensuring that the State complies with this statutory mandate, it follows that **he cannot approve a state plan that does not provide such methods and procedures**—even if it complies with other regulations.

*Alaska Department of Health & Soc. Svcs. v. Centers for Medicare and Medicaid Services*, 424 F.3d 931, 939-940 (9th Cir. 2005).[3] Thus, pursuant to its § 1396a(b) duty to ensure full compliance with § 1396a(a), CMS is supposed to act as a bulwark against State attempts to

---

[3] Note also that, in *Alaska Department of Health & Soc. Svcs.*, the Ninth Circuit interpreted § 1396a(b) to incorporate regulatory requirements as well as statutory requirements, *e.g.*, a state plan amendment must also comply with regulatory requirements to be approvable under the statute: "The Medicaid Act prescribes a laundry list of requirements that this state plan 'must' satisfy, 42 U.S.C. § 1396a(a), and an extensive body of regulations implements these requirements. The Secretary 'shall approve' any state plan (or amendment) that fulfills these statutory and regulatory conditions, 42 U.S.C. § 1396a(b), and has delegated this authority to the CMS Administrator. 42 C.F.R. § 430.15(b)." 424 F.3d at 935.

-6-

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

ram through proposed changes to reimbursement rates without giving "providers . . . and other concerned State residents . . . a reasonable opportunity for review and comment." 42 U.S.C. § 1396a(a)(13)(A).

Bartlett, as a provider of hospital services to Medicaid beneficiaries, has an obvious interest in both the rates paid under the Alaska state plan and the integrity of the process under which that state plan is amended. Bartlett thus falls squarely within the zone of procedural interests that CMS was obligated, but failed, to protect. *See Alaska Department of Health & Soc. Svcs.*, 424 F.3d at 939-940 (discussing purpose of § 1396a(b)). *See also Amgen v. Smith*, 357 F.3d 103, 107-109 (D.C. Cir. 2004) (holding that manufacturer of new drug treatment had prudential standing under the APA to challenge "procedural irregularities" in CMS's decision to eliminate supplemental payments made to hospitals to cover the costs of providing the drug, as manufacturer's commercial interest in selling the drug was congruent with the statutory purposes of § 1395l(t)(6) to give Medicare beneficiaries access to new technology).

Bartlett filed this action because the defendants failed to fulfill their responsibilities under § 1396a(b), as well as 42 U.S.C. § 1316(a)(1). Region 10's failure to ensure that each of the statutory prerequisites of §1396a was met by the State of Alaska has harmed Plaintiff. In a last-minute rush to file its paperwork to amend the state plan by the end of the first quarter[4] of 2001, the State of Alaska submitted a letter on March 30, 2001 advising CMS that the State

---

[4] Pursuant to 42 C.F.R. § 430.20(b)(2) and § 447.256 (c), a State Plan Amendment that changes the State's payment method and standards can be made retroactive only to the first day of the calendar quarter in which an approvable amendment is submitted. Thus, the last possible day that the State of Alaska could have filed a State Plan Amendment and have had it approved back to January 1, 2001, was March 30, 2001. (Note: March 31, 2001 fell on a Saturday).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

wished to amend pages 2, 6 and 12 of Attachment 4.19-B. Second Amended Complaint, ¶ 18; *see also,* Record on Appeal ("ROA") Attachment 1, exhibit 4. Along with the letter were the CMS forms that needed to be submitted in order to properly file a State Plan Amendment request. *Id.* The CMS State Plan Amendment forms (which lack an authorizing signature from any official of the State of Alaska) state that an amendment of the State Plan is being requested to implement a "Revision of Disproportionate Share Calculation," and then cite the specific federal regulations which address Disproportionate Share Calculations. *Id.* Contrary to the representations made on the State Plan Amendment form, nothing in the requested State Plan Amendment had anything to do with Disproportionate Share Calculations.

**After** the end of the first quarter, on April 10, 2001, the State of Alaska emailed changes to its State Plan Amendment which were *rejected* by Region 10. Region 10 representative Guy Hayashi by email of April 23, 2001, advised the State of Alaska that its recent email submission attempting to make corrections to the deficient State Plan Amendment submission of March 30, 2001, was being rejected and that changes to the State Plan Amendment submission would have to be made later, perhaps through "pen and ink" authorizations:

> Attached is the SPA that we received. If there are any problems, we can correct them later **and not through your recent submission**. When it comes time to act on the SPA, we may ask for "pen & ink" authorizations. Sit back awhile.

ROA 31; Second Amended Complaint, Exhibit F.

