UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

| | |
|---|---|
| CITY AND BOROUGH OF JUNEAU, ALASKA, d/b/a BARTLETT REGIONAL HOSPITAL,<br><br>    Plaintiff,<br><br>vs.<br><br>CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES OF AMERICA; R. J. RUFF, in his official capacity as REGIONAL ADMINISTRATOR OF REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; and KAREN S. O'CONNOR, in her official capacity as ASSOCIATE REGIONAL ADMINISTRATOR, DIVISION OF MEDICAID & CHILDREN'S HEALTH, REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES,<br><br>    Defendants. | 3:04-cv-152 JWS<br><br>OPINION AND ORDER<br>FROM CHAMBERS<br><br>[Re: Motions at Dockets 43 and 48] |

## I. MOTIONS BEFORE THE COURT

At docket 43, plaintiff the City and Borough of Juneau, Alaska, d/b/a Bartlett Regional Hospital ("Bartlett"), moved for summary judgment on its second amended

complaint. At docket 48, defendants ("CMS") opposed Bartlett's motion and requested summary judgment in favor of defendants. Bartlett filed a reply in support of its motion. CMS did not file a reply in support of the cross-motion. After an initial examination of the motion papers, the court asked for more briefing on the question of Bartlett's standing which was subsequently filed and has been considered.[1]

Oral argument was not requested on either motion.

## II. BACKGROUND

The State of Alaska elected to participate in the federal Medicaid program and adopted a state medical services plan which was approved by CMS.[2] Bartlett operates a hospital in Juneau, Alaska. From time to time Bartlett seeks payment from the State for services rendered to individuals covered by Medicaid, including outpatient hospital services. Calculation of amounts to be paid for Outpatient Hospital Services are addressed on page 5 of Attachment 4.19B of the Alaska State Plan ("Page 5"). In the Second Amended Complaint, Bartlett asks the court to declare unlawful and set aside CMS' retroactive approval of a new version of Page 5, which ostensibly became effective on January 1, 2001,[3] and which set out a different method for calculating amounts to be paid for Outpatient Hospital Services. Bartlett asserts that if the new version of Page 5 were set aside, it could demand and receive additional payments pursuant to an earlier version of Page 5 in the amount of approximately $400,000.[4]

---

[1]The order is found at doc. 60, Bartlett's response is at doc. 61, and CMS' response is at doc. 62.

[2]The Medicaid Act, 42 U.S.C. §§ 1396, *et seq.*, provides for the appropriation of funds to those states which have adopted medical assistance plans that have been approved by the Secretary of the Department of Health and Human Services. The Secretary has delegated authority to approve state plans to the several regional Centers for Medicare and Medicaid Services. Region 10 includes Alaska.

[3]Doc. 39 at p.18.

[4]*Id.* at p. 8.

In the Second Amended Complaint, Bartlett sets out a single claim for relief based on the following alleged violation of the Administrative Procedure Act ("APA"):

> In retroactively approving Page 5 of Attachment 4.19-B as part of SPA 01-002 when (a) the same was never submitted in approvable form by Alaska Medicaid, (b) the same was withdrawn from consideration by Alaska Medicaid when it submitted a substitute SPA 01-002 to Region 10, (c) Region 10 had to recognize an email submission as an official communication when Region 10 had a long-standing policy of not accepting email submissions as official communications, and (d) Alaska Medicaid failed to comply with the public notice requirements set forth in 42 C.F.R. § 447.205 and failed to provide assurances to Region 10 regarding the same in accordance with 42 C.R.R. § 447.253(h), Defendants have acted arbitrarily and capriciously, abused their discretion, and acted contrary to law, within the meaning of 5 U.S.C. §§ 706(2)(A) and 706(2)(D).[5]

From the briefing, it emerges that this claim is predicated on CMS' alleged violation of 42 U.S.C. § 1396a(b). It follows that the court may exercise subject matter jurisdiction over this litigation pursuant to 28 U.S.C. § 1331.

The original administrative record was filed at docket 32. Bartlett moved to augment the record.[6] The unopposed motion was granted by Judge Singleton, to whom this case was originally assigned.[7] The augmentation to the administrative record was provided with the motion at docket 42. The Administrative Record before the court consists of the documents provided by the parties at dockets 32 and 42.[8]

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted when there is no genuine dispute about material facts and when the moving

---

[5] Doc. 39 at p. 17.

[6] Doc. 42.

[7] Doc. 47.

