DAVID W. MÁRQUEZ
ATTORNEY GENERAL
Susan Daniels
Assistant Attorney General
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5178
Fax: (907) 258-4978
Susan_Daniels@law.state.ak.us

Attorney for the State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CITY and BOROUGH OF JUNEAU, ALASKA, d/b/a BARTLETT REGIONAL HOSPITAL, <br><br> Plaintiff, <br> vs. <br><br> CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES OF AMERICA; R.J. RUFF, in his official capacity as REGIONAL ADMINISTRATOR OF REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; and KAREN S. O'CONNOR, in her official capacity as ASSOCIATE REGIONAL ADMINISTRATOR, DIVISION OF MEDICAID & CHILDREN'S HEALTH, REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, <br><br> Defendants. | Case No. 3:04-cv-152 JWS <br><br> STATE OF ALASKA'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE AS A DEFENDANT |

## I.  INTRODUCTION

The State of Alaska ("State") moves to intervene in this action under Federal Rule of Civil Procedure 24(a)(2), or, in the alternative, under Rule 24(b)(2). The State moves to participate in this action because the court's September 15, 2006 decision [Docket 63] is premised upon an incorrect understanding of actions by the State of Alaska's Department of Health and Social Services, Division of Medical Assistance. Bartlett Hospital filed this action against a federal regulator attacking Alaska's system for setting Medicaid rates. The consequences of invalidating the State's rate setting system are enormous and would have a direct impact on the State's ability to obtain appropriate federal funding for the payment for medical services under the Medicaid plan.

Bartlett Hospital is a provider of Medicaid services for which it is reimbursed under Alaska's State Plan. It seeks here to invalidate that plan, presumably to increase the rates at which the State reimburses it for services. Invalidation of an important part of the plan puts the validity of the entire plan at risk.

Bartlett's challenge proceeded before this court which determined that notice was deficient because, "nowhere in the administrative record can the court find any evidence that Alaska gave CMS any assurance that it complied with the public notice provisions of 42 C.F.R. § 447.205." It appears that the court's concern is whether notice was given of the methodology for setting the rate as well as notice of the rate itself.

Intervention by the State will allow the State to supplement the record with the documents proving the State complied with all state and federal notice requirements for enacting its methodology via State regulation and for setting the actual rates. If allowed to supplement the record, the State would submit the following Exhibits:

A. December 10, 1997 letter from Department of Health and Human Services allowing the state to use its customary regulatory process to meet the notice requirements of notice under 42 C.F.R. § 447.205.

B. Notice of Proposed Change in Regulations dated 7/17/2000 and 8/18/2000.

C. Public Notice of the June 25, 2001 Medicaid Meeting. , published June 16 and 17, 2001.

D. June 19, 2001 letter from Bartlett Hospital re: proposed rates.

E. Agenda of the Medicaid Rate Advisory Commission Meeting showing Bartlett representative participation.

F. Minutes of the June 25, 2001 Medicaid Rate Advisory Commission Meeting showing Bartlett representative participation.

G. July 2, 2001 letter from CMS inquiring as to public notice under 42 CFR 447.205.

H. State's response (assurance) dated August 30, 2001 that public notice was published and hearings were held.

I.  Alaska Lieutenant Governor's November 30, 2000 Adoption Order of regulations.

J.  Affidavits of Publication of Proposed Regulations (proposed regulations were published). July 19 and 20, 2000, and again on August 22 and 23, 2000.

K.  August 17, 2000 letter from Bartlett Hospital regarding proposed regulations.

The corrected record will establish that the State properly adopted its regulations and State Plan setting forth its reimbursement system in compliance with all federal notice requirements. The State also properly noticed and adopted its actual rates. Maintaining the current State Plan will avoid that chaos that may ensue if the State's Medicaid reimbursement system is invalidated.

The decision of this court turns on the assumed deficiency of the public notice provided and the assurances given; the State is able to provide the necessary proof through documentation of notices and assurances, therefore, the State's Motion to Intervene to supplement the record with documentary proof that notices were given and assurances were provided should be granted to avoid a gross injustice.

Moreover, what happened here illustrates the importance of the limitations in 42 U.S.C. § 1396a against allowing private parties to have standing to invalidate the state plan. Intervention will also bring the State's perspective to the argument of Centers for

Medicare and Medicaid Services (CMS) that 42 U.S.C. 1396(a) does not allow causes of action by private parties.

