Honorable  John W. Sedwick

1

2  Stephen D. Rose
   Dawn R. Kreysar
3  Preston Gates & Ellis LLP
4  925 Fourth Avenue, Suite 2900
   Seattle, Washington 98104
5  (206) 623-7580 (phone)
   (206) 623-7022 (fax)
6  srose@prestongates.com

7

8

9

10

11          IN THE UNITED STATES DISTRICT COURT

12            FOR THE DISTRICT OF ALASKA

13  CITY AND BOROUGH OF JUNEAU,
    ALASKA d/b/a BARTLETT REGIONAL      No.    3:04-cv-00152 JWS
14  HOSPITAL,
                                         PLAINTIFF'S OPPOSITION TO THE
15          Plaintiff,                   STATE OF ALASKA'S MOTION TO
                                         INTERVENE
16      v.

17   CENTERS FOR MEDICARE AND
    MEDICAID SERVICES, REGION TEN *et*
18  *al.*,

19          Defendants.

20

21              **I.  INTRODUCTION**

22        After sitting on the sidelines for the previous two-and-a-half years while Bartlett and

23  CMS litigated this action all the way to judgment, the State of Alaska ("State") now seeks to

24  intervene under Rule 24 of the Federal Rules of Civil Procedure.  However, the State makes

25  only feeble and unconvincing efforts to satisfy the applicable legal standards for intervention.

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Indeed, the State makes no effort whatsoever to explain or justify why it waited so long to express its desire to participate in a case it has known about since inception.

Rather than demonstrating how it satisfies the applicable Ninth Circuit tests for intervention under Rule 24, the State instead tries to distract the Court with several purportedly relevant documents that it would like to add to the record, many of which were already in the possession of defendant, CMS. The State argues that if it is allowed to intervene, these additional documents will serve to correct the Court's allegedly erroneous understandings of the facts and law. The State also claims to have new and unique viewpoints that it would like to share with the Court regarding Bartlett's standing. The State's motion to intervene is really nothing more than a thinly veiled motion for reconsideration by a non-party who knowingly elected to stay out of the fray and who, until now, was content to let CMS defend the approval of the State Plan Amendment at issue. The State's motion should be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The State's motion to intervene omits a number of key background facts. This litigation arose from an underlying state administrative hearing that took place on March 18, 2003.[1]  At that hearing, it became apparent that the State and Bartlett were relying on different versions of the Alaska state plan. The State believed that the state plan relied on by Bartlett was out-of-date and did not reflect State Plan Amendment TN #01-002. The hearing examiner presiding over the state administrative action stopped the proceedings and stayed the hearing pending resolution of which version of the state plan was controlling—the one

---

[1] The actual administrative hearing took place on March 18, 2003. The administrative appeal

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

with TN #01-002, or the one without.  The Order Granting Stay was issued by Hearing

Examiner Patricia Huna-Jines on April 12, 2005.  (*See* Exhibit 1 attached to the Rose

affidavit, Exhibit A).  The Order Granting Stay specifically notes that the Hearing Examiner

reviewed a copy of the Complaint filed in this case and references this case by caption and

case number.  (Exhibit 1 to Rose affidavit, Exhibit A).   Bartlett initiated this federal action

against CMS in July of  2004, challenging CMS's retroactive approval of State Plan

Amendment TN #01-002.

The State was fully aware of the pendency of this action from the time it was

commenced in July of 2004, and was reminded in April of 2005 that the state administrative

hearing was being stayed so that the federal district court could rule on whether CMS

committed error by retroactively approving State Plan Amendment 01-002.  The case number

of this federal action was explicitly referenced in the state administrative agency's stay order.

(Exhibit 1 to Rose affidavit, Exhibit A)  Additionally, the State was subpoenaed by CMS to

appear for deposition.   CMS deposed the Alaska Medicaid State Plan Coordinator on August

24, 2005.  (*See* Rose affidavit at ¶3, Exhibit A and Exhibit 2).  An Alaska Assistant Attorney

General was present at that deposition.  *Id.*

Subsequently, as the Court will recall, Bartlett and CMS briefed and argued the issue

of Bartlett's standing to pursue its APA claims against CMS, and on September 15, 2006, the

Court ruled not only that Bartlett met the requirements of prudential standing, but also that it

was entitled to summary judgment.  CMS filed a request for reconsideration of the September

15th Order on October 4, 2006.  The State filed its motion to intervene 2 days later on October

_____

was filed in 2002.  *See* Rose affidavit at ¶2, Exhibit A.

_____

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    6, 2006.

