DAVID W. MÁRQUEZ
ATTORNEY GENERAL
Susan Daniels
Assistant Attorney General
Office of the Attorney General
1031 W. Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5178
Fax: (907) 258-4978
Susan_Daniels@law.state.ak.us

Attorney for the State of Alaska

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| CITY and BOROUGH OF JUNEAU, ALASKA, d/b/a BARTLETT REGIONAL HOSPITAL, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:04-cv-152 JWS |
| vs. | ) ) | STATE OF ALASKA'S REPLY TO BARTLETT'S OPPOSITION |
| CENTERS FOR MEDICARE AND MEDICAID SERVICES, REGION 10; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; UNITED STATES OF AMERICA; R.J. RUFF, in his official capacity as REGIONAL ADMINISTRATOR OF REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES; and KAREN S. O'CONNOR, in her official capacity as ASSOCIATE REGIONAL ADMINISTRATOR, DIVISION OF MEDICAID & CHILDREN'S HEALTH, REGION 10 FOR THE CENTERS FOR MEDICARE AND MEDICAID SERVICES, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | TO MOTION TO INTERVENE |
| Defendants. | ) | |

## INTRODUCTION

The State of Alaska ("State") Moved for Leave to Intervene as a defendant in this action when it determined that the existing parties would no longer protect its interests. The State first realized that the existing parties would no longer protect its interest when the court issued its decision on September 15, 2006. The State filed its motion to intervene on October 6, 2006.

Bartlett Hospital opposed the motion, primarily on the grounds that the motion to intervene was untimely and would cause a delay that would prejudice Bartlett.

While Bartlett may have been litigating in federal court for two and a half years, its Complaints were correctly dismissed outright twice on the standing issue. It was not until December 12, 2005 (less than a year ago) that Bartlett filed a Complaint that was not dismissed outright. The third Complaint filed by Bartlett should have fallen in the same category given the legislative history specifically stating that the intent of the repeal of the Boren Amendment was to eliminate the basis for causes of action by providers. *See, Evergreen Presbyterian Ministries, Inc. v. Hood*, 235 F.3d 908, 919 n.12 (5th Cir. 2000). It was not. However, standing was not determined until September 15, 2006.

In addition to citing delay as its prejudice, Bartlett also claims prejudice because the State is attempting to raise new issues. *See,* Bartlett Opp at p.7. This

assertion is false and the falseness of the assertion is realized by Bartlett at page 14 of its Opposition when it states:

> "IN ANY EVENT, THE DOCUMENTS ATTACHED TO THE STATE'S MOTION ARE IMMATERIAL AND THE STATE HAS NO NEW ARGUMENTS FOR THE COURT TO CONSIDER."

Therefore, Bartlett does not itself believe the State is attempting to bring in new issues and the State agrees that it is not bringing in new issues.

Finally, Bartlett argues that CMS is doing a fine job of representing the State's interests in this matter. The State has pointed out the inherent differences in the State's interests and perspective from the federal interest in this matter as has CMS. *See,* CMS Nonopposition to State's Motion to Intervene. Neither CMS nor the State believe CMS can adequately represent the State's interests in this matter.

## ARGUMENT

**A.   The State's Motion to Intervene is Timely**

As stated in earlier briefing, the Ninth Circuit has adopted a four prong test to determine if intervention is appropriate.  1) the motion must be timely; 2) the movant must claim a "significant protectable" interest relating to the property or transaction which is the subject of the action; 3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and 4) the movant's interest must not be adequately represented by the

existing parties. *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir.1999). The Ninth Circuit liberally construes the rule in favor of allowing intervention. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003), *cert. denied*, 540 US 1017, 124 S.Ct. 510, 157 L.Ed. 2d. 430 (2003).

Bartlett does not contest the State's argument that it has a protectable interest or that the disposition of this matter will impede the State's ability to protect that interest. Rather, Bartlett complains that the State's motion is untimely and the State has not given a good reason for the delay in moving to intervene.

The reason the State did not intervene earlier is that the State believed the third Complaint filed by Bartlett would realize the same fate as its previous Complaints. The State could have filed duplicative pleadings with CMS on the standing issue but that did not appear to be necessary. It was not until the court issued its September 15, 2006 order granting Bartlett standing and granting summary judgment in favor of Bartlett that the State's interest became different from CMS because it was then that it became apparent that the State's actions were the focus of the court's decision. It was not until the court stated, "However, nowhere … in the administrative record can the court find any evidence that Alaska gave CMS any assurance of any kind that it complied with the public notice provisions of 42 C.F.R § 447.205" that the State became aware that its interests could not be adequately protected by the existing parties.

*Bartlett Hospital v. Centers for Medicare, et.al*.                    3:04-cv-152-JWS
Reply to Opp. to Motion to Intervene

When it considers whether a Motion to Intervene is timely, the Ninth Circuit has held that it is not the date the intervenor learned of the litigation that matters, it is the date the intervenor became aware that its interests would no longer be protected adequately by the existing parties. *United States v. State of Washington*, 86 F.3d 1499 (9th Cir., 1996).