On June 28, 2001, (i.e., just before the end of the second quarter of 2001), the State sent a letter to CMS enclosing substitute submissions requesting amendment of only pages 2 and 10 of Attachment 4.19-B of the state plan, which CMS approved the following day,

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

retroactive to January 1, 2001. Second Amended Complaint, ¶¶ 19-20 and Ex. C & D, ROA 66-68, 70-73. It was at this point that the official "pen and ink" changes noted in Mr. Hayashi's email to the state of April 23, 2001 (ROA 31) were made. No one at Alaska Medicaid indicated at the time that the State had also proposed an amendment to either page 5 or page 6. Second Amended Complaint, ¶¶ 23-25. The State Plan Amendment approval by Region 10 approves amending pages 2 and 10 only, as specifically requested by the pen and ink changes from the State of Alaska. ROA 70-73. Neither page 5 nor page 6 was ever approved as part of the State Plan Amendment by Region 10. *Id.* Then, <u>more than two years later</u>, on August 25, 2003, CMS wrote a letter informing the State that, although pages 2 and 10 were the only amendments that CMS had approved, CMS would agree to approve an amendment to page 5 (which alters the reimbursement methods for outpatient hospital services), <u>retroactive to January 1, 2001</u> (ROA 77), even though (1) the State's submission of the page 5 amendment had been sent impermissibly via email on April 10, 2001; (2) CMS rejected the page 5 e-mail submission of April 10, 2001, and notified the State of this rejection by email on April 23, 2001 (ROA 31); (3) the State gave insufficient notice of the proposed amendment to page 5 to the public, as required by statute and by regulation; (4) the documentation submitted by the State contains no assurances to CMS that the State gave proper notice and an opportunity to comment, as required by statute and regulation; (5) the applicable statute (§ 1396a(b)) prohibits CMS from approving amendments that do not comply with such requirements; and (6) in any event, agency rules permit an amendment to be made retroactive only as far back as the first day of the calendar quarter in which an approvable amendment was submitted to and approved by CMS. Second Amended

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Complaint, ¶¶ 26-28, 31-38, & Exs. E, F, G, & H, ROA 77, 31, 145-46, 147-52. The defendants' actions were arbitrary and capricious and contrary to law. 5 U.S.C. § 702.[5]

## II. Bartlett Also Has Standing Under the APA to Challenge CMS's Arbitrary and Capricious Failure to Follow Its Own Regulations.

The defendants' arbitrary and capricious actions go beyond failure to meet their statutory obligations under 42 U.S.C. § 1396a(b) and 42 U.S.C. § 1316(a)(1). Defendants' approval of a plan amendment in mid-2003, allowing the amendment to be deemed effective retroactively to January 2001, is a blatant violation of several of CMS' own rules and regulations.[6] As alleged in Bartlett's Second Amended Complaint (Doc. 39), and as borne out in the ROA and discussed in Bartlett's Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 46) and Plaintiff's Reply to Defendants' Opposition to Motion for Summary Judgment (Doc. 51), the defendants' actions violate numerous regulations, including but not limited to the following:

- 42 C.F.R. § 447.205 (state Medicaid agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates). *See* Second Amended Complaint, ¶ 37;

---

[5] It appears the Court may be under the misimpression that the agency's decision to approve the page 5 amendment was timely. See Order to Show Cause at 4. As described above, page 5 was **never** approved by Region 10 in 2001. It was not until mid-2003, more than **two years after** CMS approved the State Plan Amendment allowing for pages 2 and 10 to be amended, that Region 10 "approved" page 5 being amended and then made that "approval" retroactive to January 1, 2001. ROA 77. 42 U.S.C. § 1316(a)(1) requires that a determination be made within 90 days of the State's submission of a State Plan Amendment. Here, Region 10, through its official, Guy Hayashi, **rejected** the State's attempt to amend page 5 of the State Plan through its April 10, 2001 submission of page 5. To the extent that Region 10 took action, the only action they took in the days immediately following the State Plan Amendment request was to **reject** page 5.

[6] Again, note that under Ninth Circuit precedent, approval of a state plan amendment which fails to conform to regulation would constitute a violation of 42 U.S.C. § 1396a(b). See the discussion of *Alaska Department of Health & Soc. Svcs*, *supra*, note 3.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

- 42 C.F.R. § 447.253(h) (state Medicaid agency must provide assurances to CMS that public notice has been given as required). *See* Second Amended Complaint, ¶¶ 33, 37, 41;

- 42 C.F.R. § 447.256(a)(2) (<u>requiring CMS to base its approval of plan amendments on the acceptability of the state's assurances that the requirements of the foregoing have been met</u>). *See* Second Amended Complaint ¶¶ 33; 41;

- 42 C.F.R. § 430.20(b)(2) and § 447.256(c) (changes to state payment methods not effective until first day of calendar quarter in which an approvable amendment is submitted). *See* Second Amended Complaint ¶ 36.