[8] The documents at doc. 32 consist of pages numbered 1 thru 77. The documents at doc. 42 consist of "Attachment 1" and pages numbered 100 thru 155. Citations in this order to the Administrative Record will use the abbreviation "AR" followed by a reference to a page number or to Attachment 1.

party is entitled to judgment as a matter of law. The moving party has the burden to show that material facts are not genuinely disputed.[9] Ordinarily, when reviewing an administrative agency's decision under the APA, a court's task is limited to ascertaining whether or not the evidence in the administrative record supports the decision made by the agency.[10] A court will set aside decisions which are "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."[11] Courts employ a deferential standard of review which assumes that the agency's action is valid provided there is a reasonable basis for that action.[12]

## IV. DISCUSSION

### A. Bartlett Has Standing

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."[13] The Supreme Court has "interpreted [the APA] to impose a prudential standing requirement," besides the case or controversy requirement established by Article III of the Constitution.[14] Initially unsure whether Bartlett's claim met the prudential standing requirement, the court solicited further briefing on that topic. The court now turns to consideration of Bartlett's standing.

The Supreme Court pointed out in *Bennett v. Spear* that, "[t]he question of standing 'involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'"[15] The constitutional limitations are imposed by

---

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[10] *Occidental Engineering Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir. 1985).

[11] 5 U.S.C. § 706(2)(A).

[12] *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000).

[13] 5 U.S.C. § 702.

[14] *Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998) (citing *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152 (1970)).

[15] 520 U.S. 154, 162 (1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Article III, which requires that there be a "case" or "controversy,"[16] which is not disputed in the case at bar. The prudential limitation in this case requires that Bartlett's claim arguably must fall within the zone of interests protected or regulated by the statutory provision whose violation is the gravamen of the claim."[17] CMS contends that Bartlett's claim does not.

The zone of interest limitation is not a highly restrictive one. The Supreme Court has explained that it does not require a specific expression of Congressional intent to provide a benefit to those in a plaintiff's position. Rather, it is enough if the plaintiff has an interest which is a type of interest arguably protected by the law in question.[18]

Bartlett says that its claim is within the zone of interest of 42 U.S.C. § 1396a(b) governing the approval of State plans, a provision which it alleges that CMS violated.[19] Section 1396a(b) states that the Secretary (whose authority has been delegated to CMS) "shall approve any plan which fulfills the conditions specified in subsection (a) of this section."[20] Assuming, as is reasonable, that by negative implication the statutory command to approve plans which comply with subsection (a) requires the Secretary to disapprove plans that do not comply with subsection (a), Bartlett complains that the amendment to the Alaska plan which changed Page 5 "failed to comply with §1396a(a)(13)(A) which provides that reimbursement rates must occur through a 'public process' that includes prior publication of the proposed rates and their underlying methodologies and justifications and a reasonable opportunity for all interested

---

[16] *Id.* CMS has not argued that Bartlett lacks Article III standing; rather the argument is over prudential standing. Doc. 48, pp. 19 through 23.

[17] *Bennett*, 520 U.S. at 162.

[18] *National Credit Union Administration v. First National Bank & Trust Co.*, 522 U.S. 479, 491-92 (1998).

[19] Doc. 61 at p. 2. Bartlett also asserts that its claim falls within the zone of interest associated with 42 U.S.C. § 1316a(1) requiring CMS to act on State plan amendments within 90 days. The court's resolution of the prudential standing issue with respect to 42 U.S.C. § 1396a(b) makes consideration of § 1316(a)(1) unnecessary.

[20] 42 U.S.C. § 1396a(b) does include an exception prohibiting approval of plans which contain any of three identified requirements, but none are pertinent to the case at bar.

residents of the State, including specifically **providers**, to review and comment upon the same."[21] An amendment to a plan, like the plan as a whole, is subject to review under the APA for compliance with applicable statutory requirements.[22]

In *Independent Acceptance Co. v. California*,[23] providers of long-term health care who participated in the California Medicaid program challenged the federal government's approval of several amendments to California's medical service plan. The appellate court did not explicitly consider whether the providers had standing under the prudential standing limitation. Rather, the Ninth Circuit proceeded directly to consider whether there had been a failure to comply with the regulations which implemented 42 U.S.C. § 1396a(a)13 as it existed prior to repeal of the Boren Amendment[24] which set out criteria related to how states were to set rates of reimbursement. Current § 1396a(a)13 establishes requirements for an appropriate public process to be used when states set reimbursement rates which replaces the more complex statement of criteria in the older version of the statute. In *Independent Acceptance Co.*, the providers asked the court to consider whether federal approval of state plan amendments was consistent with regulations related to statutory directives governing the establishment of rates of reimbursement; here, the provider asks this court to consider whether federal approval of a state plan amendment was consistent with regulations related to specified statutory criteria requiring a public process by which rates of reimbursement are to be determined. The difference in the underlying statutory language does not sufficiently distinguish what the Ninth Circuit did in *Independent Acceptance Co.*, from what Bartlett asks this court to do here. As was the case (albeit implicit and not expressly stated) for the providers in *Independent Acceptance Co.*,

---

[21]Doc. 61 at p. 3 (bold emphasis in original).