### *Relevant Facts*

The State adhered to procedures set forth in the Alaska in the Alaska Administrative Procedures Act, AS 44.62. The Alaska APA requires public notice, hearings and comment periods. AS 44.62.190, AS 44.62.200, and AS 44.62.210. Once the regulations were adopted, the State incorporated the new regulations into its State Plan. The use of the state regulatory process to formulate the methodology for setting rates was approved by the Federal Department of Health and Human Services, as shown in Exhibit A. Under this policy, states are allowed to use their same notices to enact regulations on which the plan was based and are not required to hold duplicative proceedings. Thus, the methodology for rate setting is contained in the regulations adopted on November 30, 2000.

When the State set its prospective rates at issue here, based on the newly adopted regulations, it again provided public notice and a comment period along with public hearings required under 42 U.S.C. § 1396(a)(13)(A). Exhibit C. It notified all providers by publication of notice in newspapers around the state on June 16 and 17, 2001. *Id*. Although Bartlett Hospital has apparently claimed it did not receive notice, Exhibit D is Bartlett Hospital's response to its own rate notice. Bartlett appears on the agenda of the Medicaid Rate Advisory Commission Meeting of June 25, 2001 at item g.

Exhibit E.  The minutes of that meeting show that Bartlett Hospital availed itself of the public process in the rate setting hearings.  Exhibit F.

On July 2, 2001 CMS sought comment and feedback from the State on the public notice, (Exhibit G), and Exhibit H, the State's response to this request shows that the regulations were published in Anchorage, Juneau and Fairbanks on July 19 and 20, 2000, and that public hearings on the proposed regulations were held on August 18, 2000. Exhibit H.

## II.    ARGUMENT

### A.    The State of Alaska is Entitled to Intervene as a Matter of Right Under Rule 24(a).

The State of Alaska is entitled to intervention as of right under Rule 24(a) of the Federal Rules of Civil Procedure.  Rule 24(a) provides that, upon timely application, an applicant "shall be permitted to intervene" in an action

> [w]hen the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

The Ninth Circuit applies a four-part test to determine whether a party may intervene as of right:  1) the motion must be timely; 2) the movant must claim a "significant protectible" interest relating to the property or transaction which is the subject of the action; 3) the movant must be so situated that the disposition of the action

may, as a practical matter, impair or impede the movant's ability to protect that interest; and 4) the movant's interest must not be adequately represented by the existing parties. *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir.1999). The Ninth Circuit liberally construes the rule in favor of allowing intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). The State meets these requirements and thus should be allowed to intervene as a matter of right.

    1.    <u>The Motion is Timely</u>.

The timeliness of a motion to intervene is evaluated in light of three factors: the length of, and the reason for, any delay; the stage of the proceedings; and the prejudice that the existing parties will suffer if the motion is granted. *U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). The primary consideration is prejudice to the existing parties. *Nissei Sangyo America, Ltd. v. U.S.*, 31 F.3d 435, 439 (7th Cir. 1994). Prejudice is central because the purpose of requiring timely application is not to punish the intervener, but rather to protect the existing parties from prejudice. *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994); *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073-74 (5th Cir. 1970).

The inquiry into timeliness goes beyond merely counting the number of days since a suit was filed. When no prejudice would result, federal courts have permitted intervention very late in the proceedings. *See Yniguez v. State of Arizona*, 939 F.2d 727 (9th Cir. 1991) where the court allowed post-judgment intervention in order

to facilitate appeal; In *Pellegrino v. Nesbitt*, 203 F.2d 463 (9th Cir. 1953) post-judgment intervention was granted in order to facilitate an appeal. "Federal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Espy*, 18 F.3d at 1205, (quoting *McDonald*, 430 F.2d at 1074). Here, the State should be allowed to intervene so that the court's misperception of the facts can be corrected and a potential injustice can be prevented.

The State's motion to intervene in this case is timely. Because the court has not issued a final judgment there is an opportunity for the State to intervene to supplement the record and correct erroneous findings. The minor delay in considering the documents crucial to the court's decision will not prejudice Bartlett or CMS. Issuing a correct decision will avoid protracted collateral attacks on the court's judgment. Since the court has already afforded Bartlett significant latitude in filing three complaints, a minor delay to accommodate the State should be afforded. More importantly, because the State can easily show through supplemental documents that it did follow the notice requirements of 42d CFR § 447.205 it should be allowed to intervene as a matter of right.