2

3

4

5

6

7

8

9

### III.  ARGUMENT AND AUTHORITIES

**A.    THE STATE'S MOTION TO INTERVENE AS A MATTER OF RIGHT SHOULD BE DENIED BECAUSE IT WAS NOT TIMELY FILED AND BECAUSE THE STATE'S INTERESTS ARE WELL REPRESENTED BY CMS.**

10   The State has moved to intervene as a matter of right under Rule 24(a).  The Ninth

11   Circuit has established a four-prong test that proposed intervenors must meet in order to

12   establish their right to intervene:  (1) the motion must be timely; (2) the movant must have a

13   significant, protectable interest related to the litigation; (3) the movant must be situated such

14   that disposition of the litigation may, as a practical matter, impair the movant's protectable

15   interests; and (4) the movant's interests must be inadequately represented by the existing

16   parties.  *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.

17   1997) (hereinafter, "*LULAC*").  The burden lies with the proposed intervenor to establish all

18   four of these prongs.  *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

19   Here, the State cannot satisfy either the timeliness or the inadequacy of representation prongs.

20

21        **1.    The State's Post-Summary Judgment Motion to Intervene Is Not Timely.**

22   On numerous occasions, the Ninth Circuit has affirmed a district court's denial of

23   intervention as a matter of right due to substantial delay in seeking to intervene—particularly

24   if the delay is unexplained.  Four recent cases are both controlling and highly analogous:

25

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   *LULAC*, 131 F.3d 1297 (9th Cir. 1997) (affirming denial of motion to intervene filed 27

2   months after commencement of litigation, where district court had already held substantive

3   hearings, ruled on a motion to dismiss, and granted partial summary judgment); *Smith v.*

4   *Marsh*, 194 F.3d 1045 (9th Cir. 1999) (affirming denial of intervention as of right, where

5   proposed intervenors offered no explanation for their 15-month delay in filing motion to

6   intervene, and trial court had already engaged substantive issues, held discovery hearings, and

7   ruled on the parties' summary judgment motions); *United States v. Alisal Water Corp.*, 370

8   F.3d 915 (9th Cir. 2004) (affirming denial of motion to intervene for untimeliness, where

9   intervenor waited four years to bring motion and summary judgment and trial were only a

10  week away); and *County of Orange v. Air California*, 799 F.2d 535 (9th Cir. 1986) (denying

11  intervention after parties had negotiated full settlement of the claims, and proposed intervenor

12  had no excuse for delay in light of well-publicized settlement negotiations).  Tellingly, the

13  State cites older and inapposite cases from other circuits, and neglects to address these closely

14  on-point Ninth Circuit authorities.[2]

15

16

17          As these cases demonstrate, "Timeliness is the threshold requirement for intervention

18  as of right." *LULAC*, 131 F.3d at 1302.  If the Court finds that the State's motion to intervene

19  was untimely, it need not reach any of the other elements of Rule 24(a).  *Id.*  Courts in the

20  Ninth Circuit determine whether a motion to intervene is timely by considering three factors:

21  (1) the stage of the proceeding at which the movant seeks to intervene; (2) the prejudice to

22  other parties; and (3) the reason for and length of the delay in seeking to intervene.  *LULAC*,

23

24  _____

25  [2] One of the few Ninth Circuit cases that the State does cite on the timeliness issue—
    *Yniguez v. Arizona*, 939 F.2d 727 (9th Cir. 1991)—is of no precedential value because it was

26  later vacated by the Supreme Court, albeit under a different name.  *See Arizonans for Official*

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

131 F.3d at 1302; *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999).  District Courts have

broad discretion in determining whether a motion to intervene should be denied as untimely.

*See Smith*, 194 F.3d at 1049 ("[A] district court's determination of the timeliness of a motion

to intervene is reviewed for abuse of discretion."); *Alisal Water Corp.*, 370 F.3d at 918-19

("The question of whether the motion [to intervene as of right] was timely filed is reviewed

for abuse of discretion").  "Any substantial lapse in time weighs heavily against intervention."

*LULAC*, 131 F.3d at 1302.

### a.     The State's Motion Comes at a Very Advanced Stage of the Litigation.

The State's motion to intervene could hardly come any later in the proceedings.  The

case has been pending for over two-and-a-half <u>years</u> and the court has already granted

complete summary judgment to Bartlett.  *Compare Smith*, 194 F.3d at 1050-51 (district court

did not abuse discretion in concluding that the advanced stage of litigation weighed against

intervention, where pleadings had been served and amended, a plaintiff's class had been

partially certified, and summary judgment rulings had been entered); *LULAC*, 131 F.3d at

1303 (27 months after actions were originally filed, district court had already issued TRO and

preliminary injunction, certified a class, and granted partial summary judgment).  The extent

to which this Court already has substantively engaged the issues in this case and rendered

dispositive rulings weighs heavily against allowing intervention as of right under Rule

24(a)(2).  *Id.* at 1303.  The court in LULAC stated it well:  A lot of water has already passed