Now that the court has decided the standing issue in Bartlett's favor and has decided the merits of the case on summary judgment on facts the State disputes, the State asserts that it should be heard on these issues. The State moved to intervene on October 6, 2006, three weeks after the court's decision on standing and summary judgment and therefore this motion is timely. Even if the court declines to allow intervention to presently participate in this matter, the State's motion is timely for purposes of facilitating an appeal.

B.   **Alleged Prejudice to Bartlett**

Bartlett complains that it will be prejudiced by the delay involved in allowing the State to intervene because the State is bringing up new issues. The State is not bringing in new issues, and at page 14 of its Opposition Bartlett realizes itself that the State is not bringing up new issues.

The issues the State wishes to be heard on are the two primary issues that have been present in this action from the outset: 1) does Bartlett have standing, and 2)

was the State required to provide assurances, considering that that § 253 does not apply to outpatient services.

Bartlett sees its prejudice as further briefing as well as further delay, both in the present action as well as its administrative appeal which Bartlett stayed over the State's objection. If Bartlett has already briefed the same issue the State would address, its prejudice is deminimus.

If the prejudice to Bartlett is further delay, Bartlett's own role in the delay should be considered. First, the time of delay should not include the time that Bartlett's Complaints were dismissed for failure to state a claim. The third Complaint was filed in December 2005, rather than the two and a half years Bartlett claims the State delayed. Secondly, if Bartlett is complaining of the delay caused by the stay of its administrative hearing, Bartlett also needs to inform the court that the administrative hearing was stayed over the state's objection. Bartlett owns that delay, the State does not.

**C.   Motion to Intervene to Show There is a Dispute of Material Fact is Appropriate.**

The court's September 15, 2006 order states: "However, nowhere … in the administrative record can the court find any evidence that Alaska gave CMS any assurance of any kind that it complied with the public notice provisions of 42 C.F.R § 447.205." The court's misunderstanding of the requirements of § 205 are understandable when Bartlett continually states that Alaska was required to provide assurances and the plan could not be approved without assurances.

Alaska did not provide CMS an assurance that it complied with public notice provisions of 42 C.F.R § 447.205 because § 205 does not require the State to provide assurances, it requires the State to provide notice.[1]

The required public process is set forth in Section 205.

> **§ 447.205 Public notice of changes in Statewide methods and standards for setting payment rates.**
>
> (a) When notice is required.  Except as specified in paragraph (b) of this section, the agency must provide public notice of any significant proposed change in its methods and standards for setting payment rates for services.
>
> (b) When notice is not required.  Notice is not required if--

---

[1] When CMS asked the State to provide assurance that public notice had been given, the State provided those assurances. That was the purpose of submitting Exhibit G and H:  to show that when CMS, in its discretion, requested assurrances, the State gave them.

*Bartlett Hospital v. Centers for Medicare, et.al.*                                    3:04-cv-152-JWS
Reply to Opp. to Motion to Intervene

7

(1) The change is being made to conform to Medicare methods or levels of reimbursement;

(2) The change is required by court order; or

(3) The change is based on changes in wholesalers' or manufacturers' prices of drugs or materials, if the agency's reimbursement system is based on material cost plus a professional fee.

(c) Content of notice. The notice must--

(1) Describe the proposed change in methods and standards;

(2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;

(3) Explain why the agency is changing its methods and standards;

(4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review;

(5) Give an address where written comments may be sent and reviewed by the public; and

(6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

(d) Publication of notice. The notice must--

(1) Be published before the proposed effective date of the change; and

(2) Appear as a public announcement in one of the following publications;

(i) A State register similar to the FEDERAL REGISTER.

>  (ii) The newspaper of widest circulation in each city with a population of 50,000 or more.
>
>  (iii) The newspaper of widest circulation in the State, if there is no city with a population of 50,000 or more.
>
>  [44 FR 20695, Apr. 6, 1979; 46 FR 58680, Dec. 3, 1981; 47 FR 8567, Mar. 1, 1982; 48 FR 56057, Dec. 19, 1983]
>
>  SOURCE: 43 FR 45253, Sept. 29, 1978; 51 FR 41338, Nov. 14, 1986, unless otherwise noted.

This section clearly provides that the State must provide notice of changes in its methodology. The proposed state regulation changes were the change in the State's methodology. The documents submitted as Exhibits with the State's Motion to Intervene show that the State published notice in several newspapers and held hearings on the proposed changes prior to submission of the State Plan. Thus, the State met the requirements of § 205. The word "assurances" does not appear in this regulation. As the court noted, § (h) of 42 C.F.R. 447.253 provides that "states must provide assurances that it has complied with the public notice requirements in § 447.205 of this part when it is proposing significant changes to its methods or standards for setting payment rates for *inpatient* hospital or LTC facility services." Section 253 does not apply to outpatient services.