Although these regulations do not themselves grant a private right of enforcement, the APA provides a judicial forum and a remedy to persons adversely affected by an agency's failure to follow its own regulations.[7] *Wieler v. United States*, 364 F. Supp. 2d 1057, 1062 (D. Alaska 2005). *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004).[8]

---

[7] It should be noted that Region 10 **admitted** that CMS was not abiding by its own procedures when it retroactively "approved" page 5 in its letter of mid-2003. (ROA 77). In the Region 10 cover letter to the State of Alaska, sent in response to a specific request made by the State of Alaska, the Region 10 administrator acknowledges that Region 10 does not accept email submission of State Plan Amendments (the very grounds on which Region 10 official Guy Hayashi had rejected the State Plan Amendment submission by the State of Alaska (ROA 31)). However, the administrator goes on to state that in this one instance "an exception is being made to facilitate closure for the SPA." ROA 77. Wanting to "facilitate closure" is not proper justification for a federal administrative agency to ignore its own rules, regulations, and procedures.

[8] As detailed in Bartlett's Memorandum in Support of Plaintiff's Motion for Summary Judgment (Doc. 46) and Plaintiff's Reply to Defendants' Opposition to Motion for Summary Judgment (Doc. 51), Bartlett contends that it also has standing under the APA based on defendants' violations of policies and procedures. Since the Order To Show Cause indicates that the judge is aware of these arguments and does not wish Bartlett to reiterate arguments it has previously made, Bartlett would simply note that Bartlett reads the *Alcaraz* case to support the proposition that the APA provides for review of an agency's failure to follow its policies and procedures.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Indeed, the federal reporters are replete with cases where courts have sustained APA challenges to agency actions taken in violation of the agency's own regulations. *E.g.*, *Maximum Home Health Care, Inc. v. Shalala*, 272 F.3d 318, 321 (6th Cir. 2001) (finding violation of APA where CMS relied on reimbursement guidelines that were inconsistent with Medicare regulations); *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 291-92 (1st Cir. 1995) (holding that agency acted arbitrarily and capriciously under the APA by suddenly and *sub silentio* altering its settled policies and violating its own regulations regarding the procedures for decommissioning nuclear plants)[9]; *Clark Regional Med. Center v. Shalala*, 136 F. Supp. 2d 667 (E.D. Ky. 2001) (holding that HCFA's (as CMS was formerly designated) retroactive determination that plaintiff hospitals were no longer eligible to receive additional payments for serving a disproportionate share of low-income patients was arbitrary and capricious because the agency failed to adhere to its existing regulations and guidance governing disproportionate share payments). In none of these cases was prudential standing held to be an obstacle to the plaintiffs' abilities to bring their claims based on regulatory violations.[10] But even if these cases and the Supreme Court's

---

[9] Not unlike Bartlett's allegations in the present action, the plaintiffs in *Citizens Awareness Network* argued that the agency had also violated a statute that required notice and an opportunity for affected persons to voice their concerns at a hearing before any "modifications" to nuclear plant operating rules could take effect. *See Citizens Awareness Network*, 59 F.3d at 291-92.

[10] It is possible, of course, that prudential standing based solely on the regulatory violations was simply never raised as an issue in these cases. Bartlett believes that possibility to be very remote. It seems extremely unlikely that the accomplished attorneys representing the federal government would ever neglect to raise an issue of standing, as that is surely one of the most commonly employed defenses in any litigation challenging the validity of agency action.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

precedent on prudential standing under the APA are properly understood to require plaintiffs to allege a specific statutory violation, Bartlett has done so here.  *See* Section I, *supra*.[11]

Accordingly, for all the foregoing reasons, there is no cause for the Court to dismiss Bartlett's claims for lack of standing, prudential or otherwise.

DATED this 18th day of August, 2006.

PRESTON GATES & ELLIS LLP

By: /s/ Stephen D. Rose
Stephen D. Rose, ABA #8901002
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Phone: (206) 370-8126
Fax: (206) 623-7022
Email: srose@prestongates.com
Attorney for Plaintiff
Bartlett Regional Hospital

I hereby certify that on August 18, 2006, copies of the foregoing were served electronically on:

Daniel R. Cooper, Jr.
Asst. U.S. Attorney

daniel.cooper@usdoj.gov

/s/ Stephen D. Rose

K:\53742\00001\DA1L\DA1LP20R9
K:\53742\00001\SDR\SDR_P2068

---

[11] Some Ninth Circuit decisions suggest that courts should look to both the statute and the regulations promulgated under it when considering whether a claim is within the relevant "zone of interests."  *See, e.g.*, *Stratman v. Watt*, 656 F.2d 1321, 1324 (9th Cir. 1981) (examining text of statute and regulations and concluding that recreational interests gave plaintiff's prudential standing); *City of Sausalito v. O'Neill*, 386 F.3d 1186 (9th Cir. 2004). The regulations cited above only bolster the conclusion that Bartlett's procedural rights are within the zone of interests that §§ 1396a(b) and (a)(13)(A) were designed to protect.

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022