[22]*Independent Acceptance Co. v. California*, 204 F.3d 1247 (9th Cir. 2000).

[23]*Id.*

[24]The Boren Amendment which provided an earlier version of subsection § 1396a(a)(13) was repealed by the Balanced Budget Act of 1997. *Independent Acceptance Co.* at 204 F.3d 1249, n.3.

Bartlett's claim falls within the zone of interest associated with the statute said to have been violated.

**B. Merits**

The portion of Page 5 pertinent to the case at bar is the provision setting payment methods and standards for Outpatient Hospital Services. As it appeared prior to the approval of the state plan amendment ("SPA"), which is the subject of Bartlett's complaint, the provision read as shown at AR 104 which was included in TN No. 98-011 approved July 30, 1998, and effective April 1, 1998. The revised version of the Outpatient Hospital Services provision to which Bartlett objects is at AR 74. It purports to have been included in TN No. 01-002, approved June 29, 2001, and effective January 1, 2001.

Bartlett argues that in approving the SPA that put the new version of Page 5 into effect, CMS failed to comply with the requirements of 42 C.F.R. § 447.253 (2005). In order to secure approval for an SPA, the state medicaid agency must "make assurances satisfactory to CMS that the requirements set forth in paragraphs (b) through (l) of this section are being met . . . ."[25] Subsection (h) requires that public notice of proposed changes be given as specified in § 447.205. Bartlett contends that CMS did not require any assurance of compliance with the public notice requirement. CMS responds that § 447.205 does not apply, because "[t]he only services mentioned in subsections (b) through (l) are inpatient hospital services, nursing facility services, and changes in ownership of hospitals and certain other entities."[26] CMS' argument would make sense only if paragraph (h) were itself limited to those services. It is not. Instead of referencing the other paragraphs of § 447.253, it references § 447.205 which encompasses "methods and standards for setting payment services." There is no limitation on the term "services" as it is used there. Section 447.253(h) does apply to outpatient services.

---

[25] 42 C.F.R. § 447.253(a).

[26] Doc. 48 at p. 11.

-7-

CMS' next line of defense is that Bartlett did not appeal the decision to approve the SPA which included the new version of Page 5 pursuant to 42 C.F.R., Ch. IV, Subpart D. This argument falls wide of the mark. The appeal process contemplated by the regulations is a process available for states to appeal a disapproval of an SPA.[27] Bartlett, not being a state medicaid agency, has no access to that process.

CMS also contends that Bartlett has and is pursing an adequate remedy against the State of Alaska by asking Alaska to pay Bartlett the amount that would be due under the original version of Page 5. This argument is a red herring. The issue before this court is what version of Page 5 was in force for the relevant period of time, not what amount of money Bartlett is entitled to be paid when the correct version of Page 5 is considered. It is this court, not the State of Alaska, which has jurisdiction to entertain Bartlett's claim that CMS violated federal law when it approved the newer version of Page 5.

Finally, CMS' briefing marches through the convoluted history of communications between Alaska's Medicaid agency and CMS with respect to the SPA in question, ostensibly to show that CMS did everything that it needed to do, despite the woeful state of confusion evident in the Alaska Medicaid agency's communications.[28] However, nowhere in that discourse, nor anywhere in the Administrative Record can the court find any evidence that Alaska gave CMS any assurance of any kind that it complied with the public notice provisions of 42 C.F.R. § 447.205. To be sure, if Alaska had given some assurance, this court would necessarily give great weight to a determination by CMS that the assurance was adequate. However, where CMS was required to receive some sort of assurance that the public process required by law had in fact taken place, and there is utterly nothing to show that there was any public process, it is clear that CMS' action in approving the new version of Page 5 was arbitrary, capricious, and not in accordance with 42 U.S.C. §§ 1396a(b) and

---

[27]42 C.F.R. § 430.60 (2005). *See also* 42 C.F.R. § 430.3 (2005).

[28]Doc. 48 at pp. 12-18.

Case 3:04-cv-00152-JWS   Document 63   Filed 09/15/06   Page 8 of 9

1396a(a)(13)(A) and 42 C.F.R. § 447.205. That being so, this court is required to hold that approval unlawful and to set it aside.[29]

Bartlett has raised arguments in addition to its principal argument addressed above. Given the resolution of the principal argument, it unnecessary to consider Bartlett's other arguments.

## V. CONCLUSION

For the reasons set out above, plaintiff's motion for summary judgment at docket 43 is **GRANTED,** and defendants' motion for summary judgment at docket 48 is **DENIED**.

Plaintiff is directed to promptly lodge a proposed form of judgment for the court's consideration.

DATED at Anchorage, Alaska, this 15th day of September 2006.

                                                      /s/
                              JOHN W. SEDWICK
                 UNITED STATES DISTRICT JUDGE

---

[29] 5 U.S.C. § 706(2).