2. <u>The State of Alaska Has a Significant Protectible Interest at Stake in this Action.</u>

The State has a substantial interest at stake in this litigation. The invalidation of the State Plan will obviously have a heavy impact on the State's ability to enforce its process and procedure of setting prospective rates under validly enacted regulations, but the financial uncertainty of the invalidation of this State plan could also

be significant. Bartlett Hospital is claiming that it will be entitled to an additional $400,000 per year as a result of the court's decision. *See*, Bartlett Hospital's Second Amended Complaint. While the State disputes this assertion, it may take years of litigation to resolve that issue alone. The invalidation of the State Plan could potentially invalidate Medicaid funding for the services set forth in the State Plan, a matter of vital interest to the state and a responsibility committed solely to the state under state law. The interest of the State in the outcome of this litigation is, therefore, "of sufficient magnitude to warrant the State's inclusion in the action." *Smith v. Pangilinan*, 651 F.2d 1320, 1324 (9th Cir. 1981).

To be sufficient to support intervention a movant's asserted interest must be "protectible" under some law, and there must be a relationship between the protected interest and the claims at issue. *City of Los Angeles*, 288 F.3d at 398. The State's interest is its participation in the Medicaid Program. To receive Medicaid funding, the State's plan must be approved. The State has relied upon CMS approval of its plan and set rates in accordance with that Plan. Alaska's interest in obtaining federal funding for the State's Medicaid program is unquestionably protectible.

There can be no question that the state's protectible interest in enforcing its statutes and regulations in order to obtain federal funding for its Medicaid program is directly related to the subject matter of this proceeding. Invalidation of the State Plan will lead to uncertainty and chaos with regard to the ramifications of the State's ability to

fund services it previously provided when setting the rates for health care facilities throughout Alaska.

      3.    <u>Disposition of This Action May Impair or Impede the State's Ability to Protect Its Interest.</u>

If the court's September 15, 2006 decision is allowed to stand, the state may lose appropriate federal funding for reimbursement for hospital outpatient services and may be required to recalculate rates for the years in question.  This potential loss of funding or the requirement to pay one provider a rate different for the rate set for other providers will certainly impede the State's ability to protect its interests in both time, funds and additional litigation that arises as a result of this decision.  The State should not be punished by the loss of funding or be required to reset any facility's rates through implementation of a court decision rendered without participation of the State; especially when, as here, it has complied with all notice requirements under state and federal law.

      4.    <u>The Existing Parties Do Not Adequately Represent Alaska's Interests.</u>

The State's interests are not represented by the existing parties.  Obviously, Bartlett's interests are directly adverse to the State's.  But CMS does not adequately represent the State's interests either.  Although both CMS and the state want the State's plan to remain intact, the State alone will have to deal with the direct consequences of the potential invalidation of the state plan.  While the full impact of invalidation can only be

imagined, it is sure to require significant expenditures of time and money in terms of litigation and could jeopardize the State's federal funding.

The rule is that if an applicant meets the other conditions of timeliness and impairment of interest, intervention shall be permitted "unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). According to the United States Supreme Court, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). The Court must consider whether the interests of the existing parties are such that they will undoubtedly make all the intervener's arguments, and whether the intervener would offer any necessary element to the proceedings that other parties would neglect. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995).

Obviously, neither Bartlett Hospital nor CMS share the State's interest in protecting its sovereign rights and responsibilities from usurpation by private parties. Neither Bartlett nor CMS are in a position to make all of the State's arguments and the State will bring a necessary element, the factual record showing how it adopted prospective rates that the other parties have neglected.

The State's Motion to Intervene as of right is timely; it establishes that the State has a protectible interest in the subject matter of the action and that this interest may

be impaired by the disposition of the action, and it demonstrates that the existing parties do not adequately represent the State's interest. The State's motion to intervene in this action as of right should be granted.

### B. In the Alternative, the State of Should Be Allowed to Intervene Permissively Under Rule 24(b).

If the Court determines that the State is not entitled to intervene as a matter of right, the State should be allowed permissive intervention under Fed. R. Civ. P. 24(b). Rule 24(b) states in part:

> Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency . . . the officer or agency upon timely application may be permitted to intervene in the action.

### *Common Questions of Law and Fact*[1]

The State's defense contains common questions of law and fact with the main action in that the court's decision is based on the misperception that notice provisions for implementation and approval of a state plan were not followed. The State should be allowed to provide the documentation necessary to show that all state and federal notice requirements have been met and therefore invalidation of the State Plan on the grounds asserted by the court would be a miscarriage of justice.