*English v. Arizona*, 520 U.S. 43, 117 S. Ct. 1055 (1997).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   under this litigation bridge.  *Id.*

2                    **b.        Intervention Would Cause Substantial Prejudice to Bartlett.**

3           Bartlett would be prejudiced by having to re-litigate issues already briefed and decided

4   by the Court—namely, the issues of Bartlett's standing and the validity of CMS's approval of

5   the State Plan Amendment.  But the prejudice would not stop there.  The State has clearly

6   stated its intention to interject new issues and evidence into the case.  The State has attached

7   numerous additional documents that it believes the Court should (re)consider concerning the

8   approval of the State Plan Amendment.  Moreover, the State has expressly declared that it has

9   unique views on Bartlett's standing, which it intends to present if allowed to intervene.  And

10  the State apparently wants the Court to address and confirm the State's compliance with its

11  own state law based notice requirements.  The prejudice caused by insertion of such new

12  issues and reconsideration of old ones, especially at this late date, weigh heavily against the

13  State's right to intervene.  *Smith*, 194 F.3d at 1051 (introducing additional issues that would

14  widen the scope of the litigation would cause undue delay and prejudice); *LULAC*, 131 F.3d

15  at 1304 (finding prejudice would result from addition of proposed intervenor, which would

16  only prolong the litigation at a time when it was beginning to wind down).

17          Furthermore, the State's intervention would only result in prolonging Bartlett's state

18  administrative agency proceedings.  Bartlett filed its state administrative appeal in 2002.  That

19  action has been stayed pending the resolution of this case.  Allowing the state to intervene in

20  this case at this late hour will only cause the state administrative proceeding, which has been

21  pending for four years, to be extended**.**  *Compare Alisal,* 370 F.3d at 922-23 (denying

22  intervention where it would further delay plaintiff's pursuit of remedies through litigation,

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 7 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

which has already lasted over four years).

### c.    Most Importantly, the State Offers No Excuse for Its Two Year Delay.

Nowhere in the State's discussion of the timeliness prong (*see* Doc. 70 at 7-8) does it address the most obvious question:  Why did the State wait until now to try to intervene?  This silence from the State is fatal.  *See LULAC*, 131 F.3d at 1304 ("Even more damaging . . . is [the proposed intervenor's] failure to adequately explain—either in its original motion to the district court [or on appeal] the *reason* for its delay.") (emphasis in original).

Courts are especially skeptical of late intervention where—as is the case here—the proposed intervenor has known about the potential risks to its interests since the inception of the litigation but failed to take action to protect them.  *See id.* at 1304-05 (prospect that its interests could be adversely affected was known to intervenor since "the day the litigation surrounding Proposition 187 commenced").  The State has been on notice that the validity of its State Plan Amendment TN #01-002 was at risk since the moment this lawsuit was filed by Bartlett.

Specifically, while the State was a party in a state administrative hearing dating back to 2002 when Bartlett filed its state administrative appeal and certainly by March of 2003 when the administrative hearing was held, the State knew that Bartlett had serious questions about whether State Plan Amendment TN #01-002 had been properly approved and that Bartlett intended to litigate these concerns in federal court.  In fact, that state administrative proceeding was stayed  for the express purpose of allowing the parties to resolve the outstanding question of what the controlling the state plan actually was.  Bartlett filed this

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 8 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

federal court action, challenging CMS's approval of State Plan Amendment TN #01-002.  The State knew of Bartlett's action against CMS, and it was explicitly referenced in the Alaska agency's stay order.   Moreover, the State was served with a notice of deposition in connection with this case, and on August 24, 2005, Michelle Lyons-Brown, the Alaska Medicaid State Plan Coordinator, was deposed by CMS.  As part of that deposition, Ms. Lyons-Brown provided CMS with numerous exhibits and related testimony.  An Alaska Assistant Attorney General attended that deposition and represented Ms. Lyons-Brown.  (*See* Rose affidavit at ¶3, Exhibit A).

Since then, the State had ample opportunity to provide CMS whatever documentation it thought was relevant, and could have sought to intervene at anytime.  Having had a full opportunity early on in the litigation to provide documents and/or to seek intervention, the State should not be allowed to do so now that the Court has already considered the substantive issues and rendered its judgment.