      The purpose of providing the Exhibits provided with the State's Motion to Intervene was to show the process required by federal law was followed up to and during the time when the State submitted its amended plan. Bartlett misconstrues the State's

exhibits and states the State is trying to fool the court into believing that the exhibits were submitted for reasons not briefed by the State.  For instance, the purpose of Exhibit H is to show that when CMS asked for assurances, they were provided and thus the requirements of § 253 were met.  The State did not provide Exhibit H to show assurances were provided for TN# 01-002.  Likewise, Exhibit A showed that the Department of Health and Human Services agreed that a separate federal notice requirement was not necessary.  Thus, Bartlett's continual referral to "necessary assurances"[2] is not just a red herring, it is a misstatement of the law.[3]  *See, also,* p.7 at line 10 where Bartlett calls the lack of assurances a "glaring deficiency."

      The State agrees with Bartlett's assertion at fn.6, p.15 that outpatient services fall outside of "institutional" reimbursement.  Because if outpatient services fall outside of "institutional" reimbursement, they also fall outside the scope of 42 CFR 447.253 because § 253 is contained in Subpart C:  <u>*Payment for Inpatient Hospital and Long-term Care Facility Services*</u>.  Section 253 covers the "institutional" payment rate setting process referred to in fn.6 and in the State's Exhibit A.  Section 253 does not apply to outpatient services because § 253 is under Subpart C covering only "<u>Inpatient</u> Hospital and Long Term Care Facility Services," (emphasis added).  Section 205 is in

---

    [2]    Bartlett Opposition Brief, p.14.

    [3]    *See also*, fn.7, p.17, line 21.

*Bartlett Hospital v. Centers for Medicare, et.al*.      3:04-cv-152-JWS
Reply to Opp. to Motion to Intervene

Subpart B: "Payment for Services" and does cover reimbursement for outpatient services independently of Subpart C.

At p.18 of its Opposition, Bartlett argues that the new rates must be noticed prior to the effective date of the State Plan Amendment. Since the rates would be set under the State Plan, it would be curious as to how the State would put the cart before the horse and set rates when it doesn't have a state plan. The requirement in 205 is that the state must use a public process when changing its methodology. The State's methodology is contained in its regulations. All federal public notice requirements were met in the adoption of the State's proposed regulations which became effective in December 2000.

Next Bartlett states the State is "confused" about whether this is a challenge to Alaska's rate setting process and states that it is not. If Bartlett did not raise the rate setting issue, the court thought it had. At p.6 of the court's decision, it refers to the "public process by which rates are to be determined" The reason the State discusses the rate setting process in its Motion to Intervene, is because the court discussed the rate setting process at p.6 of its decision, not because it is "confused" as to Bartlett's intentions.

And while Bartlett states it is not attempting to invalidate the entire state plan, it is trying to invalidate the entire outpatient reimbursement plan which was new

methodology in 2000.  The previous state plan did not address outpatient services.  The consequences of invalidating this amendment are not insignificant.

## CONCLUSION

The State filed a Motion to Intervene when it became apparent that the existing parties would not represent the State's protectable interests in this matter.  The State's actions have been misrepresented to this court by Bartlett Hospital because Bartlett seeks a monetary windfall by alleging CMS did not follow appropriate regulations when both CMS and the State followed applicable federal regulations.  The State asserts that it meets the four requirements for Intervention set forth by the Ninth Circuit.  However, if the court believes that this motion is not timely for purposes of participating in the proceedings before the District Court, the State's Motion is certainly timely for purposes of participating in an appeal.

Dated:  November 2, 2006

 /s/     Susan L. Daniels

DAVID W. MÁRQUEZ
ATTORNEY GENERAL

By:   Susan L. Daniels
      Assistant Attorney General
      ABA No. 8306029
      1031 W. 4th Avenue, Ste. 200
      Anchorage, Alaska 99501
      Phone: (907) 269-5178

*Bartlett Hospital v. Centers for Medicare, et.al*.                            3:04-cv-152-JWS
Reply to Opp. to Motion to Intervene

Fax: (907) 258-4978
E-mail:
Susan_Daniels@law.state.ak.us

## CERTIFICATE OF SERVICE

It is hereby certified that on this 2nd day of November, 2006, a true and correct copy of the foregoing document, the State of Alaska's Reply to Opposition to Motion to Intervene was served via electronic mail on the following parties:

Stephen D. Rose, Esq.
    srose@prestongates.com
    lynney@prestongates.com

Daniel R. Cooper, Jr., Esq.
    daniel.cooper@usjoj.gov
    joy.mcculloch@uskoj.gov

usaak.ecf@usdoj.gov


   /s/   Keri Hile
Keri Hile, Law Office Assistant
Attorney General's Office