---

[1] The first element of timeliness of the State's motion has already been discussed.

An additional factor to be considered in ruling on a request for permissive intervention is whether the movant would contribute to a fuller development or understanding of the facts or legal issues. *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191-92 (2d Cir. 1978). The State will provide documents showing that it did comply with federal regulations in question regarding notice and assurances. This alone should aid the court in understanding the true facts of this case.

The State meets the requirements for permissive intervention under Fed. R. Civ. P. 24(b). Its defense shares common questions of fact and law with the main action; it is a governmental entity responsible for administering the statutes and regulations promulgated in furtherance of Alaska's participation in the Medicaid program, its participation would not unduly expand the controversy or otherwise lead to improvident delay or expense, and its participation would contribute to a fuller development or understanding of the facts and legal issues. Therefore, in the event that the court does not grant the State the right to intervene as a matter of right, the State respectfully requests leave to intervene permissively.

**C.     Intervention is also Important to Allow the State's Input on the Question of Bartlett's Standing.**

Intervention is also important to permit the State to be heard on the question of whether the Bartlett has standing to maintain this action through a private cause of action challenging CMS approval of the State Plan. Several courts have previously held there is no such private right of action. *See e.g., Long Term Care*

*Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir. 2004). This decision disallows a provider's claim for injunctive relief and states:

> Subsection (30) (A) presents the same concern. The criteria (avoiding overuse, efficiency, quality of care, geographic equality) are highly general and potentially in tension. And read literally, the statute does not make these directly applicable to individual state decisions; rather state plans are to provide "methods and procedures" to achieve these general ends. 42d U.S.C. § 1396(a)(30)(A)(2000). Thus the generality of the goals and the structure for implementing them suggests that plan review by the Secretary is the central means of enforcement intended by Congress.

*Id.* at 60. Likewise, in *Sanchez v. Johnson*, 416 F.3d 1051 (9th Cir. 2005), the Ninth Circuit followed *Long Term Care* on the standing issue and disallowed injunctive relief , a 1983 claim and an ADA claim. "In contrast to the language of Title VI and Title IX, there is nothing in the text of § 30(A) that unmistakably focuses on recipients or providers as individuals. Moreover, the flexible, administrative standards embodied in the statute do not reflect a Congressional intent to provide a private remedy for their violation." *Id.* at 1060.

An action was brought by a provider under 28 U.S.C. § 1331, in combination with the APA 5 U.S.C. § 702. *Trustees of the Masonic Hall v. Leavitt*, NDNY, 5:84-CV-991 (HGM, June 7, 2006). That action challenges the Secretary's discretion under 1396(c), however, the same lack of jurisdiction applies under 1396(a). There the court determined that the Secretary's discretion is not reviewable:

> The federal question statute, 28 U.S.C. § 1331, in combination with the APA provides for judicial review of Federal administrative

actions. *See Lunney v. United States*, 319 F.3d 550, 557-558 (2dCir.2003). The APA provides that "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This provision waives sovereign immunity in actions for relief other than money damages against officials action in their official capacity concerning "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA's waiver of sovereign immunity, however, is not unlimited. Judicial review of agency action under the APA is unavailable where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

. . .

An agency action "is committed to agency discretion by law" when the agency's enabling statute provides no standard for the agency to follow when awarding funds. To that end, "judicial review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct 1649, 1655, 84 L.Ed. 2d 714 (1985). The second Circuit explained agency discretion as follows:

As the Supreme Court said in *Barlow v. Collins*, 397 U.S. 159,166-167, 90 S.Ct.832,837-38, 25 L.Ed.2d 192(1972), judicial review is the rule and preclusion under 701(a)(1) and (2) the exception,: but if clear and convincing evidence can be shown that Congress intended to make an agency action unreviewable, then the courts are without jurisdiction.

. . .