The State cannot explain its failure to seek intervention anytime in the past two-and-a-half years, so the State instead focuses on its reasons for wanting to intervene now:

- "because the [C]ourt's September 15, 2006 decision is premised upon an incorrect understanding of actions by the State" (Doc. 70 at 2);

- "to supplement the record with documents proving the State complied with all state and federal notice requirements" (*id.* at 3);

- to correct "the [C]ourt's misperception of the facts" (*id.* at 8);

- and "to avoid gross injustice" and "chaos that may ensue" (*id.* at 4).[3]

_____

[3] The State's repeated references to the "chaos" that it predicts might ensue is surely

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

None of these reasons for wanting to intervene establishes the State's right to intervene. Rule 24(a) says nothing about supplementing the record or correcting mistakes purportedly made by the district court earlier in the litigation. The State simply has not met and cannot meet the Ninth Circuit's test for timeliness under Rule 24. The State's motion should be denied.

### 2.   **The State's Interests Were Well-Represented and Vigorously Advocated by CMS.**

If the proposed interevenor's interests are adequately represented by an existing party to the lawsuit, there is no right of intervention under Rule 24(a). *Arakaki v. Cayetano*, 324 F.3d 1078, 1088 (9th Cir. 2003).

The State argues that CMS does not adequately represent the State's interests (*see* Doc. 70 at 10), but the State does not raise any legal arguments that have not been advanced by CMS prior to the Court's September 15, 2006 Order (or in CMS's motion to reconsider). Most significantly, the State admits that it and CMS share the same objective: "**both CMS and the state want the plan to remain intact.**" (*Id.* at 10.) Under well-settled Ninth Circuit precedent, "[w]here an applicant for intervention and an existing party 'have the same *ultimate objective*, a presumption of adequacy of representation arises.'" *LULAC*, 131 F.3d at 1305 (quoting from other cases; alterations in original). In *LULAC*, the Ninth Circuit held that the California governor and attorney general's vigorous defense of Proposition 187 left little doubt that they would protect the proposed intervenor's asserted interests in upholding

---

hyperbole, as is the State's repeated mischaracterization of Bartlett's claim. Bartlett is not seeking to invalidate the entire Alaska State Plan, just CMS's approval of an amendment that did not comply with the standards imposed by federal law or CMS's own rules and regulations. The State of Alaska has had State Plan Amendments invalidated in the past and none of the "chaos" the State now predicts occurred as a result. *See, e.g., State of Alaska, Department of Health and Social Services et al., v. Alaska State Hospital & Nursing Home Association,* 856 P.2d 755 (Alaska 1993).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the act, and as such, there was no right to intervene.  *See id.* at 1305-06.

The State cannot show inadequate representation merely by claiming that it would have relied on different or additional documents or arguments.  CMS, through its counsel in the United States Attorney's office, vigorously defended its conduct in approving the State Plan Amendment at issue and aggressively challenged Bartlett's right to pursue its APA claim.  The State does not gain a right of intervention merely by pointing to a few documents that it thinks would have been helpful to the cause.  *See Arakaki*, 324 F.3d at 1086 ("Where parties share the same ultimate objective, differences in litigation strategy do not normally justify intervention."); *LULAC*, 131 F.3d at 1306 (where there is no substantive disagreement between existing party and proposed intervenor, a difference of opinion on litigation strategy or tactics will not support intervention).

Nor can the State make the required "compelling showing" of inadequate representation by claiming that it has sovereign rights or would suffer "consequences" different from that which CMS would experience if the Court's September 15th summary judgment stands.  *See Arakaki*, 324 F.3d at 1086 ("compelling showing" required to rebut presumption of adequate representation where ultimate objectives are shared).  The State argues that it needs to protect its sovereign rights and responsibilities from usurpation.  (Doc. 70 at 11.)  But that interest is best served by seeking to vindicate the validity of the State Plan Amendment—which is exactly what CMS has tried to do here.  Likewise, the harm that the State alleges might befall to its public fisc (which Bartlett believes the State has greatly exaggerated) is best avoided by seeking to preserve the State Plan Amendment.  Whether the State and CMS have different consequences to live with is immaterial, so long as their

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 11 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

interests in the litigation are aligned. *See Oregon Env. Council v. Ore. Dept. of Env. Quality*, 775 F. Supp. 2d 353 (differing motives to litigate do not mean that an existing party is an inadequate representative of the putative intervenor's interests). Because the State has not shown any legal claims or objectives that were not advanced by CMS, it cannot establish inadequate representation.

**B.    THE STATE'S MOTION FOR PERMISSIVE INTERVENTION SHOULD BE DENIED BECAUSE IT WAS UNTIMELY, AND BECAUSE THE STATE IS MERELY SEEKING TO REOPEN MATTERS ALREADY DECIDED.**

Federal Rule of Civil Procedure 24(b) governs a party's request to intervene permissively. *LULAC*, 131 F.3d 1308. There are three prerequisites for intervening under Rule 24(b), two of which are relevant here: (1) the motion must be timely, and (2) the proposed intervenor's claim must share common questions of law or fact with the main action. *Id.* "The decision to deny permissive intervention is directed to the sound discretion of the district court." *Southern Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002).