If the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter, finds (1) that the

> plan has been so changed that it no longer complies with the provision of section 1396(a) of this title; or (2) that in the administration of the plan there is a failure to comply substantially with any such provision; the Secretary shall notify such State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan no t affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply.
>
> . . .
>
> The statute does not require the Secretary to make periodic determinations and invests discretion in the secretary to determine a state's "substantial compliance." Moreover, the statute contains neither a provision by which a private party may force a decision concerning compliance nor a provision authorizing a citizen to seek court review of a compliance decision. *See St. Louis Univ. v. Blue Cross Hosp. Serv*., 537 F.2d 282, 289-290 (8th Cir.1976). . . . The wording and structure of 42 U.S.C. § 1396c indicate that Congress intended to invest in the Secretary unreviewable discretion as to whether to make a compliance determination. Plaintiffs do not fall within the purview of § 702 of the APA's waiver of sovereign immunity and cannot avail themselves of the APA's waiver of sovereign immunity. The Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 and the APA.

Moreover, there is ample evidence that Congressional intent in repealing the Boren Amendment in 1997 was to curtail providers' private causes of action. In *Evergreen Presbyterian Ministries v. Hood*, 235 F.3d 908, 919 (5th Cir. 2000), the court provides this history at fn. 12

> One of the primary purposes for passing the Boren Amendment was to provide states with flexibility in setting reimbursement rates and thereby reduce Medicaid costs. *See, Wilder*, 496 U.S. at 505-06,11 S.Ct. 2510. However, because of the litigation that was generated after the Boren Amendment's enactment, Congress recognized that the Amendment had the

opposite effect on Medicaid costs than it had intended. *See,* 141 CONG. REC. S18693 (1995) (statement of Sen. Roth) ("The Boren amendment…has been used to actually bid the price of nursing home care up higher."). Accordingly, with the continued rise in Medicaid costs, Congress' intent in repealing the Boren Amendment was "to provide States with greater flexibility in setting provider reimbursement rates under the Medicaid Program." 143 Cong. Rec. S4000 (1997) (statement of Sen. Hutchison).

Congress replaced the Boren Amendment with the more limited requirement that states provide for a public notice-and-comment process in their reimbursement ratemaking decisions. *See,* 42 U.S.C. § 1396a(a)(13)(A) (2000). Again according to the legislative history, Congress intended to free the states from federal regulation and increased rates and to eliminate a basis for causes of action by providers to challenge reimbursement rates. *See,* H.R. Rep. No. 105-149, at 1230 (1997). "A number of Federal courts have ruled that State systems failed to meet the test of "reasonableness' and some States have had to increase payments to these providers as a result of these judicial interpretations."); *see also id*. ("It is the Committee's intention that, following the enactment of [the Balanced Budget Act of 1997], neither this nor any other provision of [1396a] will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of the rates they receive.")

The court then provides a thorough analysis of the new notice requirements, which Alaska meets. These courts have all correctly concluded that following the repeal of the Boren Amendment in 1997, providers no longer have a private right of action under 42 U.S.C. § 1396a.

### III.   CONCLUSION

For the reasons stated above, the State of Alaska respectfully requests that the court grant its motion to intervene as of right under Rule 24(a)(2). In the alternative,

the State requests leave to intervene permissively pursuant to Rule 24(b)(2). Because the court does not have adequate proof in the record to show that the State complied with all notice requirements under the Alaska APA as well as 42 CFR § 447.205, and the State can easily provide this documentation and because the State bears the direct consequences of this court's decision if allowed to stand, Alaska's participation in this matter is crucial. Further, the State asserts that Bartlett has no standing to bring this action and requests leave to participate in the briefing of the standing issue.

Dated: 10/6/2006

  /s/     Susan L. Daniels

DAVID W. MÁRQUEZ
ATTORNEY GENERAL
By:  Susan L. Daniels
Assistant Attorney General
ABA No. 8306029
1031 W. 4th Avenue, Ste. 200
Anchorage, Alaska 99501
Phone: (907) 269-5178
Fax: (907) 258-4978
E-mail: Susan_Daniels@law.state.ak.us

**CERTIFICATE OF SERVICE**

It is hereby certified that on this 6th day of October, 2006, a true and correct copy of the foregoing document, the State of Alaska's Memorandum in Support of Motion to Intervene as a Defendant was served via electronic mail on the following parties:

   Stephen D. Rose, Esq.

*Bartlett Hospital v Centers of Medicare, et.al.*                                                       3:04-cv-152-JKS
Memo in Support of Motion to Intervene

      srose@prestongates.com
      lynney@prestongates.com

Daniel R. Cooper, Jr., Esq.
    daniel.cooper@usjoj.gov
    joy.mcculloch@uskoj.gov
    usaak.ecf@usdoj.gov


  /s/   Keri Hile
Keri Hile, Law Office Assistant
Attorney General's Office