**1.    The State Cannot Meet the Timeliness Prong of the Standard for Permissive Intervention.**

As with motions for intervention as a matter of right under Rule 24(a), a finding of untimeliness will also defeat a motion for permissive intervention under Rule 24(b). *LULAC*, 131 F.3d at 1308. In determining timeliness under Rule 24(a), courts in the Ninth Circuit consider the same three factors discussed above: the stage of the proceedings, prejudice to existing parties, and the length of and reason for the delay. *Id.* However, the analysis is more rigorous under Rule 24(b). *Id.* Therefore, because the State failed the requirement of timeliness under Rule 24(a), its motion to intervene must also fail under Rule 24(b). *Id. See*

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*also County of Orange*, 799 F.2d at 539.

2.   **A Motion to Intervene—Whether as a Matter of Right or Permission—Is Not an Appropriate Vehicle for Seeking Reconsideration of the Court's September 15, 2006 Summary Judgment Ruling.**

At its essence, the State's motion to intervene is really a disguised motion for reconsideration. This is evident both from the State's stated purposes for seeking intervention and from what the State says it intends to do if allowed to intervene. The State is not pursing any claims against Bartlett, nor is it seeking to assert different or additional legal theories than those advanced by CMS. As noted, the State merely desires to intervene to supplement the record with additional documents and to "correct" the Court's alleged misunderstandings of the facts and law. (*See* Doc. 70 at 4, 8.) As discussed above, these purposes do not satisfy the requirements of Rule 24.

Aside from offering new documents (a number of which were readily available to CMS or even created by CMS) and purported factual clarifications if allowed to intervene, the State also intends to offer its perspective on Bartlett's standing to pursue this action. (*See* Doc. 70 at 4-5 ("Intervention will also bring the State's perspective to the argument of [CMS] that 42 U.S.C. 1396[a](a) does not allow causes of action by private parties.")). The true nature of the State's motion as a plea for reconsideration of the Court's September 15, 2006 Order is nowhere more evident than here. The Court conclusively resolved the issue of Bartlett's standing under the APA in its September 15th Order.[4] The Court need not allow the

---

[4] Although not material to whether the State should be allowed to intervene at this late stage of the litigation, it is worth pausing to correct another point of error introduced by the State. Bartlett's claim in this case, as the Court will recall, is premised on a violation of the APA— that is, CMS's arbitrary and capricious approval of an Alaska State Plan Amendment in violation of 42 U.S.C. § 1396a(b) and CMS regulations. The State's discussion of the repeal of the Boren Amendment (*see* Doc. 70 at 13-17) is therefore inapposite, as the repeal merely

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 13 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

State to intervene merely to replow the same ground covered by CMS.  Further, and more

fundamentally, if the State believed CMS was not adequately arguing those issues, the time to

intervene was then, not now.[5]  The State's mere desire to re-argue those issues does not

satisfy the applicable standards for intervention.

**C.    IN ANY EVENT, THE DOCUMENTS ATTACHED TO THE STATE'S MOTION ARE IMMATERIAL, AND THE STATE HAS NO NEW ARGUMENTS FOR THE COURT TO CONSIDER.**

Finally, although not necessary to resolution of the State's motion, it is worth pausing

briefly to address the merits of the State's "new" documents and arguments.  Even if the State

were allowed to intervene and "supplement" the record, none of the documents it proposes to

introduce are relevant to whether CMS arbitrarily and capriciously approved a State Plan

Amendment without the necessary assurances and in violation of federal law and CMS's own

rules and regulations.  None of the documents attached to the State's motion reflects

assurances given by the State to CMS regarding State Plan Amendment TN # 01-002.  The

closest the State gets to submitting pertinent information is Exhibit H, which it claims is an

"assurance" to CMS.  However, a closer reading of Exhibit H, reveals that it is an "assurance"

for TN # 01-003, **not** 01-002.  *See* Exhibit H at 1 ("The State of Alaska submitted state plan

amendment (SPA) transmittal number (TN) 01-003 effective for the period beginning January

1, 2001.")  When one reads Exhibit H, it is clear that it concerns Amendments to the Alaska

State Plan that are separate and distinct from the ones addressed in this case and in TN # 01-

---

affected a private party's ability to pursue challenges to state reimbursement rates directly under the Medicaid statutes (*e.g.*, section 1396a).  The Boren Amendment and its repeal in no way affect a private party's APA remedies against CMS for approving state plan amendments in a manner that is arbitrary and capricious or contrary to law.

[5] CMS filed its first motion to dismiss in July of 2005, well over a year ago.

---

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

002.

Many of the State's other exhibits purport to show that the State gave proper notice under the State Administrative Procedures Act regarding changes in State regulations. These documents are similarly irrelevant to Bartlett's claims against CMS and would provide no basis for revising the Court's summary judgment order. Whether the State complied with its own duties under State law is not before this Court. The Court ruled that "nowhere in the administrative record can the court find any evidence that Alaska gave CMS any assurance that it complied with the public notice provisions of 42 C.F.R. § 447.205." Nothing in any of the exhibits included with the State's motion to intervene addresses this glaring deficiency or corrects it. Without it, CMS approval of TN # 01-002 was arbitrary and capricious and contrary to law, and the State's effort to reopen that finding with immaterial "evidence" is pointless.[6]

---

[6] The State additionally cites to their Exhibit A, claiming that it somehow gives instructions that the State does not have to comply with the requirements of 42 C.F.R. §447.205 and §447.253. The State's reliance on this document is misplaced. Assuming *arguendo* that CMS could override validly promulgated federal regulations via letter issued to State Medicaid Directors, in relying on this letter in the instant case, the State fails to distinguish between institutional reimbursement and non-institutional reimbursement. Exhibit A is unambiguous that it applies to the **institutional** payment rate setting process. ("However, we recognize that the intent in repealing the Boren Amendment was to reduce HCFA's role in the **institutional** payment rate setting process . . . ." Exhibit A at p. 1 of 3. "As a result of the repeal of the Boren Amendment, many of the Federal requirements related to the state plan amendment process for **institutional** reimbursement state plan amendments have been eliminated . . . ." Exhibit A at p. 2 of 3  Exhibit A at p. 2 of 3. (Emphasis added)). The State Plan Amendment at issue here is under Section 4.19-B. Section 4.19-B addresses **non**-institutional payment rate setting methodologies. Michelle Lyons-Brown, Medicaid State Plan Coordinator for the State of Alaska testified at her deposition for this case that Section 4.19-A of the State Plan addresses **institutional** reimbursement and Section 4.19-B addresses **non**-institutional reimbursement:

        Q (by AUSA Cooper):  Before we go down that rabbit track, you

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Other exhibits attached to the State's motion likewise have no bearing on this case or

2  State Plan Amendment TN # 01-002.  For example, the State directs the court to Exhibit G to

3  prove that the State complied with all of its public notice requirements.  The problem is that

4  Exhibit G, like Exhibit H, concerns the **wrong** State Plan Amendment.  Exhibit G states in the

5  very first sentence:

6

7    We have reviewed Alaska state plan amendment (SPA) transmittal
       number (TN) 01-003 which effective January 1, 2001, introduces a

8    new reimbursement methodology (Basic Prospective Payment Rate
       Methodology) for inpatient acute hospitals not subject to the

9    Optional Prospective Payment Rate Methodology for Small
       Facilities of the New Facility Prospective Payment Rate

10   Methodology.

11  Exhibit G at 1.  At issue in this litigation, however, is State Plan Amendment #01-002

12  (concerning "Outpatient Hospital Services"), not #01-003 (concerning Basic Prospective

13  Payment Rate methodologies for inpatient acute hospitals).  Whether the State gave proper

14  notice or even gave assurances regarding State Plan Amendment 01-003 is wholly irrelevant

15  to this case.  Allowing the State to intervene to explain the steps it took with respect to State

16  Plan Amendment 01-003 would be a waste of everyone's time.

17

18    The State also argues that since Bartlett received notice that its Medicaid rates were

19

20    mentioned a 4.19-B.  What is a 4.19-B?
           A (by State Plan Coordinator):  It covers all methodologies for

21    noninstitutional reimbursements.
           Q:  And a 4.19-A?

22    A:  Is for institutional reimbursements.

23  Dep. Lyons-Brown, at p. 23, ll. 14-19.  Exhibit A is not applicable to this case.  In addition to
    the reasons already stated, it is important to note that at the time that CMS (then HCFA)

24  issued Exhibit A, CMS was in the process of considering whether to repeal 42 C.F.R.
    §447.205 and §447.253.  After proposing to repeal these regulations, CMS ultimately decided

25  not to repeal them, but rather to leave them in place even though the Boren Amendment had

26  been repealed.  66 Fed. Reg. 25471 (May 14, 2001).

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

going to be set, that notice somehow equates to or replaces the assurance that the State was required to give CMS as part of its State Plan Amendment submittal.[7]  Once again, the State confuses requirements under federal and state law.  The issue in this case is not whether the State gave notice of its rate setting hearing.  The issue is whether CMS acted properly in retroactively approving State Plan Amendment TN # 01-002.

To make matters worse, the State repeatedly distorts Bartlett's challenge to CMS's approval of a State Plan Amendment as a challenge to the adequacy of Medicaid **rates,** which Bartlett fully acknowledges are not reviewable in this Court.  This case is **not** a challenge to Alaska's system for setting Medicaid rates nor can it be properly characterized as a rate challenge.  It is a challenge to **CMS's** arbitrary and capricious decision to approve a State Plan Amendment in violation of federal statutes and CMS's own rules and regulations.

The State claims that all that is required of it in order to comply with Exhibit A is to

---

[7] As part of its briefing, the State makes the reckless and unsubstantiated assertion that Bartlett has represented to the Court that it did not receive notice of its rate hearing before the Medicaid Rate Advisory Commission.  (Doc. 70 at 5.)  Bartlett has **never** represented to this Court that it did not receive notice of its rate setting hearing before the State Medicaid Rate Advisory Commission.  Obviously Bartlett did receive notice of that Commission hearing because Bartlett appealed that **rate** setting decision as part of the State appellate process.  Bartlett has always been very clear that its claim was that the State failed to submit an approvable State Plan Amendment to CMS.  The State Plan Amendment submitted for TN # 01-002 was not approvable because:  (1) the State never gave the proper assurances to CMS; and (2) the HCFA Form 179 that the State filed with CMS as part of the State Plan Amendment was not signed, erroneously stated that the changes being requested were to address "revision of Disproportionate Share Calculations" when no such revisions were in fact requested, and moreover, did not identify what pages were to be superseded by the State Plan Amendment.  Further, once the State figured out all of the errors with its original submission, the State approved very specific "pen and ink" changes to the HCFA-179 and gave instructions to CMS that TN # 01-002 amended only pages 2 and 10 of Attachment 4.19-B.  The page at issue in this case, however, is page 5, not pages 2 or 10.  AR 68-73.

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 17 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

comply with the State regulatory process to formulate a methodology for setting payment rates. Doc. 70 at p. 5. Thus, according to the State, once the methodology for ratesetting is contained in the regulations, its job is done. Exhibit A says otherwise.

The State meets the public notice requirements of 42 C.F.R. §447.205 only if the "States publish their proposed rates, methodologies underlying the establishment of such rates, and justifications for the proposed rates *prior to the effective date of new amendments."* (emphasis added) Exhibit A, at p. 3. Comparing this standard to the State's notices, it is clear that for the time period *prior to* the effective date of State Plan Amendment TN # 01-002, which was January 1, 2001, Bartlett was not advised of its proposed rate. As late as August 17, 2000, Bartlett was notifying the State Medicaid agency that as of the date of that letter "it is unclear what or even for sure how we would be paid under the new system." Exhibit K, at p. 1.[8] Further, up until June 27, 2001, the State was claiming on its HCFA-179 that the "justification" for the proposed changes in methodology was to bring the State Plan into conformance with recent changes in federal law concerning Disproportionate Share Calculations.[9]

If one reviews the various notices that the State claims cure this problem, it becomes quite clear that none of them do. Keeping in mind that the State Plan Amendment at issue in this case concerns Outpatient Hospital Services, the notice the State wants to rely on that was

---

[8] The above argument is equally applicable to the notices contained in the State's Exhibits I and J.

[9] On June 28, 2001, the State authorized "pen & ink" changes that stated that the justification for the changes being proposed was to bring the State Plan into conformity with BIPA. AR 68. It was at this time that the State withdrew any consideration of page 5 of State Plan Amendment TN # 01-002,which is logical since page 5 has nothing to do with BIPA requirements.

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 18 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   issued on July 17, 2000 and reissued on August 18, 2000, states:

2      Notice is given that the State of Alaska, Department of Health and Social
3      Services, to improve and streamline the hospital and long-term care facility
       methods, standards, and processes for setting payment rates, to extend the
4      current methodology for calculating payment rates for outpatient surgical
       centers, and rural health clinics, and to establish payment rates for critical
5      access hospitals based on costs, proposes to amend, repeal and readopt
       regulations in Title 7 of the Alaska Administrative Code dealing with Alaska's
6      medical assistance rates . . .

7

8   Exhibit B at pp. 1 and 3.[10]

9      There is nothing in this notice that advises Bartlett that the State is proposing to alter

10  its Outpatient Hospital Services payments.  The provision that comes closest is the statement

11  that the State intends to "extend the current methodology" for outpatient surgical centers.

12  There is nothing that advises Bartlett of its proposed rates.  There is nothing that advises

13  Bartlett of the justification for the proposed rates.  At this time the State's listed reason for a

14  State Plan change was, if anything, to bring itself into compliance with Disproportionate

15  Share Calculations.

16

17     The next notice cited by the State is Exhibit C and states that there will be an informal

18  rate hearing for Bartlett.  This notice states that it was published in mid-June of 2001, about

19  six months *after* the purported effective date of TN # 01-002.  Therefore, on its face, this

20  notice cannot meet the requirement listed in Exhibit A that the notice be given "prior to the

21  effective date of the new amendments."  Exhibit A, at  p. 3.  This notice does advise the

22

23

24  [10] Bartlett does not believe that the reference to "outpatient surgical centers" refers to page 5,
    or Outpatient Hospital Services.  However, even if it does apply it fails to give proper notice
25  since the notice does not advise of a change in rate setting methodologies but refers to
    "extending the current methodology."
26

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 19 of 22                                    PRESTON GATES & ELLIS LLP
                                                    925 FOURTH AVENUE
                                                        SUITE 2900
                                              SEATTLE, WASHINGTON  98104-1158
                                                 TELEPHONE: (206) 623-7580
                                                 FACSIMILE: (206) 623-7022

person reading it that a public hearing will be held ". . . regarding the proposed regulations to amend 7 AAC 43.687 which deals with Alaska Medicaid additional payments as a disproportionate share hospital."  If the State supplied this notice to show the Court that they complied with the notice requirements, their reliance is grossly misplaced.  Apparently the State was reading off of the HCFA-179 form originally submitted with State Plan Amendment for TN # 01-002, that states that the "subject of [the State Plan] Amendment" is "Revision of Disproportionate Share Calculations."  AR 08.  Eventually the State Medicaid Program realized that State Plan Amendment TN # 01-002 had absolutely nothing to do with Disproportionate Share Calculations.  On June 29, 2001, the State of Alaska wrote to CMS and authorized "pen & ink" changes to the HCFA-179.  AR 73.  In its letter to CMS, the State of Alaska authorized CMS to change the subject of the amendment to "Implements Provisions of BIPA Section 702" and struck the language "Revision of Disproportionate Share Calculations."  AR 72.[11]

A careful reading of Exhibit H makes clear that it does not address State Plan Amendment 01-002.  Further, none of the discussion in the letter concerns "outpatient hospital services."  The discussion in the letter addresses many other proposed amendments to the State Plan but none of which are at issue here.  Whether the State gave proper notice or even gave assurances regarding State Plan Amendment 01-003 is wholly irrelevant to this case.  Allowing the State to intervene to explain the steps it took with respect to State Plan

---

[11] It should be noted that the "pen & ink" changes to State Plan Amendment TN # 01-002, to notify the public that this State Plan Amendment did not concern Disproportionate Share Calculations occurred on or after June 28, 2001, after all of the notices provided by the State had been issued (June 16 and 17, 2001), and after Bartlett was notified of its informal rate hearing (sometime prior to June 18, 2001), and after such hearing (June 25, 2001) for FY 2002.

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 20 of 22

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Amendment 01-003 would be a waste of everyone's time.

2                                    **CONCLUSION**

3          In its original decision the Court noted "the woeful state of confusion evident in the

4    Alaska Medicaid agency's communications."  The State's motion to intervene and

5    "supporting" exhibits underscore the Court's finding.  Most, if not all, of the exhibits

6    submitted by the State have nothing to do with this case or State Plan Amendment TN # 01-

7    002.  Further, the State has had over two years either to supply the documents to CMS's

8    attorneys for CMS to use, or to seek to intervene and to raise the issues itself.  The State

9    declined to avail itself of either option until after the Court granted summary judgment to

10   Bartlett.  This case should not be pushed back to square one just because the State chose not

11   to act for the last two-and-a-half years.

12

13         DATED this 23rd day of October, 2006.

14

15                                           PRESTON GATES & ELLIS LLP

16

17                                           By: /s/ Stephen D. Rose
                                             Stephen D. Rose, ABA #8901002
18                                           925 Fourth Avenue, Suite 2900
                                             Seattle, WA 98104
19                                           Phone: (206) 623-7580
                                             Fax: (206) 623-7022
20                                           Email: srose@prestongates.com
                                             Attorney for Plaintiff
21                                           Bartlett Regional Hospital

22

23   I hereby certify that on October 23, 2006,
     copies of the foregoing were served
24   electronically on:

25

26

_____

PLAINTIFF'S OPPOSITION TO THE STATE OF ALASKA'S MOTION TO INTERVENE
Case No. 3:04-cv-00152 JWS
Page 21 of 22
                                             PRESTON GATES & ELLIS LLP
                                             925 FOURTH AVENUE
                                             SUITE 2900
                                             SEATTLE, WASHINGTON  98104-1158
                                             TELEPHONE: (206) 623-7580
                                             FACSIMILE: (206) 623-7022

1   Susan Daniels,
    Asst. Attorney General, State of Alaska
2   Susan_Daniels@law.state.ak.us

3   Daniel R. Cooper, Jr.
    Asst. U.S. Attorney
4   daniel.cooper@usdoj.gov

5
    /s/ Stephen D. Rose
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022